UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-CR-20893-FAM(s)

UNITED STATES OF AMERICA,

vs.

MONTY RAY GROW,

        Defendant.

_____/

## DEFENDANT'S MOTION TO EXCLUDE TESTIMONY OF DAVID KAZARIAN, DR. ARTHUR SIMONE AND DAN WUNDERLIN

Defendant Monty Ray Grow, through undersigned counsel, respectfully moves this Court to exclude from trial the testimony of three witnesses whom the government has noticed as experts because the government's expert disclosures were untimely and because the testimony consists of legal conclusions that will not aid the trier of fact and is otherwise irrelevant.

## BACKGROUND

On November 29, 2016, the Grand Jury returned a 52-Count Indictment charging Mr. Grow with various health-care violations related to the sale of compound pharmaceuticals. [DE 3]. This Court set the case for trial on February 6, 2017. [DE 17]. At the time of Mr. Grow's arraignment on December 28, 2016, Magistrate Judge Otazo-Reyes entered a paperless Standing Discovery Order directing the parties to comply with S.D. Fla. Local Rule 88.10. [DE 16].

The government filed its Response to the Standing Discovery Order on January 10, 2017. In it, the government voluntarily disclosed that "it may call one or more witnesses from Tricare and/or Express Scripts" to testify about the rules "related to the claims and/or reimbursement process." [DE 20 ¶N]. The government acknowledged that such testimony by a Tricare or Express

Scripts representative might not "even qualify as expert opinion within the rules." *Id.* If it did, however, the government agreed to "timely disclose a written summary of testimony the government reasonably expects to offer at trial as required under Rules 702, 703, or 705 of the Federal Rules of Evidence." *Id.* In return, the government demanded that the defense turn over a written summary of any experts we reasonably expect to offer at trial, if any, along with a written summary "describing the witnesses' opinions, the bases and the reasons for those opinions, and the witnesses' qualifications." *Id.*

On January 26, 2017, Mr. Grow filed an Unopposed Motion to Continue Trial, which this Court granted, continuing trial to October 16, 2017. [DE 24, 26]. Over the next eight months, the government produced over one million pages of discovery. Not a single expert disclosure was among them. Weeks before trial was slated to begin, the government filed a Superseding Indictment, after which this Court granted Mr. Grow a second trial continuance until December 11, 2017. [DE 37, 51]. Subsequently, the Court *sua sponte* continued trial further to January 22, 2018. [DE 54].

As directed by the Court, the government filed its exhibit list with the Court on January 4, 2018. [DE 56, 63]. Among the 322 exhibits identified by the government were expert curricula vitae for three individuals tendered as experts who until that point had never been disclosed: Arthur Simone, David W. Kazarian and Marcus Ferrone. [DE 63, GX 25-27]. The next day, defense counsel sent an email to the government asking for the curricula vitae and summaries. The government responded that it "decided that these experts would be needed just this week in order to prove up the very narrow issues alleged . . . in paras 8-9 of the [S]uperseding [I]ndictment." The government continued in part,

> FDA's attorney is working on the expert disclosure for Arthur Simone (para 9) as
> we speak, and I am trying to nail down details on the which [sic] of the remaining

two experts (to prove para 8) we will use.  Once we work out the contract details with fiscal I will know.  I can send you CVs if that helps now.

The government produced expert curricula vitae for Mr. Simone and Mr. Kazarian on January 5 and January 8, respectively.  On January 9, the government filed a Notice of Intent to Rely on Expert Testimony.  [DE 71].  The Notice made clear that instead of simply calling Dr. Simone and one other witness as the its January 5 email said, the government now plans to call three witnesses:  Dr. Simone, Mr. Kazarian and a third, Don Wunderlin, whose existence defense counsel were unaware of until the Notice was filed.[1]  According to the government:

