```
 1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
 2                         MIAMI DIVISION
                   CASE NUMBER 16-20893-CR-MORENO
 3

 4
     UNITED STATES OF AMERICA,
 5
                 Plaintiff,                    Courtroom 13-3
 6
        vs.                                    Miami, Florida
 7
     MONTY RAY GROW,                           February 1, 2018
 8
                 Defendant.
 9   _____
10                      JURY TRIAL PROCEEDINGS
               BEFORE THE HONORABLE FEDERICO A. MORENO
11                  UNITED STATES DISTRICT JUDGE

12   ════════════════════════════════════════════════════════════════
     APPEARANCES:
13
     FOR THE GOVERNMENT:     KEVIN J. LARSEN, AUSA
14                           JON M. JUENGER, AUSA
                             United States Attorney's Office
15                           Economic Crimes Section
                             United States Attorney's Office
16                           99 Northeast Fourth Street
                             Miami, Florida 33132
17                                                   305-961-9356
                                               Fax: 305-530-6168
18                                           kevin.larsen@usdoj.gov
                                             jon.juenger@usdoj.gov
19
     FOR THE DEFENDANT:      DANIEL L. RASHBAUM, ESQ.
20                           JEFFREY E. MARCUS, ESQ.
                             Marcus Neiman & Rashbaum, LLP
21                           2 South Biscayne Boulevard
                             Suite 1750
22                           Miami, Florida 33131
                                                   305-400-4261
23                                             Fax: 866-780-8355
                                           drashbaum@mnrlawfirm.com
24                                           jmarcus@mnrlawfirm.com

25
```

1                         **KATHRYN A. MEYERS, ESQ.**
                         Law Office of Kathryn A. Meyers PLLC
2                        2 South Biscayne Boulevard
                         Suite 1750
3                        Miami, Florida 33131
                                                    305-400-4266
4                                         kate@kmeyerslaw.com

5    **REPORTED BY:**         **GILDA PASTOR-HERNANDEZ, RPR, FPR**
                         Official United States Court Reporter
6                        Wilkie D. Ferguson Jr. US Courthouse
                         400 North Miami Avenue - Suite 13-3
7                        Miami, Florida  33128    305.523.5118
                         gphofficialreporter@gmail.com

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# TABLE OF CONTENTS

                                                                Page

Reporter's Certificate .................................... 54

## EXHIBITS

| Exhibits | Marked for Identification | | Received in Evidence | |
|---|---|---|---|---|
| Description | Page | Line | Page | Line |

1      (The following proceedings were held at 10:50 a.m. within

2  the presence of the defendant and outside the presence of Kevin

3  Larsen, AUSA:)

4      THE COURT:  Okay.  Let's go back to calmer times.

5      Monty Ray Grow.  United States of America versus Monty

6  Ray Grow, 16-20893-Criminal.

7      Mr. Juenger and I saw all three defense lawyer, but

8  there are two here.  Oh, there you are.

9      MS. MEYERS:  I was getting something from my bag, Your

10 Honor.

11      THE COURT:  I had seen you before.  So we have the

12 three defense lawyers.  We have a note from the jury.  You can

13 sit down if you want.  We have a note from the jury, and it

14 says:

15      "We would like to know if we can review the testimony

16     of Jonelle Coronado, Jill Cichowicz and Rosalinda Rambaran."

17      What say the Government?

18      THE COURT:  Signed by Kelly Padron with today's date.

19      MR. JUENGER:  It's dangerous to answer a question with

20 a question, but is that even possible.  I don't think it is.

21      THE COURT:  I don't know.  I just want to know your

22 position, then I'll tell you what I think, but I always wait --

23 I don't always wait, but I should wait until I hear from both

24 sides.

25      What say the defense speaking with one voice?

1          MR. RASHBAUM:  No.

2          MR. MARCUS:  No.

3          MR. RASHBAUM:  No.

4          THE COURT:  No.  Okay.  Now, as you all know, of

5    course, there's actually a circuit split.  I didn't know if you

6    knew that on the reading of transcripts.

7       (Kevin Larsen, AUSA entered the courtroom.)

8          THE COURT:  Mr. Larsen is here, too.

9          They want the transcripts of Coronado, Cichowicz and

10   Rosalina Rambaran, Mr. Larsen.

11         So, of course, the traditional response to all of this

12   is, you are to rely upon your own recollection of the evidence

13   as you heard it.

14         Frankly, in some other circuits, I think maybe even the

15   First but at least the Second, since the First has come up on

16   and on in this case, a judge cannot just do that.  A judge has

17   to explain the reasons.  The Eleventh Circuit hasn't gone that

18   far, but you never know how sometimes the law changes with the

19   requirements, but if I remember correctly what happens in some

20   other circuits -- and I'm going to have a memory aid -- on what

21   happens is the Second and Third Circuits.

22         It says, "Is there a preference in favor of or against

23   granting the jurors' request to review" -- And of course, the

24   standard of review is abuse of discretion, and the Sixth, Ninth

25   and Tenth Circuits caution against having transcripts of

1    testimony read or furnished to a jury.

2         By contrast, the Second and Third Circuits favor

3    compliance with such requests saying that the better course of

4    action is for a District Court to allow the reading of the

5    testimony and that the request should be denied only in limited

6    circumstances.

7         Of course, the analysis of that is if we tell them not

8    to consider just one part, you've got to look at the whole

9    trial, but you know, the other side says, well, that's what

10   they're asking for.  We should give them what they're asking

11   for.

12        Of course, what the First Circuit -- I'll take it back.

13   It was the Third Circuit and Second.

14        The First Circuit says that the Court's determination

15   that the requested testimony was too scattered and voluminous to

16   be re-read, that that provides sufficient justification for the

17   decision to reject the jury's request.  Of course, the Seventh

18   Circuit says, there are logistical problems of sequestering the

19   jury for an extended period of time while the transcripts are

20   being prepared.  You know, there are just difficulties in this.

21        The procedure really to apply is:  The court reporter

22   would actually have to read, because we don't have transcripts.

23   So what I have done in the past, and I think it has been

24   approved by the Eleventh Circuit, just to be sure in case

25   circuit judges change their minds once they do that or the

1   Supreme Court sometimes decides, I don't think this is that big
2   of a deal, is to tell them the truth.  We don't have a
3   transcript.  It would take days to prepare the transcript.
4   There's danger because you have to look at the whole trial
5   testimony.  In any event, if we were going to have the court
6   reporter read the testimony, then she has to make sure that it's
7   correct.  I mean, she's correct, but we have to make sure the
8   spellings or that things are perfect and then it gets read and
9   then it takes as long as the testimony and we would have to give
10  an instruction.  I mean, that's the analysis.
11          Now, how much of that -- obviously, I'm not going to
12  tell them there's a split at the Circuits and all of that, but I
13  can tell them we don't really have transcripts.  It would take a
14  long time to get transcripts, so you're to rely upon your own
15  recollection, and that's kind of what we do in the Eleventh
16  Circuit.  But if people want to persuade me to do something
17  else, I do, since I've given you all the analyses.
18          What say the Government?
19          MR. JUENGER:  Your Honor, I agree with Mr. Rashbaum.
20          THE COURT:  What say the defense?
21          MR. RASHBAUM:  I like what you just said.
22          THE COURT:  Look at that.  See, I knew I would get you
23  all to agree on something.  It's usually has to do with timing.
24          Bring in the jurors.  No?  You don't want me to bring
25  in the jurors?

1          MR. MARCUS:  There's another issue I just want to raise

2    with you before you bring in the jury.

3          THE COURT:  I don't think there is another issue.

4          MR. MARCUS:  There is.

5          THE COURT:  Oh, my goodness gracious.

6          MR. MARCUS:  I know, Your Honor.

7          I want to raise it now because the jury is still

8    deliberating.  The Department of Justice during this trial a few

9    days ago, Rachel Brand, who is the Associate Attorney General,

10   the number three person --

11         THE COURT:  Confirmed?  She got confirmed?

12         MR. LARSEN:  She got confirmed.

13         MR. MARCUS:  Yes, she's confirmed.

14         THE COURT:  Okay.  I just wonder who gets confirmed and

15   who doesn't.  Okay.

16         MR. MARCUS:  So they just released a memo, a binding

17   memo on the department which effectively says that no longer can

18   you rely on agency guidance; Tricare, OIG, Health and Human

19   Services, to establish noncompliance or liability under a

20   Federal Statute.  This obviously is going to have a lot of

21   implications for kickback cases, false claims cases.

22         THE COURT:  In the future, I suspect.  I suspect that

23   prosecutors generally follow their boss' guidelines.

24         I don't know if you knew, I don't work for the

25   Department of Justice.

1          MR. MARCUS:  I know, but it applies to cases that are

2   pending, Your Honor, as well and this case --

3          THE COURT:  It doesn't apply to me.

4          MR. MARCUS:  It does Your Honor --

5          THE COURT:  It's not law.  You think the Department of

6   Justice memos and guidelines are law?  No, they're not.

7          MR. MARCUS:  They're not, but we have had testimony --

8          THE COURT:  I don't even like to read the Code of

9   Federal Regulations, but that's law, although maybe Chevron

10  won't be around for a while, but I don't know.  We'll see what

11  happens, but certainly I wouldn't consider any Department of

12  Justice memo for the jury.  That's for you to talk to the two

13  gentlemen behind you, and see -- you know, while this jury is

14  deliberating, maybe you ought to reconsider what people do and

15  don't do in this case but it's not for me.  It's really not an

16  issue for me.

17         MR. MARCUS:  I mean, there are allegations in the

18  Indictment that reference regulations of agencies like Tricare.

19  Obviously, we've had testimony in the case in terms of W-2

20  versus 1099.  So I wanted to raise it.  I mean, I will talk to

21  them.

22         THE COURT:  The Indictment talks about W-2 and 1099?

23         MR. MARCUS:  It talks about Tricare regulations, yes.

24         THE COURT:  And what does it say?

25         In what jury instructions did I tell them about Tricare

1    regulations?

2         MR. MARCUS:  They're not in the jury instructions.

3         THE COURT:  You're right.  So they're not the law.

4         The Indictment, I have told the jurors repeatedly from

5    the very beginning of this case, all the way to the jury

6    instructions, the Indictment is not proof of anything.  It's

7    just to let people know what the charges are, and in order to

8    even curtail the review of the Indictment, I, not your proposed

9    Verdict Form nor the Government's proposed Verdict Form, but my

10   proposed Verdict Form which became final, put down a little

11   version of what each count was to help them.  So they don't even

12   have to look at the Indictment if they don't want to, because

13   they have in the Verdict Form what it is.  So it doesn't really

14   matter.  It doesn't have anything to do with this.

15        MR. MARCUS:  I mean, they have copies of it, and

16   they've heard some evidence in the case.  So perhaps --

17        THE COURT:  What evidence did they hear in the case,

18   from whom?

19        MR. MARCUS:  They've heard about -- I mean, so they've

20   heard about what a bona fide employee is.

21        THE COURT:  By the prosecutor over my objection because

22   I don't even like Latin.

23        MR. MARCUS:  Right, but it's in the definition.

24        THE COURT:  I gave them the instruction from the Code

25   of Federal Regulations I, not G, remember?

1          MR. MARCUS:  Yes.

2          THE COURT:  And I gave them one line without objection

3    from anybody.  That has nothing to do with the Department of

4    Justice memo.  It really doesn't, does it?

5          MR. MARCUS:  We would ask maybe for a short

6    instruction, very simple that --

7          THE COURT:  On a Department of Justice memo?

8          MR. MARCUS:  On agency regulations, not being a basis

9    for liability under --

10         THE COURT:  But I haven't told them about -- the only

11   regulation I give them is the law, whether I like it or not, of

12   the Code of Federal Regulations which you proposed, because if

13   it were up to me, I wouldn't even have given that, but you

14   proposed it because it was good for your defense because it has

15   to do with good faith and the Government agreed with it and I

16   proposed it and the defense in this case was an all-or-nothing

17   defense, do not compromise, which I'm not saying it's bad

18   strategy.  Obviously, it's good strategy.  I know what's going

19   on.  I know what the guidelines are, the amount of money, the

20   penalties that face individuals in fraud or in drug with

21   all-or-nothing.  So they're good, a good strategy by the

22   defense.

23         But now I can't give an instruction based on a memo

24   that came from an attorney general, which by the way surprises

25   me, but it's none of my business.  Usually, the memos go the

1    other way, but I have the utmost respect for Senator Sessions.

2    I still call him a senator.  Calling someone General is kind of

3    weird.  Janet Reno used to tell me that's kind of weird, General

4    Reno, General Sessions and also Mr. Rosenstein, too, as well as

5    the Interim U.S. Attorney.  I've got to think which one is

6    higher, interim or acting, but I'm not going to give an

7    instruction.

8         MR. MARCUS:  I just wanted to raise it.  We're in a

9    weird position where we're defending theories of prosecution

10   that now the department has said shouldn't be a basis to --

11        THE COURT:  What say the Government?  I don't think so,

12   but maybe the Government disagree with me.

13        MR. JUENGER:  Well, Your Honor, it's my understanding

14   from having been here at the trial that the bona fide employee

15   exception is a safe harbor that was the defense in this case,

16   that either he complied with the safe harbor or he believed he

17   complied with the safe harbor.  So that wasn't something that

18   the Government is trying to prosecute him for making efforts to

19   somehow comply with the bona fide employee exception.

20   Otherwise, I would say it is not any theory of prosecution that

21   the defendant violated any particular regulation.  That's not

22   the case.  The kickbacks, there is a statute that criminalizes

23   the payment and receipt of kickbacks, and as far as fraud, I

24   mean that obviously has nothing to do with the regulations.

25   There's nothing set forth in the fraud charges, certainly not in

1        the instructions that point to regulations.

2              So I haven't seen the memo yet.  I'm happy to discuss

3        it with counsel.

4              THE COURT:  Well, I think you should discuss it.

5              MR. MARCUS:  Just for the record --

6              THE COURT:  Everything is for the record, because Gilda

7        hasn't left.

8              MR. MARCUS:  Okay.  The first object of the conspiracy

9        under the kickback conspiracy charges that Mr. Grow has violated

10       the kickbacks statute by receiving kickbacks from PCA, as

11       employee compensation, based on an agency view that if you're

12       1099 or you're --

13             THE COURT:  Oh, it said that in the Indictment?

14             MR. MARCUS:  Well --

15             THE COURT:  It said 1099, in view that?  I always think

16       they put too much in the Indictment, but I didn't see a Motion

17       to Strike for the surplusage in the Indictment.

18             MR. MARCUS:  No, but that's a theory of the -- I mean,

19       they've argued that essentially and throughout the case.

20             THE COURT:  And I've also told the jurors in addition,

21       too, that the Indictment is not proof of guilty or anything at

22       all.  I've also told them that what the lawyers say is not

23       evidence or the law though I have added, because I think it is

24       true and it was especially true in this case, because the

25       arguments were very good, that what the lawyer says is very

1    important, but it's not the law or the evidence.

2         So it doesn't really matter, but if want to file that,

3    file it as a notice, do a Notice of Filing, Defense Notice of

4    Filing Department of Justice New Memo.

5         MR. MARCUS:  Okay.

6         THE COURT:  And then do whatever you want with it, but

7    I'm not going to instruct the jurors on this.

8         I hate to tell you that if we really had -- what we

9    should have is super interrogatory forms and have the lawyers --

10   maybe we should change our local rule about asking what jurors

11   really think and ask them what do you think about 1099, what do

12   you think about this, what do you think about that, and all of

13   the things that you all think are so important.  But I could be

14   wrong.