> **David Kazarian-** Mr. Kazarian is a pharmacist licensed in Florida and will testify to the information contained in paragraph 8 of the Superseding Indictment. Specifically, Mr. Kazarian will testify that Florida law requires a valid practitioner-patient relationship to exist before any drug may be prescribed. Mr. Kazarian will describe the requirements under Florida law for the existence of a practitioner-patient relationship, including among other things, requirements of a documented patient evaluation that includes history and physical examination adequate to establish a diagnosis for which the drug was prescribed.
>
> **Dr. Arthur Simone, M.D., Ph.D.-**  Dr. Simone is a Medical Doctor licensed in the states of New Jersey and Pennsylvania and a Senior Medical Advisor with the Food and Drug Administration's ("FDA") Office of Unapproved Drugs and Labeling Compliance, Center for Drug Evaluation and Research, FDA. Dr. Simone will testify in pertinent part to the information contained in paragraph 9 of the Superseding Indictment, specifically that Flurbiprofen and Loperamide were "drugs" within the meaning of Title 21, United States Code, Section 321(g)(1) and were "prescription drugs" as defined in Title 21, United States Code, Section 353(b)(1).
>
> **Don Wunderlin-** Mr. Wunderlin is a health care fraud specialist with the Defense Health Agency, which oversees the implementation of the Tricare Program. Mr. Wunderlin will testify as to specific rules governing Tricare coverage, including the requirement of co-payments and the rules for waiving co-payments associated with the compound drugs involved in this case. In addition, Mr. Wunderlin will explain the Tricare rules governing the use of telemedicine services.

---

[1]  Again, the government's exhibit list identified potential experts Simone, Kazarian and someone named Marcus Ferrone.  The government did not provide defense counsel with Mr. Wunderlin's curriculum vitae until January 10.

3

*Id*. After reviewing the Notice, defense counsel asked the government when we could expect to receive expert summaries contemplated by Rule 16. The government refused to make any further disclosures.

## DISCUSSION

### A. The Government's Expert Disclosures Are Untimely and Fail to Meet the Requirements of Fed. R. Crim. P. 16.

In January 2017, the government disclosed that it would present testimony from an Express Scripts and/or Tricare representative as to the rules governing their respective claims and/or reimbursement process. After that, the government made no further disclosures for one year, even though the government produced a massive amount of discovery during that period. With no forthcoming expert disclosures, defense counsel prepared for trial with the understanding that there would be no expert testimony, even as to the claims reimbursement subject identified by the government in January 2017.

It was not until we received government's exhibit list that we learned the government had three experts. And it was not until some six days after that when we learned that the proffered testimony far exceeded the scope the government initially proposed. No longer was the government simply going to call a Tricare and/or Express Scripts representative to speak to the claims processes. Instead, the government planned to elicit testimony on three different, vastly expanded subjects that previously went undisclosed: Florida law on what it means to have a valid practitioner-patient relationship; federal law regarding whether certain medications required a prescription; and Tricare regulations regarding co-payments and the use of telemedicine for its insureds. Although we now know the subject of each witness' testimony, we still do not know (because the government refuses to identify) precisely what the witnesses's opinions are (save, in

4

part, for Dr. Simone) or the bases for those opinions, as Rule 16 requires. Fed. R. Crim. P. 16(a)(1)(G).

Rule 16(d)(2) grants this Court broad discretion to impose sanctions on a party that fails to provide discovery in a timely fashion. *See*, *e.g.*, *United States v. Sims*, 776 F.3d 583, 584, 586 (8th Cir. 2015) (concluding that it was not an abuse of discretion for the trial court to exclude expert testimony where the disclosures were made one week before trial); *United States v. Holmes*, 670 F.3d 586, 597-99 (4th Cir. 2012) (affirming ordering granting government's motion to exclude expert testimony where the defense provided notice of its intent to rely on expert testimony the week before trial, and its notice failed to comply with the requirements of Rule 16); *United States v. Red Elk*, 185 F. App'x 716, 723, 725 (10th Cir. 2006) (affirming trial court's exclusion of expert testimony disclosed weeks before trial); *United States v. Robinson*, 44 F. Supp. 2d 1345, 1346, 1348 (N.D. Ga. 1997) (excluding expert testimony where the government failed to provide a curriculum vitae of its proposed expert until one month before trial, and failed to produce a summary of the expert's opinion until the day before trial, with an amended report filed the first day of trial).