15        But if it's an appellate issue, it's preserved, which

16   is what you're doing, you're preserving it for appeal, but your

17   client hasn't lost yet.

18        MR. MARCUS:  I know.  I just wanted to raise it.

19        THE COURT:  Maybe he won't lose.  I don't know.

20        MR. MARCUS:  We hope not, Your Honor.

21        THE COURT:  But you know, it would be a good thing to

22   talk about and have lunch with and see if you want to work

23   something out in view of the changed circumstances.  Certainly,

24   if I had been the judge in the Menendez case and maybe that

25   judge did, Senator Menendez, I would have told the parties work

1  something out if you think it's appropriate.  So I say that in a

2  lot of cases, but I cannot participate in plea negotiations.

3       So I'll give you a sermon that nobody ever follows and

4  talk with your opponent about their own boss' memo.  Don't talk

5  to me.

6       MR. MARCUS:  We'll do that.

7       THE COURT:  The only memos I follow are the ones from

8  the Eleventh Circuit Court of Appeals and the United States

9  Supreme Court.  Okay?

10       MR. MARCUS:  Thank you.

11       THE COURT:  They haven't sent a memo, right, or an

12  opinion?

13       MR. MARCUS:  This just came out.

14       THE COURT:  When they have one that says that the

15  Department of Justice memo has an impact on a case, I'll look at

16  that case, like I've looked at the Fifth Circuit case involving

17  Medicare, in addition to the Medina case, the Eleventh Circuit

18  case by Judge Seitz.  You know, I read everything and figure out

19  whether it has anything to do with our case, and let you all

20  work it out.  All right?

21       MR. MARCUS:  Thank you.

22       THE COURT:  Now, I was going to tell you to come back

23  at 12.  I don't know.  You're here.  I don't know.  Do you just

24  want to be called?  Is that the easiest thing now?

25       I guess my timing is not as good as it should be.  So

1  how do you want to do it?  What do you prefer?  What do other

2  judges do?

3      Some judges require you to be on the floor.  It's

4  convenient for us as judges, but what do you want to do?

5      MR. LARSEN:  We like getting a phone call.  That's fine

6  for us.

7      THE COURT:  Just get a phone call.

8      MR. LARSEN:  Yes.

9      THE COURT:  So you'll be around.

10      What does the defense want?

11      MR. RASHBAUM:  Whatever you prefer, Your Honor.

12      THE COURT:  I don't care.

13      MR. RASHBAUM:  A phone call is fine.

14      THE COURT:  I'm going to eat lunch, especially now that

15  I know that Judge Marcus, a former U.S. Attorney said, oh, I

16  investigated that case before --

17      MR. RASHBAUM:  Smart man.

18      THE COURT:  -- in 1985.

19      But if you don't hear from us, you will be here before

20  5:00, 5 minutes before 5 because I'll send them home at 5:00.

21  I've got to go to a memorial service of a professor who was a

22  classmate, so I think I should go.  It's at the university.  So

23  it takes me about an hour to drive around that time.  So we're

24  going to quit at 5:00.

25      And if they haven't reached a verdict by then, they're

1  going to come back tomorrow.  So we'll give you a phone call.

2  We feed the jurors.  We'll wait till 12:00, I mean, to give them

3  the menus.  In case for some reason they've reached something

4  before 12, I don't want to cut them off and then we'll call you.

5  Okay.  We won't make you come back in mid afternoon.  There's no

6  point doing that.

7          Pardon?

8      (There was a brief discussion off the record.)

9          THE COURT:  I wanted to bring them back.  We just got

10 sidetrack here.

11         Bring the jurors.  Let them stretch.  You're right.

12         I've told you about what happened in State court,

13 right?  There was a case, the defendant pled guilty, everybody

14 went home.  The janitor is cleaning up, and the jurors were in

15 the jury room an hour, two hours later.  It wasn't me.  They

16 called up the judge.  No one could get ahold of the judge and I

17 was still there on a Friday night and I said, you guys can go

18 home.  Thank you for your service.  We didn't give them

19 certificates though.  It wasn't my case.

20     (The jury entered the courtroom at 11:10 a.m.)

21         THE COURT:  Thank you, folks.  Please be seated.  I got

22 your note awhile ago, and I was doing an old case before that

23 was unrelated to this case.

24         "We would like to know" -- first, good morning.  I'm

25 sorry.  I knew you were here because I know you shared a

1   doughnut -- I was a little envious -- with Shirley Christie, but

2   I didn't want to go in there and mooch.

3          So your note:  "We'd like to know if we can review the

4       testimony of Jonelle Coronado, Jill Cichowicz and Rosalinda

5       Rambaran."

6          And even though Gilda writes everything down and takes

7   notes, they have to be refined, so there's no transcript.  It

8   will probably take if I recess -- I have another trial, but it's

9   a nonjury trial this afternoon, so I need her for that, and

10  there's no way she could do it between now and when I start

11  trial.  We call it a bench trial, a nonjury trial.  So since I

12  can't do that.  It would take her -- she would have to work all

13  night to give it to you and then we could read it to you.

14  That's what we would do and then reading it to you would take as

15  long as you heard it in the first place and that's why I've

16  allowed you to take notes and that's why there are a dozen of

17  you and that's why I'll give you the instruction that may not be

18  as helpful as you would want it to be, but that is:  You are to

19  rely upon your own recollection of the evidence as you heard it.

20         Take as long as you want, all right, to decide, and

21  we'll see you whenever you want to be seen.

22         Okay.  Thank you.

23         THE COURT SECURITY OFFICER:  All rise, please.

24     (The jury retired from the courtroom at 11:13 a.m.)

25         THE COURT:  Okay.  See you this afternoon some time.

1          MR. LARSEN:  Thanks, Judge.

2          MR. MARCUS:  Thank you.

3     (A recess was taken at 11:13 a.m. and the following

4  proceedings were held at 4:40 p.m. outside the presence of the

5  defendant:)

6          THE COURT:  Okay.  Where is the defendant?

7          MR. RASHBAUM:  We're checking.  We just spoke to him.

8  He's on his way, but I don't know --

9          THE COURT:  Where does he stay?

10          MR. RASHBAUM:  Just --

11          THE COURT:  Hold on.

12     (There was a brief discussion off the record.)

13          THE COURT:  Okay.  Defense counsel and Government

14  counsel are present and no defendant.

15          MR. RASHBAUM:  He's on his way, Your Honor.

16          THE COURT:  Well, how do we know that?

17          MR. RASHBAUM:  I spoke to him on the phone.

18          THE COURT:  When did you call him?

19          MR. RASHBAUM:  Right when we got a call 10 minutes ago.

20          THE COURT:  When did you call, Shirley?

21          THE COURTROOM DEPUTY:  Probably more than 10 minutes.

22          THE COURT:  It was more than 10 minutes.

23          MR. RASHBAUM:  I'll tell you when it was.

24          THE COURTROOM DEPUTY:  What time did I call you,

25  Mr. Larsen?

1          MR. LARSEN:  You called me at --

2          MR. RASHBAUM:  I got a call at 4:19.

3          MR. LARSEN:  4:12.

4          THE COURT:  4:19 and 4:12, a seven-minute difference.

5          MR. RASHBAUM:  That's what my phone says.  I don't

6     know.  I called him at --

7          THE COURT:  Okay.  4:19.

8          MR. RASHBAUM:  At 4:22 I called him.

9          THE COURT:  Where does he stay?

10          MR. RASHBAUM:  He stays right on Brickell.

11          Did you reach him?

12          MR. MARCUS:  Yes.

13          MR. RASHBAUM:  Where is he?

14          MR. MARCUS:  He's coming.  He's downstairs.

15          THE COURT:  You know, maybe I'm going to let you go to

16     your offices and not him.  It may be the better thing for him.

17     Because if I had stated a time and he weren't here, I would make

18     sure that he was brought in through that door, because he should

19     be here.  So we can't do anything until he gets here, can we?

20     So have a seat.

21          Is he staying in a hotel on Brickell?

22          MR. RASHBAUM:  He is staying at a --

23          THE COURT:  Friend's house or --

24          MR. MARCUS:  Just right across the bridge, Your Honor.

25          THE COURT:  In a hotel or a friend's house or --

```
 1              MR. RASHBAUM:  I think it's a hotel or Airbnb.  I don't
 2    know what that is, but --
 3              THE COURT:  What's his bond?
 4              MR. LARSEN:  I think it was like $600,000.  It was a
 5    combination of 10 percent and a personal surety.
 6              THE COURT:  Well, tell me, 10 percent of what?
 7              MR. LARSEN:  I think it was maybe a $250,000 10 percent
 8    bond.
 9              MR. RASHBAUM:  I have no idea.
10              MR. LARSEN:  I know it was a combined $600,000 bond.
11              THE COURT:  Yes, but I want the simple, not the
12    combined.  The signature means very little, doesn't it?  It just
13    makes us look good when we say, 500,000 personal surety bond.
14    It makes the prosecutor look good, the judge look good, but we
15    know the reality is it's someone's signature.
16              MR. LARSEN:  Your Honor, I think it was maybe a
17    $300,000, 10 percent.
18              THE COURT:  Okay.  So it's $30,000?
19              MR. LARSEN:  Yes, I don't know for sure.
20              THE COURT:  10 percent is 10,000 --
21              MR. LARSEN:  It was a 10 percent.
22              THE COURT:  Not with a bondsman?
23              MR. LARSEN:  No.
24              THE COURT:  My, oh my.  An agreed upon bond?
25              MR. LARSEN:  His mom cosigned on the bond.
```

1           THE COURT:  Pardon?

2           MR. LARSEN:  His mother cosigned all the bonds or the

3 bond and the signature.

4           THE COURT:  You know, mothers would sign anything for

5 their sons.

6           THE COURT:  10 percent of $100,000.

7           MR. LARSEN:  Okay.  I thought it was more than that,

8 Your Honor.

9           THE COURT:  So it's $10,000.

10          Now, I notice that -- the defense lawyer mentioned the

11 property seized.  I thought there was a motion that you couldn't

12 mention that.  I forgot if I granted it or not.  Do you

13 remember?

14          MR. LARSEN:  I did make that motion, Your Honor, but I

15 didn't see any ruling.

16          THE COURT:  I don't know if I granted it.

17          MR. RASHBAUM:  It was denied.

18          THE COURT:  I don't remember.

19          MR. LARSEN:  I don't think any ruling was made on it.

20          THE COURT:  I don't think I made a ruling on it.  I

21 think I would remember that, because the purpose of that is to

22 say he's been punished enough because he's poor and all his

23 property has been taken, and when in doubt, find him not guilty.

24 He's paid.  Would that have been the strategy?

25          MR. RASHBAUM:  Judge, I don't honestly know half the

 1  things I said in that closing.

 2          THE COURT:  Well, I do, because I listen carefully.

 3          MR. RASHBAUM:  Oh, good.  Was it good?

 4          THE COURT:  It was good.

 5          MR. RASHBAUM:  Thank you, Your Honor.

 6          THE COURT:  It was good.  The question is, was it

 7  proper?  Sometimes good and proper are two different things.

 8  But in any --

 9          MR. RASHBAUM:  There wasn't an objection.

10          THE COURT:  There wasn't an objection.  If there was,

11  we would have talked about it.  But since we have time to kill

12  while we're waiting for your client, we might as well revisit.

13          It's Throwback Thursday, I'm told -- I don't have a

14  Facebook account -- with Falcon being here.

15      (The defendant entered the courtroom.)

16          THE COURT:  The defendant has arrived at 20 till 5.

17          All right.  I have a note from the jury that says:  "We

18      would like to know the definition of kickback and an

19      explanation of the Federal Anti-Kickback Statute."

20          Oh, my friends.  I should teach trial skills to even

21  the good lawyers like yourselves who have tried cases, so you

22  can think like a regular person, and I believe in jury trials.

23  Like I said, I have only disagreed -- I am up to 760 something.

24  I've only disagreed with two verdicts in my life as a judge.

25  One was a civil case and the other was a case that we discussed

1   this morning where they bribed several jurors based on the

2   evidence presented.  I'm not saying that some guilty people were

3   found not guilty based on the evidence.

4          So what say the United States of America?

5          MR. LARSEN:  Your Honor, the jury instruction, in my

6   recollection, I don't have it in front of me, but it defines --

7          THE COURT:  Well, get it.

8          MR. LARSEN:  It defines remuneration as any

9   remuneration, either direct or indirect, covert or overt.

10         THE COURT:  It does indeed.  You're right.  Maybe

11  that's why at least one juror wants to know the definition.

12  You're absolutely right.

13         MR. LARSEN:  So --

14         THE COURT:  If I were to take a poll and ask someone

15  what covert means, what do you think the percentage of responses

16  are?

17         MR. LARSEN:  Well, in my closing, I mentioned it as

18  being secretive and out in the open.

19         THE COURT:  That was good.  That was good.

20         MR. LARSEN:  And I believe I also argued that it means

21  any amount of money, anything of value.

22         THE COURT:  You gave a good closing argument.  They

23  probably want to hear it from me.

24         You know, there was a judge -- there is a case that

25  says -- I've got it here someplace.

1          This is a case from the Eleventh Circuit.  I'm going to
2    quote what the trial judge stated.

3          Quote to the jury:  "I want to talk about the witnesses
4      a good bit here.  As I begin to do so, I will tell you, of
5      course, you have to consider all of the evidence in the
6      case.  You have to consider all of the testimony in this
7      case.  That doesn't mean you have to accept all of the
8      evidence and testimony as true or as accurate.  To put it as
9      bluntly as I know how, there is no way you could accept all
10     the testimony in this case as true, because you know as well
11     as I do that someone is lying.  It is your responsibility to
12     figure out who that is."

13         The appellate court held that the instruction was not
14   plain error.  I always keep these type of cases as a guidance
15   for what my guidelines are while you all are thinking.

16         This other one from Federal -- if you want to look it
17   up, it's United States versus Beard.

18         United States versus Stanfield from the Ninth Circuit
19   says:

20         "The judge, therefore, undertook to deviate from the
21     traditional trial format and announced his intention to make
22     the opening statement to the jury for each side.  He
23     announced this novel procedure immediately prior to the
24     commencement of the trial."  And he said, "I am going to
25     make it myself and it is because I am aware of the trend of

1    the evidence in this case and I want to try to simplify it

2    as best as I can for you.  I feel that the evidence in this

3    case is going to permit of two choices and that you are

4    going to have to make that choice from the evidence, of

5    course.  I will be very frank with you and tell you," to the

6    lawyers, "that you all talk too long.  It takes you too long

7    to say what I can say in very short order."

8         Thereupon, the Court addressed the jury and his entire

9    statement is set out in the margins that took over two pages.

10   He did get reversed, but it is the Ninth Circuit.  But I only do

11   that to tell you, yeah, I could simplify things, but I'm not

12   sure it's my role unless it's the law.

13        So the Government says that I should do what?  Read

14   back the same jury instruction, I take it.

15        MR. JUENGER:  Your Honor, I think --

16        THE COURT:  Yeah, I'm not going to tell them that your

17   colleague told them what it was, so remember it.  I won't do

18   that, though, I think he did.

19        MR. JUENGER:  Right.  And I think that the instructions

20   as written define the crime, that they are supposed to figure

21   out what the --

22        THE COURT:  My question was what?  What do I tell the

23   jurors?  Do you want me to tell them that?