The government has given no reason for the delay, other than that it suddenly realized less than 3 weeks before trial – and over thirteen months after the government presented the original Indictment to the Grand Jury – that it needs experts to prove up certain allegations in the Superseding Indictment. Defense counsel have prepared their case on the assumption that the government did not intend to offer any expert testimony. We did not seek to locate experts that could rebut the government's expert testimony because, it appeared, there was no testimony to rebut. By waiting until well after the eleventh hour to make expert disclosures, the government has obtained a strategic advantage: it has had over a year to formulate its own case based on

evidence that it chose not to reveal to the defense. This leaves defense counsel at a strategic disadvantage because it has less time to adjust its case to that evidence. Further, defense counsel have been forced to adjust their trial strategy and re-allocate their resources to retain experts. A continuance would not be an appropriate remedy for the simple reason that Mr. Grow does not want one, nor should he be forced to endure a continuance to receive a fair trial. Further, granting the government a continuance would reward the government's conduct and would fail to ensure future compliance with the government's disclosure obligations.

### B. The Proffered Testimony Impermissibly States Conclusions of Law.

Issues with the timelines and sufficiency of the government's expert disclosures aside, the opinion testimony tendered by the government consists of nothing more than bare legal conclusions and is therefore inadmissible. Under Federal Rule of Evidence 702, expert testimony may only be admitted if

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (citation omitted). The proponent of expert testimony bears the burden of establishing qualification, reliability and helpfulness regardless of whether the proponent is an individual or the government in a criminal case. *Id.*

It is fundamental that expert testimony on the meaning and applicability of relevant law is inadmissible. That is because each trial court already has its own legal expert: the Judge. An expert who offers legal conclusions usurps not simply the Judge's duty to set forth the law but also the jury's duty to apply the law to the evidence presented. Courts in this Circuit and elsewhere routinely exclude the testimony of purported "experts" espousing conclusions about what the law

is or how it should be apply to a particular set of facts. *See*, *e.g.*, *United States v. Oliveros*, 275 F.3d 1299,1306-07 (11th Cir. 2001) (affirming district court's refusal to permit defense expert to testify about immigration law, noting that "[d]omestic law is properly considered and determined by the court whose function is to instruct the jury on the law; domestic law is not to be presented through testimony and argued to the jury as a question of fact"); *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990) (concluding that witnesses "may not testify to the legal implications of conduct; the court must be the jury's only source of law"); *Wallace v. Norwegian Cruise Line Ltd.*, No. 09-21814, 2011 WL 13112226, at *2 (S.D. Fla. Mar. 16, 2011) (excluding the testimony where the witness "attempts to argue questions of law as questions of fact" – something that "[b]lack-letter law" dictates cannot be done); *In re Initial Public Offering Sec. Litig.*, 174 F. Supp. 2d 61, 64 (S.D.N.Y. 2001) (noting that "[t]he rule prohibiting experts from providing their legal opinions or conclusions is so 'well-established that it is often deemed a basic premise or assumption of evidence law – a kind of axiomatic principal," and that "every circuit has expressly held that experts may not invade the court's province by testifying on issues of law") (collecting cases).

In addition, although opinion testimony that embraces an ultimate issue of fact may be admissible under Federal Rule of Evidence 704, opinion testimony that does no more than state a legal conclusion is not. That is because evidence that embraces an ultimate issue may be excluded it if is not "otherwise admissible," that is, if it is "not helpful to the fact finder under Rules 701 or 702, or if [it] waste[s] time and/or confuse[s] the jury as contemplated under Rule 403." *Key v. Celadon Trucking Servs., Inc.*, No. 108-165, 2010 WL 11531270, at *4 (S.D. Ga. Feb. 9, 2010). Expert opinion testimony that merely states legal conclusions is not helpful to the jury and therefore is properly excludable. *See Frazier*, 387 F.3d at 1262-63 (noting that "expert testimony

7

is admissible if it concerns matters that are beyond the understanding of the average lay person," and that such testimony "generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments."); *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d at 1541 (noting that while "[a]n expert may testify as to his opinion on an ultimate issue of fact," he may not "tell the jury what result to reach" because it would not be helpful to the jury."). *See also United States v. Barile*, 286 F.3d 749, 759-60 (4th Cir. 2002) (citations omitted) (recognizing that "[u]nder Rule 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time. These provisions afford ample assurances against the admission of opinions which would merely tell the jury what result to reach, somewhat in the manner of the oath-helpers of an earlier day."); *Stobie Creek Investments, LLC v. United States*, 81 Fed. Cl. 358, 360 (2008) (concluding that "[e]xpert testimony that testifies about what the law is or directs the finder of fact how to apply law to facts does not 'assist the trier of fact to understand the evidence or to determine a fact in issue' within the contemplation of Fed. R. Evid. 702.").