24        MR. JUENGER:  I guess that's what I'm saying.  Maybe

25   that's --

1          THE COURT:  Well, but how do I say it to them in a nice

2    way?

3          MR. JUENGER:  Exactly.  That's the trick.  That's

4    always the trick.

5          THE COURT:  You can't do that.  Okay.  That I can do.

6    Maybe better than an advocate, I don't know, but I'm giving you

7    the opportunity first.  And then I see Mr. Marcus grabbed the

8    podium -- the lectern.  I was once corrected.  It's a lectern,

9    not a podium.  He grabs it with two hands, so he's ready to go.

10          But I gave you your turn first.  Anything?

11          MR. JUENGER:  I think to try and point them back to the

12    elements of the offenses and, in particular, maybe the kickbacks

13    are charged in instruction -- whichever it is.

14          THE COURT:  Which you don't have?

15          MR. JUENGER:  Which I don't have.

16          THE COURT:  Okay.  All right.  What say the defense?

17          MR. MARCUS:  Your Honor, we offered a definition of

18    kickback instruction that the Court didn't give because it

19    wasn't Pattern --

20          THE COURT:  Okay.  Read it.  Because remember, what we

21    want is to simplify it.  So I want to hear the simplified

22    version.

23          I assume it was a simplified version and I said, no,

24    that's too simplified.

25          MR. MARCUS:  It's a paragraph.

1          THE COURT:  I said that, right?  Okay.  Let me hear it
2    to remind me of the simplified version that would clarify
3    everything for the jurors and maybe I'll give it.
4          Go ahead.  Read it.
5          MR. MARCUS:  While the Anti-Kickback Statute makes it
6       illegal to offer or pay remuneration as a kickback, it does
7       not prohibit all payments or financial transactions in the
8       pharmaceutical industry.  A kickback is a bribe or corrupt
9       payment.  It must induce another person to act unlawfully.
10      For example, paying a physician in exchange for the writing
11      of a prescription is an example of a kickback.  However,
12      paying a telemedicine company in advance for a physician
13      consult, regardless of the results, whether the consultation
14      results in the ordering of a prescription, is not a
15      kickback.  Making such a payment with the hope of obtaining
16      a referral for a prescription is not a kickback.  There must
17      be a quid pro quo agreement along the lines of, I will pay
18      you if you write a prescription for medication."
19         THE COURT:  Okay.  Yeah, I remember that instruction.
20   And that's an instruction that was given in a particular case or
21   a combination of an instruction that was given in a Government
22   corruption case or was that a health care instruction?  You
23   modified a corruption instruction, right?  You modified it,
24   right?
25         MR. MARCUS:  We modified a health care instruction

1 | given in a couple of the pharmaceutical marketing cases.  We did
2 | cite to a corruption case that was --
3 |         THE COURT:  Yeah, but that's not the instruction that
4 | that judge gave in that case.  That's an instruction that
5 | Mr. Marcus would give to the jury.  It sounds like a great
6 | closing argument, too, that you didn't get a chance to give, but
7 | that's not my business.  But that's what it sounds like.
8 |         And again, you all did a good job, but you know that I
9 | was kind of half kidding that I'm not going to give a closing
10 | argument.
11 |         I mean, number one, does it have to induce someone?
12 | Does the law say that you have to induce someone or can you just
13 | pay kickbacks without --
14 |         MR. MARCUS:  Inducement, it's an element of the
15 | statute.  You have to induce.
16 |         THE COURT:  Okay.  What say the Government?
17 |         MR. JUENGER:  Well, Your Honor, I would oppose that
18 | instruction on several grounds.
19 |         THE COURT:  Well, I know that, but do you have to
20 | induce someone?
21 |         MR. JUENGER:  I think that it -- whatever the verb is,
22 | whatever those verbs are, they're in the instructions as
23 | written.  But it's not a correct statement of law to say that
24 | there has to be corrupt intent or corrupt payment.  There's no
25 | suggestion that it has to be quid pro quo.  And the facts of the

1   case are that we didn't --

2          THE COURT:  Well, I suspect the jurors may say, what is

3   quid pro quo?

4          MR. JUENGER:  Yes, they probably will.

5          THE COURT:  I know they would say that, right?

6          MR. JUENGER:  And the facts of the case and the

7   kickbacks that were charged have nothing to do with kickbacks to

8   the doctors.  It's kickbacks to the sales reps and to the

9   patients.

10         THE COURT:  Okay.

11         MR. JUENGER:  So it's on --

12         THE COURT:  Okay.  Are kickback --

13         MR. JUENGER:  -- several grounds.

14         THE COURT:  Okay.  I'm sorry.  You're done?

15         MR. JUENGER:  Yes.

16         THE COURT:  Are kickbacks to sales representatives

17  illegal, according to the defense, not "is your client guilty?"

18  I'm not asking you to say that.  But if proven, are kickbacks to

19  sales representatives against the Anti-Kickback Statute?

20         MR. MARCUS:  Not if they're your employee.  You can pay

21  a kickback to a third party.

22         THE COURT:  So if someone wanted to be a real

23  sophisticated kickbacker, all you would have to do is form a

24  company, employ the recipients of the kickbacks, and they could

25  never be charged with this?  Does that make sense to you?

1           In other words, all you have to do -- I'm not
2   suggesting that's what happened here, but since you're making a
3   legal argument, all a sophisticated kickbacker would have to do
4   is say, hey, I read the Code of Federal Regulations.  I even got
5   a -- not that that happened here -- a sneaky lawyer to tell me,
6   if you do it this way, you're fine.  And let's assume that they
7   are both doing it corruptly and they say, all we have to do is
8   form a corporation.  You become my employee.  Instead of a 1099,
9   you just do your W form, but my intention is to give you a
10  kickback, and this is how I avoid the law.
11          If someone did that -- not your client -- but if
12  someone did that, would they violate the Anti-Kickback Statute?
13          MR. MARCUS:  If you prove --
14          THE COURT:  The Government says yes, right?
15          MR. MARCUS:  That's already --
16          MR. JUENGER:  Yes, Your Honor.
17          THE COURT:  Okay.
18          MR. MARCUS:  That's already baked into the definition
19  of employee.  That's the bona fide --
20          THE COURT:  No, no.  Would that be illegal?
21          MR. MARCUS:  If you had corrupt intent and that was --
22          THE COURT:  What is corrupt intent?
23          MR. MARCUS:  Well --
24          THE COURT:  I suspect the jury would say, what is
25  corrupt intent?

1          MR. MARCUS:  If your intent was to get around or to

2     pretend to be in the safe harbor by hiring an employee, but that

3     it wasn't a legitimate employer/employee relationship, it was

4     just a sham, then yeah.  Just like with Consulting Agreements,

5     Your Honor.  That's another safe harbor.  If you can prove that

6     the Consulting Agreement is a sham, that it's not real, that the

7     terms on paper, no one had any intention of complying with, it

8     would be a similar kind of argument.  But the reason that the

9     safe harbors exist is that --

10         THE COURT:  Yeah, but the way you read the instruction

11    that you proposed, not another judge -- because it's not

12    literally an instruction from another judge, right?  The way you

13    propose it, it's almost like directing a judgment of acquittal,

14    end of story.

15         MR. MARCUS:  Well, no, it's --

16         THE COURT:  Without even getting into the good faith.

17         MR. MARCUS:  Well, no, because it talks about if it's a

18    bribe or if it's a corrupt payment, then it is a --

19         THE COURT:  And the statute talks about the word

20    corrupt.  That's added.  I'm not a congressman.

21         MR. MARCUS:  That's in the case law.  I mean, that's

22    part of --

23         THE COURT:  For health care fraud?

24         MR. MARCUS:  For the Anti-Kickback Statute, yes.

25         THE COURT:  Okay.  Give me the case that says that

1    instruction was given the way it is, and then read to me the

2    instruction from that case, because you told me you modified it.

3    See, I can't give an instruction that I'm not comfortable with

4    being the law.  By the time I give the law, I have to be 100

5    percent comfortable that it's the law, right?

6         MR. MARCUS:  I can file it tonight, Your Honor.

7         THE COURT:  No, no.  They want to know now.

8         MR. MARCUS:  I know.  I mean, I can file the

9    word-for-word instruction that was given.

10        THE COURT:  But it's not what you proposed.

11        MR. MARCUS:  The facts are a little different.  I just

12   think --

13        THE COURT:  That's why the instruction has to be a

14   little different, see?

15        MR. MARCUS:  Well, in that case, they were -- it

16   involved a drug that was being marketed to physicians.

17        THE COURT:  So that's why it's different.  That's why

18   we can talk about it.  What did it involve here?  What it

19   involved here were sales representatives, right, for the

20   kickback portion of the Indictment.  That's what's different.

21        Did any doctors receive a kickback?

22        MR. MARCUS:  In the Massachusetts case?

23        THE COURT:  No.

24        MR. MARCUS:  Oh, here.

25        THE COURT:  In the good old Miami case.

1          MR. MARCUS:  They've argued it.  Well --

2          THE COURT:  Did any doctor get a kickback according to

3    this evidence?

4          MR. MARCUS:  We don't believe so, but they have argued

5    that the telemedicine payments are effectively -- they have

6    talked about paying physicians, that it's a kickback.

7          THE COURT:  Does the Government claim that a doctor got

8    a kickback in this case?

9          MR. JUENGER:  No, Your Honor.

10          THE COURT:  There you go.

11          MR. MARCUS:  Well --

12          THE COURT:  So, therefore, neither side --

13          MR. MARCUS:  Can we get a stipulation to that?

14          THE COURT:  -- neither side is arguing that a doctor

15    got a kickback.

16          MR. MARCUS:  I don't think the jury --

17          THE COURT:  So that's why that instruction will not be

18    given.  I can't give that instruction.

19          MR. MARCUS:  Well --

20          THE COURT:  Because that's not what the case is about.

21          Now, you may be right in the kickback and say, well, if

22    that's not what the case is about, the Anti-Kickback Statute

23    only applies to doctors.  And if it's true that the

24    Anti-Kickback Statute only applies to doctors, then obviously

25    the Government has conceded that no doctor was bribed here.  So

1   you would win, but I don't think that's the law.

2          MR. MARCUS:  It applies to people.  No question, Your

3   Honor.

4          THE COURT:  Which includes sales representatives.

5          MR. MARCUS:  But this is the problem and this is why

6   there are all these safe harbors and why the case law has

7   developed the way it has:  Because the kickback statute on its

8   face, if you read the terms, can capture literally all sorts of

9   legitimate normal business activity, normal marketing, normal

10  promotion.  That's why we offered some of the instructions we

11  did.

12         I think the point of the jury's question is that they

13  want to understand what makes a payment illegal, what turns it

14  into a kickback as opposed to a commission payment that you pay

15  your sales rep.  And the truth is that if you have -- and, you

16  know, a lot of it, obviously, comes down to intent.  That's why

17  we had the corrupt element.

18         But if you believe -- if you're receiving commission

19  payments from a company, whether you're paying them in

20  management or receiving them as a representative and you are

21  trying to comply with the safe harbor, even if you don't

22  actually comply technically, that is a good faith defense to the

23  Anti-Kickback Statute.

24         THE COURT:  But I've given a good faith.  Let's look at

25  the instruction that I've given, to which I think there was no

 1    objection, all right, though there were others that you wanted

 2    me to give, and you've preserved that.

 3          MR. MARCUS:  Right.

 4          THE COURT:  We're talking about the Federal receipt of

 5    kickbacks.  All right?  Let's do that one.  The payment of

 6    kickbacks I gave later.  It's the same one except payments

 7    instead of receipts.

 8          So on Page 18, Instruction Number 14 says:

 9          "A defendant can be found guilty of that offense" -- in

10       this case receipt of kickbacks -- "only if all of the

11       following facts are proved beyond a reasonable doubt:

12          "First, that the defendant knowingly and willfully

13       solicited or received remuneration, such as a kickback or

14       bribe, as charged in the Indictment;

15          "Two, that the defendant solicited or received the

16    remuneration or kickback in order to induce the referral of an

17    individual to a person or entity for the furnishing or arranging

18    for the furnishing of any item or service;

19          "And three, that the payment for such items or service

20    may be made in whole or in part under a Federal health care

21    program."

22          So it doesn't have to be to a doctor.  It can be to an

23    individual who is the middleman towards the doctor.  That's what

24    it is.

25          Now, "Remuneration is a payment, such as a kickback" --

1      I added that part, where it doesn't have to be.

2      "Remuneration is a payment, such as a kickback, bribe or

3      rebate, made directly or indirectly, overtly or covertly, in

4      cash or in kind."

5          "Remuneration" -- and then I add the part from the

6  so-called safe harbor.  Okay?  I don't tell them safe harbor,

7  because the people, when you say safe harbor, they think it's

8  Biscayne Bay.  I mean, that's how normal people who don't go to

9  law school think, all right, which is the right way to think,

10  incidentally.

11         "Remuneration does not include any amount paid by an

12     employer to an employee who has a good faith" -- and I put

13     "bona fide" because you all used that -- "employment

14     relationship with the employer, for employment in the

15     furnishing of any item or service for which payment may be

16     made in whole or in part under a Federal health care

17     program."

18      I mean, that covers it.  If he acts in good faith, he

19  has an employer and an employee relationship, and then it's not

20  remuneration.  Thus, it's not a kickback.  Isn't that what it

21  says?

22         MR. MARCUS:  But -- right.

23         THE COURT:  And you could argue that and kind of argued

24  it.  You didn't argue, but your co-counsel.

25         Then it does say, "The sole purpose doesn't have to

1    be" -- so there is the inducing.  Inducement is an element, I do

2    tell them, because they are not asking.  So that's what it is.

3    The explanation is there.

4         Now, I can read it again, and I will do so, but I'm not

5    going to read one that it's limited to doctors because it isn't

6    limited to doctors.  If not, all you would have to do is just

7    have the middleman and no one could ever be charged, let alone

8    convicted.

9         MR. JUENGER:  Your Honor, as I --

10         THE COURT:  Any other suggestion by the Government?

11         MR. JUENGER:  Your Honor, as I listen to you read it,

12    it strikes me as a little odd because I think the several

13    elements define what a kickback is, and yet in the middle of it,

14    in the parentheses, it says, which can be a kickback, bribe, et

15    cetera.  So it sort of repeats itself and it makes one think --

16         THE COURT:  Well, was that your suggested jury

17    instruction?

18         MR. JUENGER:  It's no one's fault but ours, but --

19         THE COURT:  But it's always good --

20         MR. JUENGER:  -- that may be the confusion.

21         THE COURT:  -- to object to one's own instruction, I

22    know, but that's the legal field.

23         Well, what do you think we could say to make it

24    clearer?  I mean, we normally don't use a regular dictionary.

25    Remuneration is easy, though they're not asking for that.  It's

1    money.  There's no suggestion that it's in kind.  Nobody got

2    football tickets or cars or dinners.  So we don't have to worry

3    about that.  But I can tell them "remuneration" is a payment,

4    money.  So a kickback is to give someone money to induce them to

5    do something.  To induce them to do something is to induce them

6    to continue the same illegal system.  If you think the defendant

7    acted legally and in good faith, thought he wasn't violating the

8    law, he should be found not guilty, shouldn't he?  Government?

9              MR. JUENGER:  Yes.

10             THE COURT:  Why not tell them just what I said?

11             MR. RASHBAUM:  Judge?

12             THE COURT:  Nobody likes plain English, and I'm not

13   courageous enough to do what Judge Eaton used to do, may he rest

14   in peace.  That's how he would give the jury instructions.  He

15   would have a chat with the jurors.