Applying these principles, the testimony of all three proposed government experts is inadmissible. The government's Notice makes plain that both Mr. Kazarian and Dr. Simone are being tendered purely as legal experts, with Kazarian opining that Florida law requires a valid doctor-patient relationship and Simone testifying that Title 21, United States Code requires a prescription for certain drugs. The same holds true for Mr. Wunderlin to the extent the government seeks to elicit testimony from him concerning Tricare, a federal healthcare program, and how federal laws like the Anti-kickback Statute apply to that program. Because the testimony of these government witnesses consists of legal conclusions, it is excludable on that basis alone.

### C. The Proffered Testimony Is Also Irrelevant to the Charges Against Mr. Grow.

The proffered testimony also should be excluded because it is irrelevant and likely to confuse the jury. Mr. Grow stands accused of submitting false claims to Tricare, of paying and receiving unlawful kickbacks and of money laundering. The testimony sought by the government has nothing to do with these areas, and instead seeks to backdoor laws and regulations that have no bearing on the charges in this case.

To start, the testimony of Mr. Kazarian on the requirement of a valid physician-patient relationship under Florida law is irrelevant to allegations of false claims and kickbacks. Further, we have yet to see any evidence that Mr. Grow knew or was told about the Florida law requirements – not by employees of the pharmacy for whom Mr. Grow worked as a marketer or by employees of the telemedicine companies whom the patients were referred to. To the contrary, the evidence at trial will show that Mr. Grow was consistently advised that telemedicine was lawful, even in Florida, and that it was widely practiced. To that end, the government has not charged a single pharmacy or telemedicine employee in this investigation with prescribing medication to anyone outside of a valid physician-patient relationship.

Similarly, the testimony of Dr. Simone, that certain ingredients were drugs for which prescriptions were required, is also irrelevant to the charges against Mr. Grow. The government has not explained how the need for a prescription factors into whether Mr. Grow willfully violated the rules on kickbacks and false claims. Mr. Grow is not a pharmacist, and there is no evidence suggesting that he knew (or could have known) about the prescription requirement. Nor is there any evidence that he violated that requirement.

Finally, the testimony of Mr. Wunderlin, the undisclosed Tricare expert, is equally irrelevant. As noted above, Mr. Grow was a marketer for PCA, not a Tricare biller. There is no

9

evidence that Mr. Grow ever had contact with Tricare, or that he had any knowledge of the Tricare rules about which Mr. Wunderlin has been tendered.

Unless or until the government is able to lay a factual predicate and demonstrate the relevance of Florida physician-patient law, of federal prescription drug laws and of Tricare's telemedicine laws, the government should not be allowed to reference those issues in its opening statement or at any other time during trial.

## CONCLUSION

For the reasons set forth herein, Defendant Monty Ray Grow respectfully quests that the Court exclude the testimony of Messrs. Kazarian and Wunderlin, and of Dr. Simone.

Respectfully Submitted,

/s/ Jeffrey E. Marcus
MARCUS NEIMAN & RASHBAUM LLP
201 South Biscayne Boulevard, Suite 1750
Miami, Florida 33131
Tel: (305) 400-4260
Jeffrey E. Marcus
Fla. Bar No. 310890
jmarcus@mnrlawfirm.com
Daniel L. Rashbaum
Fla. Bar No. 75084
Drashbaum@mnrlawfirm.com

*Counsel for Defendant Monty Ray Grow*

## **LOCAL RULE 88.9(a) CERTIFICATION**

Undersigned counsel hereby certifies that we conferred with the government, which opposes the relief requested in this motion.

/s/ Jeffrey E. Marcus
JEFFREY E. MARCUS

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 15, 2018, a true and correct copy of the foregoing Unopposed Motion to Continue Trial was served via CM/ECF on all counsel of record.

/s/ Jeffrey E. Marcus
JEFFREY E. MARCUS