16             What do you want me to say?  Or to rely upon the

17   instructions as I read them?

18             MR. RASHBAUM:  Exactly.

19             THE COURT:  Look at that.  How I know how people think.

20             MR. RASHBAUM:  That's exactly --

21             THE COURT:  Because you're advocates.

22             MR. RASHBAUM:  That's the most appropriate thing to

23   say, Your Honor.  You have charged --

24             THE COURT:  That's the least courageous thing to do,

25   the thing we mostly do, and the safest thing to affirm a

1    conviction.  You're right.

2         MR. RASHBAUM:  It's the most appropriate thing to do.

3         THE COURT:  Why?

4         MR. RASHBAUM:  You've charged the jury.  You've given

5    them the instructions on the law.  The Government has had an

6    opportunity to give a closing argument to make their burden of

7    proof --

8         THE COURT:  So you should never give additional

9    instructions?

10        MR. RASHBAUM:  Judge, we don't --

11        THE COURT:  That's what the Eleventh Circuit says?

12        MR. RASHBAUM:  Judge, we don't know -- none of us are

13   back there.  The question, I don't have it in front of me --

14        THE COURT:  I'll give it to you.  But it says, "We

15        would like to know the definition of kickback and an

16        explanation of the Federal Anti-Kickback Statute."

17        MR. RASHBAUM:  "An explanation of the Federal

18   Anti-Kickback Statute" could mean a hundred different things.

19   It could mean we don't know whether you can give -- whether it's

20   a violation to give it to a patient.  We don't know whether it's

21   a violation to give it to a sales representative.  We don't know

22   whether it's limited to a doctor.  It can mean a hundred

23   different things, and if we respond in a way that is incorrect

24   to what they're asking, we are putting ideas in their head that

25   we shouldn't be putting in.

1           Judge, the appropriate thing is to say, you've heard

2     closing arguments.  You've heard my jury instructions.  That's

3     the law that I can give you in this case.

4           That is not only the safest thing to do, it is the only

5     appropriate response, because we don't know what they're asking.

6           THE COURT:  I disagree with the "only" appropriate

7     response --

8           MR. RASHBAUM:  The most appropriate response.

9           THE COURT:  -- because judges should answer questions.

10    That's what we are here for.

11          MR. RASHBAUM:  That's --

12          THE COURT:  That's why I get -- we're interrupting each

13    other.

14          MR. RASHBAUM:  I'm sorry, Your Honor.

15          THE COURT:  That's why I get paid the big bucks, to

16    tell them the law.

17          MR. RASHBAUM:  That second clause, Your Honor, we have

18    no idea what they're asking.

19          THE COURT:  Okay.  Maybe I'll ask them, I don't know

20    what you mean.  So tell me what you mean that you need, and then

21    we can answer it.  That's a great suggestion.  Maybe they can

22    tell us.  That's not a bad idea.  That's why they have these

23    notes.

24          Anything else?

25          MR. JUENGER:  Your Honor, if I were to fashion an

1  answer at least to that first part, what is a kickback, I would

2  say the instruction defines what a kickback is.  If you wanted

3  to read it, it's any remuneration, blah, blah, blah.  That is

4  what a kickback is.

5         THE COURT:  All right.  Bring in the jurors.  They need

6  to stretch anyway.

7         THE COURT SECURITY OFFICER:  All rise for the jury.

8      (The jury returned to the courtroom at 5:12 p.m.)

9         THE COURT:  Thank you, folks.  Good afternoon.  How are

10 you all doing?

11        Okay.  I know you've been working hard.  Thank you very

12 much for working so hard.

13        I have your last note where you say, "We would like to

14   know the definition of kickback and an explanation of the

15   Federal Anti-Kickback Statute."

16        I don't know how much of an explanation or what type of

17 questions you may have.  So I may send you back to tell me if

18 you have any specific questions about what type of explanation

19 you want.  I'm not suggesting you should do that, but if you

20 want to do that, I'll let you do that, because that's the way

21 I'm going to answer the question until or unless you ask me some

22 more specific questions as to what kind of an explanation you

23 want about the Federal Anti-Kickback Statute.

24        I've given you so far the law as it applies to Count 9

25 all the way up to the 40s, there were some numbers that were

1  skipped, but through the 40s on the charges that have to do with

2  kickbacks, including the conspiracy.  And you remember that,

3  among other things, you have to take all the instructions

4  together, not zero in on one.  The only reason I'm zeroing in on

5  this one is because you're asking for it, but you should take

6  all the instructions as a whole.

7          And it says, among other things:  A defendant can be

8  found guilty of that offense -- and this one has to do with

9  receipt of kickbacks in connection with a Federal health care

10  benefit program -- only if all of the following facts were

11  proved beyond a reasonable doubt:

12          First, that the defendant knowingly and willfully

13  solicited or received remuneration such as a kickback or bribe

14  as charged in the Indictment.

15          Two, that the defendant solicited or received a

16  remuneration or kickback in order to induce the referral of an

17  individual to a person or entity -- it could be a company -- for

18  the furnishing or arranging for the furnishing of any item or

19  service.

20          And three, that the payment of such items or service

21  may be made in whole or in part under a Federal health care

22  program.

23          So "remuneration" you know is money, right?  So that

24  takes care of that in case that was an issue.  So I say

25  remuneration is a payment such as a kickback, bribe or rebate --

1    then it says in the same instructions I gave you -- made

2    directly or indirectly, overtly, which is openly, or covertly,

3    which is hiddenly, in cash -- it says "in kind."  "In kind"

4    means an item, if someone were to get a car or a vacation.

5            Now, remuneration, though, something that you gain,

6    money, does not include any amount paid by an employer to an

7    employee who has good faith, who has a good faith employment

8    relationship with the employer, for employment in the furnishing

9    of any item or service for which payment may be made under a

10   Federal health care program.

11           I don't know if that was helpful because I've given it

12   to you before.  All it does is kind of zeroes in on that.

13           And then I put, to satisfy the second element, and the

14   second element is that the defendant solicited or received the

15   remuneration or kickback in order to induce the referral of an

16   individual, to a person or entity, for the furnishing or

17   arranging for the furnishing of any item or service.

18           To satisfy that element, the Government doesn't have to

19   prove that is the sole purpose.  The Government has to prove

20   that it was one of the defendant's purposes, to induce the

21   referral.

22           That's the instruction I gave you already without

23   objection from either side.  So that's the instruction.

24           Now, receipt.  Same thing goes for payment, because I

25   read that, too, but I told you it's the same thing.

1          I'm not sure that answers the question because I don't

2     know whether you have any other questions on it.  Feel free, if

3     you want to -- you don't have to because we don't have a right

4     to invade what you do as jurors in there, you know.  You make

5     the decision based on the evidence, based on the law.  I've

6     given you 12 copies of the instructions.  I don't generally do

7     that, but in this case I think it was a good idea.  The

8     Indictment is only the charging document, but you have the

9     Verdict Form as a guidance with the not guilty and the guilty.

10          If you have any other questions that you think I can

11    answer better than just telling you, well, look it up on page

12    so-and-so, I'll be glad to do it.  Or maybe I can tell you more,

13    but I don't know.  The chances are I won't tell you more, but I

14    might.

15          But it depends on what you ask.  Okay?  I don't know if

16    it's been helpful, but at least I gave you a chance to stretch.

17    Okay?

18          Continue deliberating as long as you want.  You want to

19    go home now?  You want to work a little bit later, come back

20    tomorrow morning?  What is your preference?

21          MR. RODRIGUEZ:  I think it's best if we go home.

22          THE COURT:  Okay.  Any disagree with that?  No?  Then

23    go home.

24          Now, you know what I'm going to tell you.  Don't read

25    anything about the case.  Don't talk to your friends, your

1    spouses about the case.  Don't google.  Don't start, you know,

2    let me google kickbacks, see what it is.  Oh, yeah, it has to do

3    with -- and then you start reading about other cases that have

4    nothing to do with this case, right?  Don't google health care

5    kickback.  Don't google the lawyers or the defendant and find

6    out whether he was a good football player or not, you know,

7    things like that.  Don't google the judge.  Later on you can

8    google the judge all you want.  I don't care.  But don't do that

9    because then it's going to influence you.

10          What you want to do is kind of take a breather, I would

11   think, anyway with this instruction.

12          So since I read to you something that I already gave

13   you, I'm not going to type it again because I don't want to add

14   any more importance to that.  All right?  Is that okay?

15          Now, tomorrow morning, 9:00 for most of you.  Some of

16   you come at 8:45 to make up for it.  So you can all get here

17   around 9:00.  Okay?

18          Was Mr. Jones, the elder, the first one again today or

19   not?

20          MR. J. JONES:  Yes.

21          THE COURT:  Look at that.  See?  You know, you're going

22   to get paid the same fee as a juror as anybody else.  I just

23   wanted you to know that, but that's how it works.  Okay?

24          Have a good afternoon.  We're going to give you back

25   your phones.  Leave your notebooks.

1          Should we leave everything the same way that it's,

2    quote, organized, the way it is there, end quotes, from what my

3    courtroom deputy says?

4          MR. G. JONES:  Yes.

5          THE COURT:  Okay.  We'll leave it alone, but we'll take

6    the garbage out.  Okay?

7          Thank you.  See you tomorrow sometime.

8          THE COURT SECURITY OFFICER:  All rise.

9      (The jury retired from the courtroom at 5:19 p.m.)

10          THE COURT:  Okay.  Have a seat.  You know, let's make

11   it 10 minutes today because since they are going home, that way

12   they have a chance, in case they're taking the bus.

13          Once again, when a jury deliberates a long time, it's

14   kind of an indication for the lawyers to look at their case on

15   both sides and to see where they are in relationship to where

16   they want to be and do whatever they think is in the best

17   interest of their respective clients, if they think it's

18   appropriate.  I don't get involved in that, but I hear that some

19   lawyers in some cases before other judges do that.  I don't know

20   if that's one of these cases.  Doesn't matter to me.

21          If for some reason he's guilty on any count, we'll go

22   right through forfeiture, and it should take -- closing

23   argument?  You can merge your opening and closing.  Who's going

24   to give it?

25          No volunteers?  I thought someone else was going to

1    give it, the forfeiture lawyer.

2             MR. JUENGER:  I think he will be here tomorrow.  Anyone

3    of us can do it.

4             THE COURT:  Okay.  Whoever is doing it, how much time?

5             MR. JUENGER:  I said three minutes.  I don't see why

6    not.

7             THE COURT:  We'll give you five.

8             And defense said same amount of time, right?

9             MR. MARCUS:  That's fine, Your Honor.

10            THE COURT:  Okay.  So that will take care of that.  And

11   then I'll give -- did you see the proposed Government's

12   instructions?  You seem to be an instructions type of guy.  Why

13   don't you look at it?

14            MR. MARCUS:  I'll look at them tonight, Your Honor.

15            THE COURT:  Oh, no, I want you to look at them now,

16   see?  I mean, yeah I like -- well, here.  Look at them.  Well,

17   see, I just violated my own rule.

18            Look at it.  Tell me what you don't like about it, if

19   you don't.

20            And in fact, here, let me give you the Special Verdict

21   Form, too.

22            If for some reason by tomorrow they have not reached a

23   decision -- listen up.  If for some reason after an Allen

24   Charge, if appropriate, if they say they're not -- I'm not

25   suggesting they are hung.  If for some reason after an Allen

1  Charge, assuming that's appropriate, they can't reach a

2  decision, it's my practice to go to trial immediately

3  afterwards.  So that way you have -- I don't know what's going

4  to happen.  I really don't, but I'm giving you that to give you

5  an opportunity to tell me.

6          I think I would rather try this case a second time than

7  a slip-and-fall on a cruise line case, though that one would be

8  shorter.

9          So what say Mr. Larsen?

10         MR. LARSEN:  Your Honor, we can do that, but we have

11  the complication that almost all of our fact witnesses were

12  brought in from all over.  They're not in Florida.  So we would

13  have to arrange to bring them all back.  We haven't contacted

14  them about that.  We can certainly start that processes, but I

15  don't know what kind of -- on a Friday.

16         THE COURT:  That's why I tell you on Thursday instead

17  of Friday night.

18         MR. LARSEN:  We would have to reach out.

19         THE COURT:  Okay.  How about conflicts?  Do you have

20  any conflict, personal, or other judges?

21         MR. LARSEN:  Your Honor, I do.  I was planning to be in

22  Arizona on the 11th of February to visit my family.  My brother

23  is --

24         THE COURT:  Okay.  That's a good thing.

25         Where in Arizona?  If you want to say.  You don't have

1  to if you don't want to.

2        MR. LARSEN:  In Phoenix.  My brother got Hamilton

3  tickets and that's a very tough ticket to get and I was really

4  hoping I could get to go.

5        THE COURT:  Okay.  They are coming to Miami next year,

6  though.

7        MR. LARSEN:  You can't even necessarily get them.  He

8  got the lottery, and I have young nephews I'd like to spend time

9  with.  That's my personal thing, Your Honor.

10        THE COURT:  Of course, and I'll accommodate you.  It's

11  only fair.  I haven't seen the play, but I know my wife wants

12  to.  I'm not that much of a play guy, but it's okay.  I'm not

13  sure if that's my cup of tea anyway, though I did like Hamilton,

14  the man, the history.

15        Okay.  And defense, you've got to be in front of other

16  judges, or are you going on vacation?  As long as I have one of

17  you, I don't need all three of you, but it's your client's

18  decision who he wants.

19        MR. RASHBAUM:  Judge, everything can be moved around,

20  but I'm supposed to be at LEGOLAND -- not quite Hamilton -- on

21  February 12th.

22        THE COURT:  Okay.  All right.  Never been there.

23        MR. RASHBAUM:  Neither have I.

24        THE COURT:  My kids are too old.  They didn't have

25  LEGOLAND then, and I don't have grandkids because none of my

1    kids are married, for the record.  But maybe that will change.

2            Gilda says, I can't believe you say these things.

3    That's what the appellate judges say, but they like my

4    transcripts, anyway, since we're not doing it in front of the

5    jury.

6            So I take it you all prefer to do it later?  And we

7    don't know -- I don't mean to suggest that something like that

8    is going to happen.  Obviously, I prefer that it not happen, but

9    let's plan.  So when you have to call witnesses initially, you

10   say, hey, it may be that way, but we can't tell you.

11           How long would you think the next trial would take?  We

12   all know more about hearsay, you all know about my rulings, so

13   we skip all of that blabber from me and from others.  So I think

14   we did it in, what, a week and -- the testimony was a week and

15   one day.  So we can do it in less time, obviously, right?

16           Government is nodding their head.  Yes?

17           MR. JUENGER:  Yes, Your Honor.  We'll endeavor to do it

18   in a week.

19           THE COURT:  Defense agrees?

20           MR. RASHBAUM:  I'm sorry, I didn't hear.

21           THE COURT:  We can do it in less time since we

22   eliminate all the arguments of law, right?  You agree?

23           MR. RASHBAUM:  I don't know.

24           THE COURT:  Why don't you know?

25           MR. RASHBAUM:  I've got to see who they call the next

1    time.

2              THE COURT:  They're going to call the exact same

3    people.

4              MR. RASHBAUM:  Then it should be quicker.

5              THE COURT:  It should be less than what it was?

6              MR. RASHBAUM:  Yes, it should be quicker if they call

7    the same people.

8              THE COURT:  Of course.  Are you going to call

9    additional people?

10             MR. JUENGER:  I don't think so.

11             THE COURT:  Okay.  So is March 19th a good day for both

12   sides?

13             MR. MARCUS:  No, Your Honor.  March 19th?

14             THE COURT:  Yeah.

15             MR. MARCUS:  It's spring vacation, Your Honor.  I'm out

16   of the country.

17             THE COURT:  For the whole week?

18             MR. MARCUS:  Yeah.  For a little longer than a week.

19             THE COURT:  Well, how much longer than a week?  Tell

20   me.

21             MR. MARCUS:  I'll tell you.  I believe I'm back the

22   29th.

23             THE COURT:  That's two weeks.

24             MR. MARCUS:  They get two weeks.

25             THE COURT:  Spring vacation is two weeks?

1          MR. MARCUS:  In school, in their school, they're out.

2          THE COURT:  For two weeks?

3          MR. MARCUS:  Yeah.

4          THE COURT:  So we should do it before.

5          Okay.  What I'll do then, we will go to trial during

6     the two-week period of March 5th.  So it's the week of March

7     5th, the week of March 12th.  If for some reason we have to

8     retry it, that's what we'll do.

9          Does that make sense?  Is everybody in agreement?  Any

10    disagreement?

11         MR. JUENGER:  No disagreement, Your Honor.

12         THE COURT:  From the defense?

13         MR. RASHBAUM:  That should be fine, Your Honor.

14         THE COURT:  Okay.  So now you know.  You can plan

15    accordingly, and for both sides, I hope it doesn't happen, and

16    for my sake I hope it doesn't happen, but I'm here to serve.

17         Anything else?  All right.  I told the jurors 9:00,

18    8:45 for some of them.  So, yeah, I'm going to set a time,

19    particularly for the defendant.  Your lawyers will tell you, if

20    you're late, I'm going to take you into custody.  They'll tell

21    you I mean it.  So I wouldn't be late.  So be here at 10 minutes

22    till 12, and if nothing happens, we will send you back and you

23    can be here at 3:00.

24         So the two times that the defendant has to be here

25    without any further notice is 11:50 tomorrow, Friday, and then

```
 1   2:50 in the afternoon.  All right?  But in addition to that, we

 2   have your phones and we should call you.  But without a phone

 3   call, that's when I need one lawyer for each side and the

 4   defendant.  Okay?

 5            Do you understand that, Mr. Grow?

 6            THE DEFENDANT:  Yes, Your Honor.

 7            THE COURT:  Okay.  Anything else?

 8            MR. LARSEN:  No.

 9            THE COURT:  Okay.  Have a good afternoon.

10            THE COURT SECURITY OFFICER:  All rise.

11      (The trial adjourned at 5:32 p.m.:)

12

13                  C E R T I F I C A T E

14      I hereby certify that the foregoing is an accurate

15   transcription of proceedings in the above-entitled matter.

16

17   ____09-10-18_____     _____
         DATE               GILDA PASTOR-HERNANDEZ, RPR, FPR
18                          Official United States Court Reporter
                            Wilkie D. Ferguson Jr. U.S. Courthouse
19                          400 North Miami Avenue, Suite 13-3
                            Miami, Florida  33128    305.523.5118
20                          gphofficialreporter@gmail.com

21

22

23

24

25
```

**A**

about 9:22,23,25 10:19,20 11:10
  14:10,11,12,12,2 15:4 16:23
  17:12 23:11 25:3 32:17,19
  33:18 34:6,20,22 36:4 39:3
  42:18,23 45:25 46:1,3 48:18
  49:14,19 51:12,12
above-entitled 54:15
absolutely 24:12
abuse 5:24
accept 25:7,9
accommodate 50:10
according 30:17 34:2
accordingly 53:15
account 23:14
accurate 25:8 54:14
acquittal 32:13
across 20:24
act 28:9
acted 39:7
acting 12:6
action 6:4
activity 35:9
acts 37:18
actually 5:5 6:22 35:22
add 37:5 46:13
added 13:23 32:20 37:1
addition 13:20 15:17 54:1
additional 40:8 52:9
addressed 26:8
adjourned 54:11
advance 28:12
advocate 27:6
advocates 39:21
affirm 39:25
after 48:23,25
afternoon 17:5 18:9,25 42:9
  46:24 54:1,9
afterwards 49:3
again 29:8 38:4 46:13,18 47:13
against 5:22,25 30:19
agencies 9:18
agency 8:18 11:8 13:11
ago 8:9 17:22 19:19
agree 7:19,23 51:22
agreed 11:15 21:24
agreement 28:17 32:6 53:9
Agreements 32:4
agrees 51:19
ahead 28:4
ahold 17:16
aid 5:20
Airbnb 21:1
allegations 9:17
Allen 48:23,25
allow 6:4
allowed 18:16
all-or-nothing 11:16,21
almost 32:13 49:11
alone 38:7 47:5
along 28:17
already 31:15,18 44:22 46:12
although 9:9
always 4:22,23 13:15 25:14 27:4
  38:19
America 1:4 4:5 24:4
among 43:3,7
amount 11:19 24:21 37:11 44:6
  48:8
analyses 7:17
analysis 6:7 7:10
announced 25:21,23
another 8:1,3 18:8 28:9 32:5,11
  32:12
answer 4:19 41:9,21 42:1,21
  45:11
answers 45:1
Anti-Kickback 23:19 28:5 30:19
  31:12 32:24 34:22,24 35:23

40:16,18 42:15,23
anybody 11:3 46:22
Anyone 48:2
anything 10:6,14 13:21 15:19
  20:19 22:4 24:21 27:10 41:24
  45:25 53:17 54:7
anyway 42:6 46:11 50:13 51:4
appeal 14:16
Appeals 15:8
APPEARANCES 1:12
appellate 14:15 25:13 51:3
applies 9:1 34:23,24 35:2 42:24
apply 6:21 9:3
appropriate 15:1 39:22 40:2
  41:1,5,6,8 47:18 48:24 49:1
approved 6:24
argue 37:23,24
argued 13:19 24:20 34:1,4 37:23
arguing 34:14
argument 24:22 29:6,10 31:3
  32:8 40:6 47:23
arguments 13:25 41:2 51:22
Arizona 49:22,25
around 9:10 16:9,23 32:1 46:17
  50:19
arrange 49:13
arranging 36:17 43:18 44:17
arrived 23:16
asking 6:10,10 14:10 30:18 38:2
  38:25 40:24 41:5,18 43:5
Associate 8:9
assume 27:23 31:6
assuming 49:1
attorney 8:9 11:24 12:5 16:15
Attorney's 1:14,15
AUSA 1:13,14 4:3 5:7
Avenue 2:6 54:19
avoid 31:10
aware 25:5
awhile 17:22
a.m 4:1 17:20 18:24 19:3

**B**

back 4:4 6:12 15:22 17:1,5,9
  26:14 27:11 40:13 42:17
  45:19 46:24 49:13 52:21
  53:22
bad 11:17 41:22
bag 4:9
baked 31:18
based 11:23 13:11 24:1,3 45:5,5
basis 11:8 12:10
Bay 37:8
Beard 25:17
became 10:10
become 31:8
before 1:10 4:11 8:2 16:16,19,20
  17:4,22 44:12 47:19 53:4
begin 25:4
beginning 10:5
behind 9:13
being 6:20 11:8 23:14 24:18
  33:4,16
believe 23:22 24:20 34:4 35:18
  51:2 52:21
believed 12:16
bench 18:11
benefit 43:10
best 26:2 45:21 47:16
better 6:3 20:16 27:6 45:11
between 18:10
beyond 36:11 43:11
big 7:1 41:15
binding 8:16
Biscayne 1:21 2:2 37:8
bit 25:4 45:19
blabber 51:13
blah 42:3,3,3
bluntly 25:9

bona 10:20 12:14,19 31:19
  37:13
bond 21:3,8,10,13,24,2 5 22:3
bonds 22:2
bondsman 21:22
boss 8:23 15:4
both 4:23 31:7 47:15 52:11
  53:15
Boulevard 1:21 2:2
Brand 8:9
breather 46:10
bribe 28:8 32:18 36:14 37:2
  38:14 43:13,25
bribed 24:1 34:25
Brickell 20:10,21
bridge 20:24
brief 17:8 19:12
bring 7:24,24 8:2 17:9,11 42:5
  49:13
brother 49:22 50:2
brought 20:18 49:12
bucks 41:15
burden 40:6
bus 47:12
business 11:25 29:7 35:9

**C**

C 54:13,13
call 12:2 16:5,7,13 17:1,4 18:11
  19:18,19,20,2 4 20:2 51:9,25
  52:2,6,8 54:2,3
called 15:24 17:16 20:1,6,8
Calling 12:2
calmer 4:4
came 11:24 15:13
capture 35:8
car 44:4
care 16:12 28:22,25 32:23 36:20
  37:16 43:9,21,24 44:10 46:4,8
  48:10
carefully 23:2
cars 39:2
case 1:3 5:16 6:24 9:2,15,19 10:5
  10:16,17 11:16 12:15,22
  13:19,24 14:24 15:15,16,16
  15:17,18,19 16:16 17:3,13,19
  17:22,23 23:25,25 24:24 25:1
  25:6,7,10 26:1,3 28:20,22
  29:2,4 30:1,6 32:21,25 33:2
  33:15,22,25 34:8,20,22 35:6
  36:10 41:3 43:24 45:7,25 46:1
  46:4 47:12,14 49:6,7
cases 8:21,21 9:1 15:2 23:21
  25:14 29:1 46:3 47:19,20
cash 37:4 44:3
caution 5:25
certainly 9:11 12:25 14:23 49:14
Certificate 3:4
certificates 17:19
certify 54:14
cetera 38:15
chance 29:6 45:16 47:12
chances 45:13
change 6:25 14:10 51:1
changed 14:23
changes 5:18
Charge 48:24 49:1
charged 27:13 30:7,25 36:14
  38:7 39:23 40:4 43:14
charges 10:7 12:25 13:9 43:1
charging 45:8
chat 39:15
checking 19:7
Chevron 9:9
choice 26:4
choices 26:3
Christie 18:1
Cichowicz 4:16 5:9 18:4
circuit 5:5,17 6:12,13,14,18,24

6:25 7:16 15:8,16,17 25:1,16
  26:10 40:11
circuits 5:14,20,21,2 5 6:2 7:12
circumstances 6:6 14:23
cite 29:2
civil 23:25
claim 34:7
claims 8:21
clarify 28:2
classmate 16:22
clause 41:17
cleaning 17:14
clearer 38:24
client 14:17 23:12 30:17 31:11
clients 47:17
client's 50:17
closing 23:1 24:17,22 29:6,9
  40:6 41:2 47:22,23
Code 9:8 10:24 11:12 31:4
colleague 26:17
combination 21:5 28:21
combined 21:10,12
come 5:15 15:22 17:1,5 45:19
  46:16
comes 35:16
comfortable 33:3,5
coming 20:14 50:5
commencement 25:24
commission 35:14,18
company 28:12 30:24 35:19
  43:17
compensation 13:11
compliance 6:3
complication 49:11
complied 12:16,17
comply 12:19 35:21,22
complying 32:7
compromise 11:17
conceded 34:25
confirmed 8:11,11,12,13,14
conflict 49:20
conflicts 49:19
confusion 38:20
congressman 32:20
connection 43:9
consider 6:8 9:11 25:5,6
conspiracy 13:8,9 43:2
consult 28:13
consultation 28:13
Consulting 32:4,6
contacted 49:13
CONTENTS 3:1
continue 39:6 45:18
contrast 6:2
convenient 16:4
convicted 38:8
conviction 40:1
copies 10:15 45:6
Coronado 4:16 5:9 18:4
corporation 31:8
correct 7:7,7 29:23
corrected 27:8
correctly 5:19
corrupt 28:8 29:24,24 31:21,22
  31:25 32:18,20 35:17
corruption 28:22,23 29:2
corruptly 31:7
cosigned 21:25 22:2
counsel 13:3 19:13,14
count 10:11 42:24 47:21
country 52:16
couple 29:1
courageous 39:13,24
course 5:5,11,23 6:3,7,12,17
  25:5 26:5 50:10 52:8
court 1:1 2:5 4:4,11,18,21 5:4,8
  6:4,21 7:1,5,20,22 8:3,5,11,14
  8:22 9:3,5,8,22,24 10:3,17,21
  10:24 11:2,7,10 12:11 13:4,6

13:13,15,20 14:6,19,21 15:7,8
15:9,11,14,22 16:7,9,12,14,18
17:9,12,11 18:23,25 19:6,9,11
19:13,16,18,20,2 2 20:4,7,9,15
20:23,25 21:3,6,11,18,20,22
21:24 22:1,4,6,9,16,18,20
23:2,4,6,10,1 6 24:7,10,14,19
24:22 25:13 26:8,16,22 27:1,5
27:14,16,18,20 28:1,19 29:3
29:16,19 30:2,5,10,12,14,16
30:22 31:14,17,20,22,24
32:10,16,19,23,2 5 33:7,10,13
33:17,23,25 34:2,7,10,12,14
34:17,20 35:4,24 36:4 37:23
38:10,16,19,2 1 39:10,12,19,21
39:24 40:3,8,11,1 4 41:6,9,12
41:15,19 42:5,7,9 45:22 46:21
47:5,8,10 48:4,7,10,15 49:16
49:19,24 50:5,10,22,24 51:19
51:21,24 52:2,5,8,11,14,17,19
52:23,25 53:2,4,12,14 54:7,9
54:10,18

**Courthouse** 2:6 54:18

**courtroom** 1:5 5:7 17:20 18:24
19:21,24 23:15 42:8 47:3,9

**Court's** 6:14

**covers** 37:18

**covert** 24:9,15

**covertly** 37:3 44:2

**co-counsel** 37:24

**crime** 26:20

**Crimes** 1:15

**criminalizes** 12:22

**cruise** 49:7

**cup** 50:13

**curtail** 10:8

**custody** 53:20

**cut** 17:4

**D**

**D** 2:6 54:18

**danger** 7:4

**dangerous** 4:19

**DANIEL** 1:19

**date** 4:18 54:17

**day** 51:15 52:11

**days** 7:3 8:9

**deal** 7:2

**decide** 18:20

**decides** 7:1

**decision** 6:17 45:5 48:23 49:2
50:18

**defendant** 1:8,19 4:2 12:21
17:13 19:5,6,14 23:15,16 36:9
36:12,15 39:6 43:7,12,15
44:14 46:5 53:19,24 54:4,6

**defendant's** 44:20

**defending** 12:9

**defense** 4:7,12,25 7:20 11:14,16
11:17,22 12:15 14:3 16:10
19:13 22:10 27:16 30:17
35:22 48:8 50:15 51:19 53:12

**define** 26:20 38:13

**defines** 24:6,8 42:2

**definition** 10:23 23:18 24:11
27:17 31:18 40:15 42:14

**deliberates** 47:13

**deliberating** 8:8 9:14 45:18

**denied** 6:5 22:17

**department** 8:8,17,25 9:5,11
11:3,7 12:10 14:4 15:15

**depends** 45:15

**deputy** 19:21,24 47:3

**Description** 3:11

**determination** 6:14

**developed** 35:7

**deviate** 25:20

**dictionary** 38:24

**difference** 20:4

**different** 23:7 33:11,14,17,20
40:18,23

**difficulties** 6:20

**dinners** 39:2

**direct** 24:9

**directing** 32:13

**directly** 37:3 44:2

**disagree** 12:12 41:6 45:22

**disagreed** 23:23,24

**disagreement** 53:10,11

**discretion** 5:24

**discuss** 13:2,4

**discussed** 23:25

**discussion** 17:8 19:12

**District** 1:1,1,11 6:4

**DIVISION** 1:2

**doctor** 34:2,7,14,2 5 36:22,23
40:22

**doctors** 30:8 33:21 34:23,24
38:5,6

**document** 45:8

**doing** 14:16 17:6,22 31:7 42:10
48:4 51:4

**done** 6:23 30:14

**door** 20:18

**doubt** 22:23 36:11 43:11

**doughnut** 18:1

**down** 4:13 10:10 18:6 35:16

**downstairs** 20:14

**dozen** 18:16

**drashbaum@mnrlawfirm.com**
1:23

**drive** 16:23

**drug** 11:20 33:16

**during** 8:8 53:5

**E**

**E** 1:20 54:13,13

**each** 10:11 25:22 41:12 54:3

**easiest** 15:24

**easy** 38:25

**eat** 16:14

**Eaton** 39:13

**Economic** 1:15

**effectively** 8:17 34:5

**efforts** 12:18

**either** 12:16 24:9 44:23

**elder** 46:18

**element** 29:14 35:17 38:1 44:13
44:14,18

**elements** 27:12 38:13

**Eleventh** 5:17 6:24 7:15 15:8,17
25:1 40:11

**eliminate** 51:22

**employ** 30:24

**employee** 10:20 12:14,19 13:11
30:20 31:8,19 32:2 37:12,19
44:7

**employer** 37:12,14,19 44:6,8

**employer/employee** 32:3

**employment** 37:13,14 44:7,8

**end** 32:14 47:2

**endeavor** 51:17

**English** 39:12

**enough** 22:22 39:13

**entered** 5:7 17:20 23:15

**entire** 26:8

**entity** 36:17 43:17 44:16

**envious** 18:1

**error** 25:14

**especially** 12:4 34:16 14

**ESQ** 1:19,20 2:1

**essentially** 13:19

**establish** 8:19

**et** 38:14

**even** 4:20 5:14 9:8 10:8,11,22
11:13 18:6 23:20 31:4 32:16
35:21 50:7

**event** 7:5

**ever** 15:3 38:7

**everybody** 17:13 53:9

**everything** 13:6 15:18 18:6 28:3
47:1 50:19

**evidence** 3:10 5:12 10:16,17
13:23 14:1 18:19 24:2,3 25:5
25:8 26:1,2,4 34:3 45:5

**exact** 52:2

**exactly** 27:3 39:18,20

**example** 28:10,11

**except** 36:6

**exception** 12:15,19

**exchange** 28:10

**Exhibits** 3:9,10

**exist** 32:9

**explain** 5:17

**explanation** 23:19 38:3 40:16,17
42:14,16,18,22

**extended** 6:19

**F**

**F** 54:13

**face** 11:20 35:8

**Facebook** 23:14

**fact** 48:20 49:11

**facts** 29:25 30:6 33:11 36:11
43:10

**fair** 50:11

**faith** 11:15 32:16 35:22,24 37:12
37:18 39:7 44:7,7

**Falcon** 23:14

**false** 8:21

**family** 49:22

**far** 5:18 12:23 42:24

**fashion** 41:25

**fault** 38:18

**favor** 5:22 6:2

**Fax** 1:17,23

**February** 7 49:22 50:21

**Federal** 8:20 9:9 10:25 11:12
23:19 25:16 31:4 36:4,20
37:16 40:16,17 42:15,23 43:9
43:21 44:10

**FEDERICO** 1:10

**fee** 46:22

**feed** 17:2

**feel** 26:2 45:2

**Ferguson** 2:6 54:18

**few** 8:8

**fide** 10:20 12:14,19 31:19 37:13

**field** 38:22

**Fifth** 15:16

**figure** 15:18 25:12 26:20

**file** 14:2,3 33:6,8

**Filing** 14:3,4

**final** 10:10

**financial** 28:7

**find** 22:23 46:5

**fine** 16:5,13 31:6 48:9 53:13

**first** 5:15,15 6:12,14 13:8 17:24
18:15 27:7,10 36:12 42:1
43:12 46:18

**five** 48:7

**floor** 16:3

**Florida** 1:1,6,16,22 2:3,7 49:12
54:19

**folks** 17:21 42:9

**follow** 8:23 15:7

**following** 4:1 19:3 36:11 43:10

**follows** 15:3

**football** 39:2 46:6

**foregoing** 54:14

**forfeiture** 47:22 48:1

**forgot** 22:12

**form** 10:9,9,10,13 30:23 31:8,9
45:9 48:21

**format** 25:21

**former** 16:15

**forms** 14:9

**forth** 12:25

**found** 24:3 36:9 39:8 43:8

**Fourth** 1:16

**FPR** 2:5 54:17

**frank** 26:5

**Frankly** 5:14

**fraud** 11:20 12:23,25 32:23

**free** 45:2

**Friday** 17:17 49:15,17 53:25

**friends** 23:20 45:25

**friend's** 20:23,25

**from** 4:9,12,13,23 10:4,18,24
11:3,24 12:14 13:10 15:7
16:19 18:24 23:17 24:23 25:1
25:16,18,20 26:4 32:12 33:2
35:19 37:5 44:23 47:2,9 49:12
51:13,13 53:12

**front** 24:6 40:13 50:15 51:4

**furnished** 6:1

**furnishing** 36:17,18 37:15 43:18
43:18 44:8,16,17

**further** 53:25

**future** 8:22

**G**

**G** 10:25 47:4

**gain** 44:5

**garbage** 47:6

**gave** 10:24 11:2 24:22 27:10
29:4 36:6 44:1,22 45:16 46:12

**general** 8:9 11:24 12:2,3,4

**generally** 8:23 45:6

**gentlemen** 9:13

**gets** 7:8 8:14 20:19

**getting** 4:9 16:5 32:16

**Gilda** 2:5 13:6 18:6 51:2 54:17

**give** 6:10 7:9 11:11,23 12:6 15:3
17:1,2,18 18:13,17 27:18 28:3
29:5,6,9 31:9 32:25 33:3,4
34:18 36:2 39:4,14 40:6,8,14
40:19,20,2 1 41:3 46:24 47:24
48:1,7,11,20 49:4

**given** 7:17 11:13 28:20,21 29:1
33:1,9 34:18 35:24,25 40:4
42:24 44:11 45:6

**giving** 27:6 49:4

**glad** 45:12

**go** 4:4 11:25 16:21,22 17:17 18:2
20:15 27:9 28:4 34:10 37:8
45:19,21,23 47:21 49:2 50:4
53:5

**goes** 44:24

**going** 5:20 7:5,11 8:20 11:18
12:6 14:7 15:22 16:14,24 17:1
20:15 25:1,24 26:3,4,16 29:9
38:5 42:21 45:24 46:9,13,21
46:24 47:11,23,25 49:3 50:16
51:8 52:2,8 53:18,20

**gone** 5:17

**good** 11:14,15,18,21,2 1 13:25
14:21 15:25 17:24 21:13,14
21:14 23:3,3,4,6,7,2 1 24:19
24:19,22,25 25:4 29:8 32:16
33:25 35:22,24 37:12,18
38:19 39:7 42:9 44:7,7 45:7
46:6,24 49:24 52:11 54:9

**goodness** 8:5

**google** 46:1,2,4,5,7,8

**Government** 1:13 4:17 7:18
11:15 12:11,12,18 19:13
26:13 28:21 29:16 31:14 34:7
34:25 38:10 39:8 40:5 44:18
44:19 51:16

**Government's** 10:9 48:11

**gphofficialreporter@gmail.com**
2:7 54:20

**grabbed** 27:7

**grabs** 27:9

**gracious** 8:5

grandkids 50:25
granted 22:12,16
granting 5:23
great 29:5 41:21
grounds 29:18 30:13
Grow 1:7 4:5,6 13:9 54:5
guess 15:25 26:24
guidance 8:18 25:14 45:9
guidelines 8:23 9:6 11:19 25:15
guilty 13:21 17:13 22:23 24:2,3
  30:17 36:9 39:8 43:8 45:9,9
  47:21
guy 48:12 50:12
guys 17:17

**H**

half 22:25 29:9
Hamilton 50:2,13,20
hands 27:9
happen 49:4 51:8,8 53:15,16
happened 17:12 31:2,5
happens 5:19,21 9:11 53:22
happy 13:2
harbor 12:15,16,17 32:2,5 35:21
  37:6,6,7
harbors 32:9 35:6
hard 42:11,12
hate 14:8
having 5:25 12:14
head 40:24 51:16
health 8:18 28:22,25 32:23
  36:20 37:16 43:9,21 44:10
  46:4
hear 4:23 10:17 16:19 24:23
  27:21 28:1 47:18 51:20
heard 5:13 10:16,19,20 18:15,19
  41:1,2
hearsay 51:12
held 4:1 19:4 25:13
help 10:11
helpful 18:18 44:11 45:16
her 18:9,12
hey 31:4 51:10
hiddenly 44:3
higher 12:6
him 12:2,18 19:7,17,18 20:6,8
  20:11,16,1 6 22:23
hiring 32:2
history 50:14
Hold 19:11
home 16:20 17:14,18 45:19,21
  45:23 47:11
honestly 22:25
Honor 4:10 7:19 8:6 9:2,4 12:13
  14:20 16:11 19:15 20:24
  21:16 22:8,14 23:5 24:5 26:15
  27:17 29:17 31:16 32:5 33:6
  34:9 35:3 38:9,11 39:23 41:14
  41:17,25 48:9,14 49:10,21
  50:9 51:17 52:13,15 53:11,13
  54:6
HONORABLE 1:10
hope 14:20 28:15 53:15,16
hoping 50:4
hotel 20:21,25 21:1
hour 16:23 17:15
hours 17:15
house 20:23,25
Human 8:18
hundred 40:18,22
hung 48:25

**I**

idea 21:9 41:18,22 45:7
ideas 40:24
Identification 3:10
illegal 28:6 30:17 31:20 35:13
  39:6
immediately 25:23 49:2

impact 15:15
implications 8:21
importance 46:14
important 14:1,13
incidentally 37:10
include 37:11 44:6
includes 35:4
including 43:2
incorrect 40:23
indeed 24:10
indication 47:14
Indictment 9:18,22 10:4,6,8,12
  13:13,16,17,2 1 33:20 36:14
  43:14 45:8
indirect 24:9
indirectly 37:3 44:2
individual 36:17,23 43:17 44:16
individuals 11:20
induce 28:9 29:11,12,15,20
  36:16 39:4,5,5 43:16 44:15,20
Inducement 29:14 38:1
inducing 38:1
industry 28:8
influence 46:9
initially 51:9
instead 31:8 36:7 49:16
instruct 14:7
instruction 7:10 10:24 11:6,23
  12:7 18:17 24:5 25:13 26:14
  27:13,18 28:19,20,21,22,23,25
  29:3,4,18 32:10,12 33:1,2,3,9
  33:13 34:17,18 35:25 36:8
  38:17,21 42:2 44:22,23 46:11
instructions 9:25 10:2,6 13:1
  26:19 29:22 35:10 39:14,17
  40:5,9 41:2 43:3,6 44:1 45:6
  48:12,12
intent 29:24 31:21,22,25 32:1
  35:16
intention 25:21 31:9 32:7
interest 47:17
interim 12:5,6
interrogatory 14:9
interrupting 41:12
invade 45:4
investigated 16:16
involve 33:18
involved 33:16,19 47:18
involving 15:16
issue 8:1,3 9:16 14:15 43:24
item 36:18 37:15 43:18 44:4,9
  44:17
items 36:19 43:20

**J**

J 1:13 46:20
Janet 12:3
janitor 17:14
JEFFREY 1:20
Jill 4:16 18:4
jmarcus@mnrlawfirm.com
  1:24
job 29:8
JON 1:14
Jonelle 4:16 18:4
Jones 46:18,20 47:4
jon.juenger@usdoj.gov 1:18
Jr 2:6 54:18
judge 1:11 5:16,16 14:24,25
  15:18 16:15 17:16,16 19:1
  21:14 22:25 23:24 24:24 25:5
  25:20 29:4 32:11,12 39:11,13
  40:10,12 41:1 46:7,8 50:19
judges 6:25 16:2,3,4 41:9 47:19
  49:20 50:16 51:3
judgment 32:13
Juenger 1:14 4:7,19 7:19 12:13
  26:15,19,24 27:3,11,15 29:17
  29:21 30:4,6,11,13,15 31:16

34:9 38:9,11,18,2 0 39:9 41:25
  48:2,5 51:17 52:10 53:11
juror 24:11 46:22
jurors 5:23 7:24,25 10:4 13:20
  14:7,10 17:2,11,14 24:1 26:23
  28:3 30:2 39:15 42:5 45:4
  53:17
jury 1:10 4:12,13 6:1,19 8:2,7
  9:12,13,25 10:2,5 17:15,20
  18:24 23:17,22 24:5 25:3,22
  26:8,14 29:5 31:24 34:16
  38:16 39:14 40:4 41:2 42:7,8
  47:9,13 51:5
jury's 6:17 35:12
just 4:21 5:16 6:8,20,24 7:21 8:1
  8:14,16 10:7 12:8 13:5 14:18
  15:13,23 16:7 17:9 19:7,10
  20:24 21:12 29:12 31:9 32:4,4
  33:11 38:6 39:10 45:11 46:22
  48:17
Justice 8:8,25 9:6,12 11:4,7 14:4
  15:15
justification 6:16

**K**

kate@kmeyerslaw.com 2:4
Kathryn 2:1,1
keep 25:14
Kelly 4:18
Kevin 1:13 4:2 5:7
kevin.larsen@usdoj.gov 1:18
kickback 8:21 13:9 23:18 27:18
  28:6,8,11,15,1 6 30:12,21
  31:10 33:20,21 34:2,6,8,15,21
  35:7,14 36:13,16,2 5 37:2,20
  38:13,14 39:4 40:15 42:1,2,4
  42:14 43:13,16,2 5 44:15 46:5
kickbacker 30:23 31:3
kickbacks 12:22,23 13:10,10
  27:12 29:13 30:7,7,8,16,18,24
  36:5,6,10 43:2,9 46:2
kidding 29:9
kids 50:24 51:1
kill 23:11
kind 7:15 12:2,3 29:9 32:8 37:4
  37:23 39:1 42:22 44:3,3,12
  46:10 47:14 49:15
knew 5:6 7:22 8:24 17:25
know 4:15,21,21 5:4,5,18 6:9,20
  8:6,24 9:1,10,13 10:7 11:18
  11:19 14:18,19,2 1 15:18,23
  15:23 16:15 17:24,25 18:3
  19:8,16 20:6,15 21:2,10,15,19
  22:4,16,25 23:18 24:11,24
  25:9,10 27:6 29:8,19 30:5
  33:7,8 35:16 38:22 39:19
  40:12,15,19,20,2 1 44:5,9
  42:11,14,16 43:23 44:11 45:2
  45:4,13,15,2 4 46:1,6,21,23
  47:10,19 49:3,15 50:11 51:7
  51:12,12,23,2 4 53:14
knowingly 36:12 43:12

**L**

L 1:19
Larsen 1:13 4:3 5:7,8,10 8:12
  16:5,8 19:1,25 20:1,3 21:4,7
  21:10,16,19,21,2 5 22:2,7
  22:14,19 24:5,8,13,17,20 49:9
  49:10,18,21 50:2,7 54:8
last 42:13
late 53:20,21
later 17:15 36:6 45:19 46:7 51:6
Latin 10:22
law 2:1 5:18 9:5,6,9 10:3 11:11
  13:23 14:1 26:12 29:12,23
  31:10 32:21 33:4,4,5 35:1,6
  37:9 39:8 40:5 41:3,16 42:24
  45:5 51:22

lawyer 4:7 13:25 22:10 31:5
  48:1 54:3
lawyers 4:12 13:22 14:9 23:21
  26:6 46:5 47:14,19 53:19
least 5:15 24:11 39:24 42:1
  45:16
leave 46:25 47:1,5
lectern 27:8,8
left 13:7
legal 31:3 38:22
legally 39:7
legitimate 32:3 35:9
LEGOLAND 50:20,25
less 51:15,21 52:5
let 10:7 15:19 17:11 20:15 28:1
  38:7 42:20 46:2 48:20
let's 4:4 31:6 35:24 36:5 47:10
  51:9
liability 8:19 11:9
life 23:24
like 4:15 7:21 9:8,18 10:22 11:11
  15:16 16:5 17:24 18:3 21:4
  23:18,21,22,2 3 29:5,7 32:4,13
  40:15 42:13 46:7 48:16,18
  50:8,13 51:3,7
likes 39:12
limited 6:5 38:5,6 40:22
line 3:11,11 11:2 49:7
lines 28:17
listen 23:2 38:11 48:23
literally 32:12 35:8
little 10:10 18:1 21:12 33:11,14
  38:12 45:19 52:18
LLP 1:20
local 14:10
logistical 6:18
long 7:9,14 18:15,20 26:6,6
  45:18 47:13 50:16 51:11
longer 8:17 52:18,19
look 6:8 7:4,22 10:12 15:15
  21:13,14,14 25:16 35:24
  39:19 45:11 46:21 47:14
  48:13,14,15,16,18
looked 15:16
lose 14:19
lost 14:17
lot 8:20 15:2 35:16
lottery 50:8
lunch 14:22 16:14
lying 25:11

**M**

M 1:14
made 22:19,20 36:20 37:3,16
  43:21 44:1,9
make 7:6,7 17:5 20:17 22:14
  25:21,25 26:4 30:25 38:23
  40:6 45:4 46:16 47:10 53:9
makes 21:13,14 28:5 35:13
  38:15
making 12:18 28:15 31:2
man 16:17 50:14
management 35:20
March 52:11,13 53:6,6,7
Marcus 1:20,20 5:2 8:1,4,6,13
  8:16 9:1,4,7,17,23 10:2,15,19
  10:23 11:1,5,8 12:8 13:5,8,14
  13:18 14:5,18,20 15:6,10,13
  15:21 16:15 19:2 20:12,14,24
  27:7,17,25 28:5,25 29:5,14
  30:20 31:13,15,18,21,2 3 32:1
  32:15,17,21,2 4 33:6,8,11,15
  33:22,24 34:1,4,11,13,16,19
  35:2,5 36:3 37:22 48:9,14
  52:13,15,18,21,2 4 53:1,3
margins 26:9
Marked 3:10
marketed 33:16
marketing 29:1 35:9

married 51:1
Massachusetts 33:22
matter 10:14 14:2 47:20 54:15
may 18:17 20:16 30:2 34:21
  36:20 37:15 38:20 39:13
  42:17,17 43:21 44:9 51:10
maybe 5:14 9:9,14 11:5 12:12
  14:10,19,24 20:15 21:7,16
  24:10 26:24 27:6,12 28:3
  41:19,21 45:12 51:1
mean 7:7,10 9:17,20 10:15,19
  12:24 13:18 17:2 25:7 29:11
  32:21 33:8 37:8,18 38:24
  40:18,19,22 41:20,20 48:16
  51:7 53:21
means 21:12 24:15,20 44:4
Medicare 15:17
medication 28:18
Medina 15:17
memo 8:16,17 9:12 11:4,7,23
  13:2 14:4 15:4,11,15
memorial 16:21
memory 5:20
memos 9:6 11:25 15:7
Menendez 14:24,25
mention 22:12
mentioned 22:10 24:17
menus 17:3
merge 47:23
Meyers 2:1,1 4:9
Miami 1:2,6,16,22 2:3,6,7 33:25
  50:5 54:19,19
mid 17:5
middle 38:13
middleman 36:23 38:7
might 23:12 45:14
minds 6:25
minutes 16:20 19:19,21,22
  47:11 48:5 53:21
modified 28:23,23,25 33:2
mom 21:25
money 11:19 24:21 39:1,4,4
  43:23 44:6
Monty 1:7 4:5,5
mooch 18:2
more 19:21,22 22:7 42:22 45:12
  45:13 46:14 51:12
MORENO 1:10
morning 17:24 24:1 45:20 46:15
most 39:22 40:2 41:8 46:15
mostly 39:25
mother 22:2
mothers 22:4
motion 13:16 22:11,14
moved 50:19
much 7:11 13:16 42:12,16 48:4
  50:12 52:19
must 28:9,16
myself 25:25

N

necessarily 50:7
need 18:9 41:20 42:5 50:17 54:3
negotiations 15:2
Neiman 1:20
neither 34:12,14 50:23
nephews 50:8
never 5:18 30:25 40:8 50:22
New 14:4
next 50:5 51:11,25
nice 27:1
night 17:17 18:13 49:17
Ninth 5:24 25:18 26:10
nobody 15:3 39:1,12
nodding 51:16
noncompliance 8:19
none 11:25 40:12 50:25
nonjury 18:9,11
normal 35:9,9,9 37:8

normally 38:24
North 2:6 54:19
Northeast 1:16
note 4:12,13 17:22 18:3 23:17
  42:13
notebooks 46:25
notes 18:7,16 41:23
nothing 11:3 12:24,25 30:7 46:4
  53:22
notice 14:3,3,3 22:10 53:25
novel 25:23
number 1:3 8:10 29:11 36:8
numbers 42:25

O

object 13:8 38:21
objection 10:21 11:2 23:9,10
  36:1 44:23
obtaining 28:15
obviously 7:11 8:20 9:19 11:18
  12:24 34:24 35:16 51:8,15
odd 38:12
off 17:4,8 19:12
offense 36:9 43:8
offenses 27:12
offer 28:6
offered 27:17 35:10
Office 1:14,15 2:1
OFFICER 18:23 42:7 47:8
  54:10
offices 20:16
Official 2:5 54:18
oh 4:8 8:5 13:13 16:15 21:24
  23:3,20 33:24 46:2 48:15
OIG 8:18
okay 4:4 5:4 8:14,15 13:8 14:5
  15:9 17:5 18:22,25 19:6,13
  20:7 21:18 22:7 27:5,16,20
  28:1,19 29:16 30:10,12,14
  31:17 32:25 37:6 41:19 42:11
  45:15,17,22 46:14,17,23 47:5
  47:6,10 48:4,10 49:19,24 50:5
  50:12,15,22 52:11 53:5,14
  54:4,7,9
old 17:22 33:25 50:24
once 6:25 27:8 47:13
one 4:25 6:8 11:2 12:5 15:14
  17:16 23:25 24:11 25:16
  29:11 32:7 36:5,6 38:5,7,15
  43:4,5,8 44:20 46:18 47:20
  49:7 50:16 51:15 54:3
ones 15:7
one's 38:18,21
only 6:5 11:10 15:7 23:23,24
  26:10 34:23,24 36:10 41:4,4,6
  43:4,10 45:8 50:11
open 24:18
opening 25:22 47:23
openly 44:2
opinion 15:12
opponent 15:4
opportunity 27:7 40:6 49:5
oppose 29:17
opposed 35:14
order 10:7 26:7 36:16 43:16
  44:15
ordering 28:14
organized 47:2
other 5:14,20 6:9 12:1 16:1
  23:25 25:16 31:1 38:10 41:13
  43:3,7 45:2,10 46:3 47:19
  49:20 50:15
others 36:1 51:13
Otherwise 12:20
ought 19:4
out 14:23 15:1,13,18,20 24:18
  25:12 26:9,21 46:6 47:6 49:18
  52:15 53:1
outside 4:2 19:4

over 10:21 26:9 49:12
overt 24:9
overtly 37:3 44:2
own 5:12 7:14 15:4 18:19 38:21
  48:17

P

Padron 4:18
page 3:2,11,11 36:8 45:11
pages 26:9
paid 22:24 37:11 41:15 44:6
  46:22
paper 32:7
paragraph 27:25
Pardon 17:7 72:1
parentheses 38:14
part 6:8 32:22 36:20 37:1,5,16
  42:1 43:21
participate 15:2
particular 12:21 27:12 28:20
particularly 53:19
parties 14:25
party 30:21
past 6:23
PASTOR-HERNANDEZ 2:5
  54:17
patient 40:20
patients 30:9
Pattern 27:19
pay 28:6,17 29:13 30:20 35:14
paying 28:10,12 34:6 35:19
payment 12:23 28:9,15 29:24
  32:18 35:13,14 36:5,19,25
  37:2,15 39:3 43:20,25 44:9,24
payments 28:7 34:5 35:19 36:6
PCA 13:10
peace 39:14
penalties 11:20
pending 9:2
people 7:16 9:14 10:7 24:2 35:2
  37:7,8 39:19 52:3,7,9
percent 21:5,6,7,17,20,2 1 22:6
  33:5
percentage 24:15
perfect 7:8
perhaps 10:16
period 6:19 53:6
permit 26:3
person 8:10 23:22 28:9 36:17
  43:17 44:16
personal 21:5,13 49:20 50:9
persuade 7:16
pharmaceutical 28:8 29:1
Phoenix 50:2
phone 16:5,7,13 17:1 19:17 20:5
  54:2
phones 46:25 54:2
physician 28:10,12
physicians 33:16 34:6
place 18:15
plain 25:14 39:12
Plaintiff 1:5
plan 51:9 53:6
planning 49:21
play 50:11,12
player 46:6
plea 15:2
please 17:21 18:23
pled 17:13
PLLC 2:1
podium 27:8,9
point 13:1 17:6 27:11 35:12
poll 24:14
poor 22:22
portion 33:20
position 4:22 12:9
possible 4:20
practice 49:2
prefer 16:1,11 51:6,8

preference 5:22 45:20
prepare 7:3
prepared 6:20
prescription 28:11,14,16,18
presence 4:2,2 19:4
present 19:14
presented 24:2
preserved 14:15 36:2
preserving 14:16
pretend 32:2
prior 25:23
pro 28:17 29:25 30:3
probably 18:8 19:21 24:23 30:4
problem 35:5
problems 6:18
procedure 6:21 25:23
proceedings 1:10 4:1 19:4 54:15
processes 49:14
professor 16:21
program 36:21 37:17 43:10,22
  44:10
prohibit 28:7
promotion 35:10
proof 10:6 13:21 40:7
proper 23:7,7
property 22:11,23
propose 32:13
proposed 10:8,9,10 11:12,14,16
  32:11 33:10 48:11
prosecute 12:18
prosecution 12:9,20
prosecutor 10:21 21:14
prosecutors 8:23
prove 31:13 32:5 44:19,19
proved 36:11 43:11
proven 30:18
provides 6:16
punished 22:22
purpose 22:21 37:25 44:19
purposes 44:20
put 10:10 13:16 25:8 37:12
  44:13
putting 40:24,25
p.m 19:4 42:8 47:9 54:11

Q

question 4:19,20 23:6 26:22
  35:2,12 40:13 42:21 45:1
questions 41:9 42:17,18,22 45:2
  45:10
quicker 52:4,6
quid 28:17 29:25 30:3
quit 16:24
quite 50:20
quo 28:17 29:25 30:3
quote 25:2,3 47:2
quotes 47:2

R

R 54:13
Rachel 8:9
raise 8:1,7 9:20 12:8 14:18
Rambaran 4:16 5:10 18:5
Rashbaum 1:19,20 5:1,3 7:19
  7:21 16:11,13,17 19:7,10,15
  19:17,19,23 20:2,5,8,10,13,22
  21:1,9 22:17,25 23:3,5,9
  39:11,18,20,22 40:2,4,10,12
  40:17 41:8,11,14,17 50:19,23
  51:20,23,25 52:4,6 53:13
rather 49:6
Ray 1:7 4:5,6
reach 20:11 49:1,18
reached 16:25 17:3 48:22
read 6:1,22 7:6,8 9:8 15:18
  18:13 26:13 27:20 28:4 31:4
  32:10 33:1 35:8 38:4,5,11
  39:17 42:3 44:25 45:24 46:12
reading 5:6 6:4 18:14 46:3

**ready** 27:9
**real** 30:22 32:6
**reality** 21:15
**really** 6:21 7:13 9:15 10:13 11:4
  14:2,8,11 49:4 50:3
**reason** 17:3 32:8 43:4 47:21
  48:22,23,25 53:7
**reasonable** 36:11 43:11
**reasons** 5:17
**rebate** 37:3 43:25
**receipt** 12:23 36:4,10 43:9 44:24
**receipts** 36:7
**receive** 33:21
**received** 3:10 36:13,15 43:13,15
  44:14
**receiving** 13:10 35:18,20
**recess** 18:8 19:3
**recipients** 30:24
**recollection** 5:12 7:15 18:19
  24:6
**reconsider** 9:14
**record** 13:5,6 17:8 19:12 51:1
**reference** 9:18
**referral** 28:16 36:16 43:16 44:15
  44:21
**refined** 18:7
**regardless** 28:13
**regular** 23:22 38:24
**regulation** 11:11 12:21
**regulations** 9:9,18,23 10:1,25
  11:8,12 12:24 13:1 31:4
**reject** 6:17
**relationship** 32:3 37:14,19 44:8
  47:15
**released** 8:16
**rely** 5:12 7:14 8:18 18:19 39:16
**remember** 5:19 10:25 22:13,18
  22:21 26:17 27:20 28:19 43:2
**remind** 28:2
**remuneration** 24:8,9 28:6 36:13
  36:16,25 37:2,5,11,20 38:25
  39:3 42:3 43:13,16,23,25 44:5
  44:15
**Reno** 12:3,4
**rep** 35:15
**repeatedly** 10:4
**repeats** 38:15
**REPORTED** 2:5
**reporter** 2:5 6:21 7:6 54:18
**Reporter's** 3:4
**representative** 35:20 40:21
**representatives** 30:16,19 33:19
  35:4
**reps** 30:8
**request** 5:23 6:5,17
**requested** 6:15
**requests** 6:3
**require** 16:3
**requirements** 5:19
**respect** 12:1
**respective** 47:17
**respond** 40:23
**response** 5:11 41:5,7,8
**responses** 24:15
**responsibility** 25:11
**rest** 39:13
**results** 28:13,14
**retired** 18:24 47:9
**retry** 53:8
**returned** 42:8
**reversed** 26:10
**review** 4:15 5:23,24 10:8 18:3
**revisit** 23:12
**re-read** 6:16
**right** 10:3,23 15:11,20 17:11,13
  18:20 19:19 20:10,24 23:17
  24:10,12 26:19 27:6 28:21
  28:24 30:5 31:14 32:12 33:5
  33:19 34:21 36:1,3,5 37:9,9

37:22 40:1 42:5 43:23 45:3
  46:4,14 47:22 48:8 50:22
  51:15,22 53:17 54:1
**rise** 18:23 42:7 47:8 54:10
**RODRIGUEZ** 45:21
**role** 26:12
**room** 17:15
**Rosalina** 5:10
**Rosalinda** 4:16 18:4
**Rosenstein** 12:4
**RPR** 2:5 54:17
**rule** 14:10 48:17
**ruling** 12:15,19,20
**rulings** 51:12

**S**

**safe** 12:15,16,17 32:2,5,9 35:6
  35:21 37:6,6,7
**safest** 39:25 41:4
**sake** 53:16
**sales** 30:8,16,19 33:19 35:4,15
  40:21
**same** 26:14 36:6 39:6 44:1,24,25
  46:22 47:1 48:8 52:2,7
**satisfy** 44:13,18
**saw** 4:7
**saying** 6:3 11:17 24:2 26:24
**says** 4:14 5:22 6:9,14,18 8:17
  13:25 15:14 20:5 23:17 24:25
  25:19 26:13 31:14 32:25 36:8
  37:21 38:14 40:11,14 43:7
  44:1,3 47:3 51:2
**scattered** 6:15
**school** 37:9 53:1,1
**seat** 20:20 47:10
**seated** 17:21
**second** 5:15,21 6:2,13 41:17
  44:13,14 49:6
**secretive** 24:18
**Section** 1:15
**SECURITY** 18:23 42:7 47:8
  54:10
**see** 7:22 9:10,13 13:16 14:22
  18:21,25 22:15 27:7 33:3,14
  46:2,21 47:7,15 48:5,11,16,17
  51:25
**seem** 48:12
**seen** 4:11 13:2 18:21 50:11
**Seitz** 15:18
**seized** 22:11
**senator** 12:1,2 14:25
**send** 16:20 42:17 53:22
**sense** 30:25 53:9
**sent** 15:11
**sequestering** 6:18
**sermon** 15:3
**serve** 53:16
**service** 16:21 17:18 36:18,19
  37:15 43:19,20 44:9,17
**Services** 8:19
**Sessions** 12:1,4
**set** 12:25 26:9 53:18
**Seventh** 6:17
**seven-minute** 20:4
**several** 24:1 29:18 30:13 38:12
**sham** 32:4,6
**shared** 17:25
**Shirley** 18:1 19:20
**short** 11:5 26:7
**shorter** 49:8
**side** 6:9 25:22 34:12,14 44:23
  54:3
**sides** 4:24 47:15 52:12 53:15
**sidetrack** 17:10
**sign** 22:4
**signature** 21:12,15 22:3
**Signed** 4:18
**similar** 32:8
**simple** 11:6 21:11

**simplified** 27:21,23,24 28:2
**simplify** 26:1,11 27:21
**since** 5:15 7:17 18:11 23:11 31:2
  46:12 47:11 51:4,21
**sit** 4:13
**Sixth** 5:24
**skills** 22:20
**skip** 51:13
**skipped** 43:1
**slip-and-fall** 49:7
**Smart** 16:17
**sneaky** 31:5
**sole** 37:25 44:19
**solicited** 36:13,15 43:13,15
**some** 5:14,19 10:16 16:3 17:3
  18:25 24:2 35:10 42:21,25
  46:15 47:18,19,2 1 48:22,23
  48:25 53:7,18
**somehow** 12:19
**someone** 12:2 24:14 25:11 29:11
  29:12,20 30:22 31:11,12 39:4
  44:4 47:25
**someone's** 21:15
**someplace** 24:25
**something** 4:9 7:16,23 12:17
  14:23 15:1 17:3 23:23 39:5,5
  44:5 46:12 51:7
**sometime** 47:7
**sometimes** 5:18 7:1 23:7
**sons** 22:5
**sophisticated** 30:23 31:3
**sorry** 17:25 30:14 41:14 51:20
**sort** 38:15
**sorts** 35:8
**sounds** 29:5,7
**South** 1:21 2:2
**SOUTHERN** 1:1
**so-and-so** 45:12
**so-called** 37:6
**speaking** 4:25
**Special** 48:20
**specific** 42:18,22
**spellings** 7:8
**spend** 50:8
**split** 5:5 7:12
**spoke** 19:7,17
**spouses** 46:1
**spring** 52:15,25
**standard** 5:24
**Stanfield** 25:18
**start** 18:10 46:1,3 49:14
**State** 17:12
**stated** 20:17 25:2
**statement** 25:22 26:9 29:23
**States** 1:1,4,11,14,1 5 2:5 4:5
  15:8 24:4 25:17,18 54:18
**statute** 8:20 12:22 13:10 23:19
  28:5 29:15 30:19 31:12 32:9
  32:24 34:22,24 35:7,23 40:16
  40:18 42:15,23
**stay** 19:9 20:9
**staying** 20:21,22
**stays** 20:10
**still** 8:7 12:2 17:17
**stipulation** 34:13
**story** 32:14
**strategy** 11:18,18,21 22:24
**Street** 1:16
**stretch** 17:11 42:6 45:16
**Strike** 13:17
**strikes** 38:12
**sufficient** 6:16
**suggest** 51:7
**suggested** 38:16
**suggesting** 31:2 42:19 48:25
**suggestion** 29:25 38:10 39:1
  41:21
**Suite** 1:21 2:2,6 54:19

**super** 14:9
**supposed** 26:20 50:20
**Supreme** 7:1 15:9
**sure** 6:24 7:6,7 20:18 21:19
  26:12 45:1 50:13
**surety** 21:5,13
**surplusage** 13:17
**surprises** 11:24
**suspect** 8:22,22 30:2 31:24
**system** 39:6

**T**

**T** 54:13,13
**TABLE** 3:1
**take** 6:12 7:3,13 18:8,12,14,16
  18:20 24:14 26:14 43:3,5
  46:10 47:5,22 48:10 51:6,11
  53:20
**taken** 19:3 22:23
**takes** 7:9 16:23 18:6 26:6 43:24
**taking** 47:12
**talk** 9:12,20 14:22 15:4,4 25:3
  26:6 33:18 45:25
**talked** 23:11 34:6
**talking** 36:4
**talks** 9:22,23 32:17,19
**tea** 50:13
**teach** 23:20
**technically** 35:22
**telemedicine** 28:12 34:5
**tell** 4:22 6:7 7:2,12,13 9:25 12:3
  14:8 15:22 19:23 21:6 25:4
  26:5,11,16,22,2 3 31:5 37:6
  38:2 39:3,10 41:16,20,22
  42:17 45:12,13,24 48:18 49:5
  49:16 51:10 52:19,21 53:19
  53:20
**telling** 45:11
**Tenth** 5:25
**terms** 9:19 32:7 35:8
**testimony** 4:15 6:1,5,15 7:5,6,9
  9:7,19 18:4 25:6,8,10 51:14
**Thank** 15:10,21 17:18,21 18:22
  19:2 23:5 42:9,11 47:7
**Thanks** 19:1
**their** 6:25 8:23 15:4 22:5 40:6,24
  47:14,17 51:16 53:1
**theories** 12:9
**theory** 12:20 13:18
**thing** 14:21 15:24 20:16 39:22
  39:24,25,2 5 40:2 41:1,4 44:24
  44:25 49:24 50:9
**things** 7:8 14:13 23:1,7 26:11
  40:18,23 43:3,7 46:7 51:2
**think** 4:20,22 5:14 6:23 7:1 8:3
  9:5 12:5,11 13:4,15,23 14:11
  14:11,12,12,1 3 15:1 16:22
  21:1,4,7,16 22:19,20,21 23:22
  24:15 26:15,18,19 27:11
  29:21 33:12 34:16 35:1,12,25
  37:7,9,9 38:12,15,23 39:6,19
  45:7,10,21 46:11 47:16,17
  48:2 49:6 51:11,13 52:10
**thinking** 25:15
**third** 5:21 6:2,13 30:21
**though** 13:23 17:19 18:6 26:18
  36:1 38:25 44:5 49:7 50:6,13
**thought** 22:7,11 39:7 47:25
**three** 4:7,12 8:10 36:19 43:20
  48:5 50:17
**through** 20:18 43:1 47:22
**throughout** 13:19
**Throwback** 23:13
**Thursday** 23:13 49:16
**ticket** 50:3
**tickets** 39:2 50:3
**till** 17:2 23:16 53:22
**time** 6:19 7:14 16:23 18:25
  19:24 20:17 23:11 33:4 47:13

48:4,8 49:6 50:8 51:15,21
52:1 53:18
**times** 4:4 53:24
**timing** 7:23 15:25
**today** 46:18 47:11
**today's** 4:18
**together** 43:4
**told** 10:4 11:10 13:20,22 14:25
17:12 23:13 26:17 33:2 44:25
53:17
**tomorrow** 17:1 45:20 46:15 47:7
48:2,22 53:25
**tonight** 33:6 48:14
**tough** 50:3
**towards** 36:23
**traditional** 5:11 25:21
**transactions** 28:7
**transcript** 7:3,3 18:7
**transcription** 54:15
**transcripts** 5:6,9,25 6:19,22
7:13,14 51:4
**trend** 25:25
**trial** 1:10 6:9 7:4 8:8 12:14 18:8
18:9,11,11,1 1 23:20 25:2,21
25:24 49:2 51:11 53:5 54:11
**trials** 23:22
**Tricare** 8:18 9:18,23,25
**trick** 27:3,4
**tried** 23:21
**true** 13:24,24 25:8,10 34:23
**truth** 7:2 35:15
**try** 26:1 27:11 49:6
**trying** 12:18 35:21
**turn** 27:10
**turns** 35:13
**two** 4:8 9:12 17:15 23:7,24 26:3
26:9 27:9 36:15 43:15 52:23
52:24,25 53:2,24
**two-week** 53:6
**type** 25:14 42:16,18 46:13 48:12

**U**

**under** 8:19 11:9 13:9 36:20
37:16 43:21 44:9
**understand** 35:13 54:5
**understanding** 12:13
**undertook** 25:20
**United** 1:1,4,11,14,1 5 2:5 4:5
15:8 24:4 25:17,18 54:18
**university** 16:22
**unlawfully** 28:9
**unless** 26:12 42:21
**unrelated** 17:23
**until** 4:23 20:19 42:21
**use** 38:24
**used** 12:3 37:13 39:13
**usually** 7:23 11:25
**utmost** 12:1
**U.S** 12:5 16:15 54:18

**V**

**vacation** 44:4 50:16 52:15,25
**value** 24:21
**verb** 29:21
**verbs** 29:22
**verdict** 10:9,9,10,13 16:25 45:9
48:20
**verdicts** 23:24
**version** 10:11 27:22,23 28:2
**versus** 4:5 9:20 25:17,18
**very** 10:5 11:6 13:25,25 21:12
26:5,7 42:11 50:3
**view** 13:11,15 14:23
**violate** 31:12
**violated** 12:21 13:9 48:17
**violating** 39:7
**violation** 40:20,21
**visit** 49:22
**voice** 4:25

**voluminous** 6:15
**volunteers** 47:25
**vs** 1:6

**W**

**W** 31:9
**wait** 4:22,23,23 17:2
**waiting** 23:12
**want** 4:13,21 5:9 7:16,24 8:1,7
10:12 14:2,6,22 15:24 16:1,4
16:10 17:4 18:2,18,20,21
21:11 24:23 25:3,16 26:1,23
27:21,21 33:7 35:13 39:16
42:19,20,23 45:3,18,18,19
46:8,10,13 47:16 48:15 49:25
50:1
**wanted** 9:20 12:8 14:18 17:9
30:22 36:1 42:2 46:23
**wants** 24:11 50:11,18
**wasn't** 12:17 17:15,19 23:9,10
27:19 32:3 39:7
**way** 10:5 11:24 12:1 18:10 19:8
19:15 25:9 27:2 31:6 32:10,12
33:1 35:7 37:9 40:23 42:20,25
47:1,2,11 49:3 51:10
**week** 51:14,14,18 52:17,18,19
53:6,7
**weeks** 52:23,24,25 53:2
**weird** 12:3,3,9
**well** 6:9 9:2 12:4,13 13:4,14
19:16 21:6 23:2,12 24:7,17
25:10 27:1 29:17,19 30:2
31:23 32:15,17 33:15 34:1,11
34:19,21 38:16,23 45:11
48:16,16 52:19
**went** 17:14
**were** 4:1 7:5 11:13 13:25 17:14
17:25 19:4 24:2,14 30:7 33:15
33:19 36:1 41:25 42:25,25
43:10 44:4 49:11
**weren't** 20:17
**we'll** 9:10 15:6 17:1,2,4 18:21
47:5,5,21 48:7 51:17 53:8
**we're** 12:8,9 16:23 19:7 23:12
36:4 41:12 46:24 51:4
**we've** 9:19
**whichever** 27:13
**while** 6:19 9:10,13 23:12 25:15
28:5
**whole** 6:8 7:4 36:20 37:16 43:6
43:21 52:17
**wife** 50:11
**Wilkie** 2:6 54:18
**willfully** 36:12 43:12
**win** 35:1
**witnesses** 25:3 49:11 51:9
**wonder** 8:14
**word** 32:19
**words** 31:1
**word-for-word** 33:9
**work** 8:24 14:22,25 15:20 18:12
45:19
**working** 42:11,12
**works** 46:23
**worry** 39:2
**wouldn't** 9:11 11:13 53:21
**write** 28:18
**writes** 18:6
**writing** 28:10
**written** 26:20 29:23
**wrong** 14:14
**W-2** 9:19,22

**Y**

**yeah** 26:11,16 28:19 29:3 32:4
32:10 46:2 48:16 52:14,18
53:3,18
**year** 50:5
**young** 50:8

**Z**

**zero** 43:4
**zeroes** 44:12
**zeroing** 43:4

**$**

**$10,000** 22:9
**$100,000** 22:6
**$250,000** 21:7
**$30,000** 21:18
**$300,000** 21:17
**$600,000** 21:4,10

**1**

**1** 1:7
**10** 19:19,21,22 21:5,6,7,17,20,21
22:6 47:11 53:21
**10,000** 21:20
**10:50** 4:1
**100** 33:4
**1099** 9:20,22 13:12,15 14:11
31:8
**11th** 49:22
**11:10** 17:20
**11:13** 18:24 19:3
**11:50** 53:25
**12** 15:23 17:4 45:6 53:22
**12th** 50:21 53:7
**12:00** 17:2
**13-3** 1:5 2:6 54:19
**14** 36:8
**16-20893-Criminal** 4:6
**16-20893-CR-MORENO** 1:3
**1750** 1:21 2:2
**18** 36:8
**19th** 52:11,13
**1985** 16:18

**2**

**2** 1:21 2:2
**2:50** 54:1
**20** 23:16
**2018** 1:7
**29th** 52:22

**3**

**3:00** 53:23
**305-400-4261** 1:22
**305-400-4266** 2:3
**305-530-6168** 1:17
**305-961-9356** 1:17
**305.523.5118** 2:7 54:19
**33128** 2:7 54:19
**33131** 1:22 2:3
**33132** 1:16

**4**

**4:12** 20:3,4
**4:19** 20:2,4,7
**4:22** 20:8
**4:40** 19:4
**40s** 42:25 43:1
**400** 2:6 54:19

**5**

**5** 16:20,20 23:16
**5th** 53:6,7
**5:00** 16:20,20,24
**5:12** 42:8
**5:19** 47:9
**5:32** 54:11
**500,000** 21:13
**54** 3:4

**7**

**760** 23:23

**8**

**8:45** 46:16 53:18
**866-780-8355** 1:23

**9**

**9** 42:24
**9:00** 46:15,17 53:17
**99** 1:16