```
 1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
 2                          MIAMI DIVISION
 3                   CASE NUMBER 16-20893-CR-MORENO
 4
     UNITED STATES OF AMERICA,
 5
                 Plaintiff,                  Courtroom 13-3
 6
        vs.                                  Miami, Florida
 7
     MONTY RAY GROW,                         February 2, 2018
 8
                 Defendant.
 9
10                        JURY TRIAL PROCEEDINGS
               BEFORE THE HONORABLE FEDERICO A. MORENO
11                  UNITED STATES DISTRICT JUDGE
12
     APPEARANCES:
13
     FOR THE GOVERNMENT:      KEVIN J. LARSEN, AUSA
14                            JON M. JUENGER, AUSA
                              United States Attorney's Office
15                            Economic Crimes Section
                              United States Attorney's Office
16                            99 Northeast Fourth Street
                              Miami, Florida 33132
17                                                    305-961-9356
                                                 Fax: 305-530-6168
18                                           kevin.larsen@usdoj.gov
                                             jon.juenger@usdoj.gov
19
     FOR THE DEFENDANT:       DANIEL L. RASHBAUM, ESQ.
20                            JEFFREY E. MARCUS, ESQ.
                              Marcus Neiman & Rashbaum, LLP
21                            2 South Biscayne Boulevard
                              Suite 1750
22                            Miami, Florida 33131
                                                    305-400-4261
23                                               Fax: 866-780-8355
                                          drashbaum@mnrlawfirm.com
24                                          jmarcus@mnrlawfirm.com
25
```

```
 1                            KATHRYN A. MEYERS, ESQ.
                             Law Office of Kathryn A. Meyers PLLC
 2                           2 South Biscayne Boulevard
                             Suite 1750
 3                           Miami, Florida 33131
                                                   305-400-4266
 4                                        kate@kmeyerslaw.com

 5   REPORTED BY:            GILDA PASTOR-HERNANDEZ, RPR, FPR
                             Official United States Court Reporter
 6                           Wilkie D. Ferguson Jr. US Courthouse
                             400 North Miami Avenue - Suite 13-3
 7                           Miami, Florida  33128    305.523.5118
                             gphofficialreporter@gmail.com
 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1

**TABLE OF CONTENTS**

2

Page

3

4

Reporter's Certificate ................................... 26

5

6

7

8

9

**EXHIBITS**

10

| Exhibits | Marked for Identification | | Received in Evidence | |
|---|---|---|---|---|
| Description | Page | Line | Page | Line |

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          (The following proceedings were held at 12:00 p.m. outside

2     the presence of the jury:)

3          THE COURT:  Good morning, everybody.  The defendant is

4     present, defense counsel, Government counsel.

5          I have a note which is of no consequence, but as usual

6     I will tell you.  You can sit down.  We will bring the jurors

7     out.  It says, can we order lunch, please?  So what I'm going to

8     do is -- can I throw this out, no objection?  We don't need to

9     clutter the record with that.  It's already kind of cluttered.

10         So what I'm going to do is I'm going to tell them to go

11    out to lunch.  So that means you've got to be extra careful.  No

12    contact with the jurors.  Sometimes people need to stretch out

13    and do whatever they want.  So like at 12:15, I'll tell them --

14    I'll give them back their phones and tell them to come back at

15    1:15.  They can go outside.  They are probably tired of the food

16    that we bring up from downstairs and people sometimes like

17    different types of food, which is normal.

18         So that means don't hang around the courthouse.  Don't

19    have any contact with them under the pain of contempt;

20    interested parties, family, relatives, agents, lawyers,

21    everybody, unless you want free room and board for a long time.

22    So that's what we'll do.

23         Any problems from the Government?

24         MR. LARSEN:  No, Your Honor.

25         THE COURT:  Any issues from the defendant?

1          MR. RASHBAUM:  No, Your Honor.

2          THE COURT:  Okay.  Bring out the jurors.

3      (The jury entered the courtroom at 12:01 p.m.)

4          THE COURT:  Thank you, folks.  You are all here.  All

5   the jurors are present.

6          I got your note.  Please, be seated.  What I'm going to

7   do with you all is I'm going to give you your lunch.  So you can

8   go out, get different types of food.  Look at that, Mr. Jones

9   just went like that, Mr. Jones, junior, and senior, too.  Both

10  of them.  Okay.  That way you choose whatever you want to eat.

11  You can eat together, separately, two, three.

12         The thing you cannot do while you go out to lunch is

13  talk about the case.  You can talk about whatever you want, but

14  not the case.  It's very important.  It's not typical.  I've

15  done it before, especially when we go into second, third day of

16  jury deliberations, because sometimes what you need is just time

17  off.  You know, you're together, I suspect getting along, but

18  going through everything, which is the right thing to do, and

19  you'll be working right through lunch, and sometimes -- I've

20  done it.  I guess in this trial I did it, but normally, I would

21  rather go out to eat lunch.  So I find that refreshing, and I

22  think an hour is enough.  So don't go to the Constitution Cafe.

23  That's where all the sandwiches come from.  Though they have

24  more selection, too, but you might as well go outside wherever

25  you want.  If you go on Flagler Street, there are a couple of

1   restaurants.  Around the college, there are fast food places, a
2   lot of Caribbean food.  There's even Indonesian food a couple of
3   blocks away if you're adventuresome.  If you go all the way to
4   Bayside, there are all kinds of places.  You decide where you
5   want to go, but come back.  And if you come back at 1:15, that
6   should give you enough time to do whatever you want.  Any
7   problems with that?
8          But don't talk about the case.  See, two of you will go
9   to lunch.  Hey, let go.  Don't.  It's not fair.  You've gone
10  this far.  It's kind of dumb now to violate the rules, okay, to
11  read something.
12         The parties and the people involved in the case, they
13  know about my rules.  So they're not going to bother you.  Wear
14  your juror badges around downtown because they may not realize
15  you're a juror, and they can talk about the case if they want
16  to, but they can't talk to you.  So I don't want anybody to do
17  something inadvertently.
18         All right.  Is that all right?  Is that a good idea for
19  you all?  Everybody is nodding their head up and down.  See,
20  I've learned something in my years with jurors.
21         Then 1:15.  Remember, you've got to wait for the 12th
22  person to get there before you begin your deliberations.  We are
23  not going to take everything out and bring you back except for,
24  in the envelope, the Verdict Form.  That's the only thing
25  Shirley is going to take, and that will be your cue when the

1    12th person comes in, I want to say the clock starts ticking,

2    but there's really no clock.  It's whatever you all want.  Okay?

3            All righty.  Have a good lunch.

4            THE COURT SECURITY OFFICER:  All rise.

5            THE COURT:  Let them go now.  We'll make these people

6    stay here.

7       (The jury retired from the courtroom at 12:04 p.m.)

8            THE COURT:  All right.  Instead of my usual five-minute

9    rule, let's make it 10 minutes, because they probably will go to

10   the bathroom, they get their phones and they slowly get out of

11   here.

12           Please, not even an inadvertent contact with the

13   jurors.  You don't want to do that.  You really don't.  So just

14   sit here.  You don't even have to talk to each other since,

15   obviously, you're not, but you've got to sit here and wait, all

16   of you, everyone who's in the courtroom, for 10 minutes, and

17   then go to lunch wherever you want.

18           If for some reason you see the jurors, you're all

19   professionals; and those who are not, even if you like one side

20   or the other, you know it's not worth messing around with that.

21           Okay?  Anything else?  No announcements of any type?

22           Okay.  Have a good afternoon.

23           What do we do?  I don't know.  This is the first time I

24   have failed miserably with the scheduling.  Usually something

25   happens when I say.  So my record is broken, but I think I have

1    to set a time to make sure everybody knows.

2         I'm swearing in a lawyer at 3:00 and starting a bench

3    trial on attorney's fees.  So let's say be here a little bit --

4    five minutes of 3:00, in case there's something.  If there's

5    nothing, I make one lawyer on each side and the defendant come

6    in, but that's not that big of a burden considering all the work

7    you've all done.

8         All right?  So see you a little bit before 3.

9         MR. LARSEN:  Thank you, Judge.

10    (A recess was taken at 12:06 p.m. and the following

11    proceedings were held at 3:25 p.m. outside the presence of the

12    jury:)

13         THE COURT:  We have a bench trial, but first we have

14    absolute -- we're back with the defendant, defense counsel,

15    Government counsel on the Grow case, our third day of jury

16    deliberations with no verdict.

17         Sometimes when jurors are out for that long, we never

18    hear what -- people in chambers, when I walk out, you can't ever

19    understand what they say, but sometimes you hear when there are

20    loud noises and yelling, and this is the softest-spoken jury.

21    If you put your ear to the door, you couldn't hear a peep, which

22    in my experience signifies a hung jury.  They haven't said that

23    yet, but that's what I think is happening.

24         So what I suggest we do today -- you can sit down for a

25    second while Mr. Vila suits up, literally.

1    I think what we can do is bring out the jurors, ask

2    them, how are you doing?  Today we're going to work till five.

3    They can come back Monday; see what their reaction is.  And then

4    I thought about telling them, if you have reached any decision

5    on any count, you can take partial verdicts.  That's certainly

6    acceptable.  I don't know if they have or not.  They could be

7    hung on all the counts.  I don't know.  But the way the

8    questions -- the reason I say that, based on the questions that

9    they have asked, it seems like they are going in some order and

10   they didn't want us to touch or my staff to touch their papers.

11   So they're obviously very organized and very thoughtful and

12   you've all selected a very good jury, it seems to me, whatever

13   the outcome is.  But to let them know that to see if that's an

14   issue.  Once I tell them, you're going to come back on Monday,

15   to see if they say, okay, no problem, then there's no problem.

16   If they tell us, well, we've got some, but we don't really have

17   anything, then take all the time you want, like I told them.

18   I'm doing a jury trial on Monday, but we can find other rooms.

19   There's no problem.  We'll let them do that.

20        So that seems to be what I've done before that has been

21   approved, and I assume there are no problems from the

22   Government?

23        MR. JUENGER:  None, Your Honor.

24        THE COURT:  From the defense?

25        MR. RASHBAUM:  Judge, we would object to that.

1          THE COURT:  Of course.  I know you would.  But why?

2  Partial verdicts are legitimately acceptable.

3          MR. RASHBAUM:  Judge, we've got --

4          THE COURT:  And then you would know something.

5  Sometimes they're not guilty, and you find out what it is.

6  Isn't that what happened with Senator Menendez in New Jersey?

7  And then the Government dismissed.  I'm not suggesting the

8  Government would do that, because we already have the next trial

9  date that accommodates you.  So it doesn't hurt the defendant.

10  If it's a guilty verdict, sometimes the Government also

11  dismisses the other counts.  That has been my experience, but

12  they don't have to, and at least they know that they've

13  accomplished something.  I would never send them home or send

14  them away, and maybe they don't know that they can tell us,

15  look, we can't keep going.  So I'm going to give them an

16  opportunity because it's the third day.

17          So what's your objection and your authority behind the

18  objection?

19          MR. RASHBAUM:  Judge, my objection is the jury is

20  deliberating.  They haven't come out with any questions.

21          THE COURT:  Oh, they've come out with a bunch of

22  questions.

23          MR. RASHBAUM:  They haven't come up with any questions

24  saying they're deadlocked.

25          THE COURT:  They haven't done that.

1        MR. RASHBAUM:  They haven't come out with any questions

2   saying they've determined any counts.

3        THE COURT:  Oh, I wouldn't give them an Allen charge

4   without them saying they're deadlocked, but I think if you were

5   to ask most jurors, not a single one of them knows that you

6   could have partial verdicts.

7        MR. RASHBAUM:  Nor should they, Your Honor.  Judge,

8   they should not -- we should not be getting in the purview of

9   their deliberations.

10        THE COURT:  I don't.

11        MR. RASHBAUM:  Well, that would be getting in their

12   purview, Judge, because --

13        THE COURT:  I'm going to overrule the objection.  I'm

14   going to do that because it's the third day of deliberations and

15   there's no prejudice.

16        MR. RASHBAUM:  There is prejudice.

17        THE COURT:  What is the prejudice?

18        MR. RASHBAUM:  The prejudice is that you are giving

19   some of these jurors the opportunity to say, we give up, we're

20   going to compromise, and we're going to give verdicts on certain

21   counts and not on other counts.

22        THE COURT:  Absolutely not, because that is not what

23   I'm doing.  I'm merely saying there is that possibility.  You

24   should -- I'm not going to give them an Allen charge.  I'm just

25   telling them, if you've reached decisions on some counts and not

1  others, that's perfect.  We can accept that because the law says

2  that we can do that.  I've done that before.  It's been approved

3  by not just the Eleventh Circuit, but a bunch of other circuits.

4          MR. RASHBAUM:  It's been approved in situations where

5  the jury has not come out and said that they're deadlocked and

6  not come out with any --

7          THE COURT:  Absolutely.

8          MR. RASHBAUM:  -- questions on that?

9          THE COURT:  No, there have been a lot of questions in

10  this case.

11          Mr. RASHBAUM:  No questions indicating that the jury is

12  in any way whatsoever even close to deadlocked in this case.

13          THE COURT:  You know, the fact that they're on the

14  third day is an indication that they're struggling with it.

15          MR. RASHBAUM:  Judge, I have had juries out for two

16  weeks who have come back with complete verdicts.  It's an

17  indication that this case has evidence and they're going through

18  it.

19          THE COURT:  They are.

20          MR. RASHBAUM:  But the minute you start mentioning --

21  as the judge of this court, the minute you start mentioning to

22  these people anything about partial verdicts, whether you intend

23  to or not, you're putting something in their minds about partial

24  verdicts, and we would object to that, Your Honor.

25          THE COURT:  All right.  But I'm going to bring them out

1   and see what they want to do, in any event, without pressuring

2   them at all, because I've told them there's no minimum time, no

3   maximum time.  I think it's only fair to let them know that

4   after today, they could come back next week.  I'm here.  You're

5   here.  They are here.  It's no big deal.

6           I am not giving an Allen charge.  I've never given an

7   Allen charge without the jury telling me they're deadlocked, but

8   I think it's appropriate under the circumstances, in view of

9   what's happening.  But your objection is preserved.  If I'm

10  wrong and he is convicted, I guess if for some reason we accept

11  partial verdicts, the acquittals, you would want me to strike

12  those.

13          MR. RASHBAUM:  That's not the point, Your Honor.

14  That's not the point at all, and we all know what the point is.

15  That's not the point at all.

16          THE COURT:  The point is to preserve something for

17  appeal just in case.

18          MR. RASHBAUM:  No, the point is that the jury gets to

19  deliberate without the Court's interference.

20          THE COURT:  I never interfere with the --

21          MR. RASHBAUM:  By you talking about partial verdicts,

22  with all due respect, you're interfering with the jury.

23          THE COURT:  Is it wrong under the law to accept partial

24  verdicts?

25          MR. RASHBAUM:  It is not, Your Honor, but they haven't

1    asked you to accept a partial verdict.

2        THE COURT:  Because there's no way that a jury would

3    say, may we render only partial verdicts?

4        MR. RASHBAUM:  They've never done that before, Your

5    Honor.  That's what you're telling --

6        THE COURT:  No jury has ever done that before?

7        MR. RASHBAUM:  Of course, they have.

8        THE COURT:  They've said, may we have --

9        MR. RASHBAUM:  Of course, they have.

10        I would ask you to look at United States v. Regess

11   (phonetic) in the Southern District of New York when the jury a

12   week into the case said, can we --

13        THE COURT:  Eleventh Circuit.  We're in the Eleventh

14   Circuit.

15        MR. RASHBAUM:  Okay.  And I'm sure it's been happening

16   in this circuit before, too, Your Honor.  Maybe not before you,

17   but it's the same thing as --

18        THE COURT:  Like I said, 760-some jury trials, I've

19   never seen it, but it could be the first time.

20        Bring out the jurors, please.

21     (The jury entered the courtroom at 3:35 p.m.)

22        THE COURT:  Thank you, folks.  Have a seat and relax.

23   We have the defendant, defense counsel, Government counsel, and

24   we have all of the jurors.

25        How are you all doing this afternoon?  Great?  All

1  right.

2          Several things I want to tell you.  First, I always

3  give an opportunity to the jurors, just like I did for you to

4  walk during lunch, to walk into the courtroom.  Sometimes that's

5  a good thing, and I told you when we selected you as jurors, and

6  even now, there's no minimum time and there's no maximum time.

7  So I don't want you to think that anybody, certainly not the

8  judge, is interfering.  Remember, I said I'm a judge of the law,

9  you're the judges of the facts.  You take as long as you want or

10 as little as you want.

11         But since I'm giving you the opportunity to stretch

12 your legs -- it's not even the seventh inning stretch because

13 you decide how long you stay, and I wanted to tell you because

14 of a scheduling conflict that I have at the end of the day,

15 though some days we have worked till 6:30 and thereabouts, today

16 we are going to work only until around 5:00.  Okay?  That

17 doesn't mean that you have to reach a decision by 5:00 on any

18 count or on all the counts.  You can decide how many counts you

19 want to reach decisions on, what counts you cannot reach

20 decisions on, reach decision on all, one way or another.  That's

21 your business, not the judge's business.  There's never any

22 minimum.  But out of courtesy, then I'll bring you back.  Like I

23 told you, now you're the decision-makers of your time, not just

24 of the very important thing of deciding whether the Government

25 has proven its allegations on each count.  You'll come back on

1   Monday and I have another jury trial, but we'll let you use the
2   same jury room and we'll figure out what to do.  We've done that
3   already in this case.

4          But I don't want you to misinterpret.  I usually take
5   an afternoon break with the jurors to see how long it takes.
6   You're very conscientious.  Both sides are very appreciative of
7   the care based on the questions that you've asked and how you
8   are looking at exhibits in this very complicated case, going
9   count by count.  You do what you want and you're free to ask
10  questions if you want of each other.  You don't even have to ask
11  me any questions.

12         But out of courtesy, I thought I would let you know,
13  because we have worked till 6:30 sometimes, that today it will
14  be 5:00.  Again, that's not an indication that you should reach
15  a decision on all counts before then.  You decide what you want
16  to do, when you want to do it and how you want to do it.  All
17  right?

18         So I'm going to be doing other things.  So you keep
19  working.  We won't interfere with you.  All right?

20         Thank you very much.  We'll see you whenever you want
21  to be seen.

22         THE COURT SECURITY OFFICER:  All rise.

23     (The jury retired from the courtroom at 3:37 p.m.)

24         THE COURT:  All right.  So I've got to see you at 5:00,
25  because I have another commitment.  All right?  So you have to

1    be here a little bit before 5.  All right?  See you then.

2    (A recess was taken at 3:38 p.m. and the following

3    proceedings were held at 5:16 p.m.)

4    THE COURT:  Okay.  Defendant is present, defense

5    counsel, Government counsel.

6    I have questions from the jury, but they're not

7    substantive.  They have to do with timing, which I think

8    ratifies the Court's decision to tell them about -- without

9    urging them to do anything in particular, just to be fair to

10   them, which I think is always good in addition to being fair to

11   the parties, including the defendant, to be fair to the jurors

12   when I told them that they could come back next Monday.

13   So this is the question:  We have a question regarding

14   coming in on Monday.

15   "Jansel Febres, Juror Number 14," because he was

16       originally 14, "has a test for school on Monday at 4 p.m."

17   "Number 2, Dineiska Rodriguez, Juror Number 12, has a

18       doctor's appointment on Monday, but doesn't recall time, and

19       mentioned that on day one."  And she did.

20   We weren't thinking we would be here that long, which

21   is why I indicated to the jurors who were scheduled to be here

22   during this two-week period out of courtesy what I said before

23   the recess.

24   What say the defense to that?  What do you want me to

25   tell these jurors who are thinking about what's going to happen

1  on Monday and it is 5:15?  What do you want me to tell them?

2          MR. RASHBAUM:  We should accommodate their schedules.

3  So if, you know --

4          THE COURT:  Which means what?

5          MR. RASHBAUM:  Which means if there's a time that all

6  12 of them could be here on Monday, great.  If not, come back

7  Tuesday.

8          THE COURT:  And how do we determine what time on Monday

9  can they come?

10          MR. RASHBAUM:  I guess you would ask the two jurors

11  whether they can be here on Monday or -- well, it's a test.  So

12  I would ask them to come back Tuesday.

13          THE COURT:  Pardon?

14          MR. RASHBAUM:  I would say come back Tuesday if they

15  can't be here on Monday.

16          THE COURT:  Okay.  And, of course, when I say that, we

17  will have another note on other jurors who can't come back

18  Tuesday.

19          MR. RASHBAUM:  Then I would say come back Wednesday.

20          THE COURT:  Okay.  All right.  And that's reasonable?

21          MR. RASHBAUM:  Yes.

22          THE COURT:  Okay.  What say the Government?

23          MR. JUENGER:  Well, Your Honor, I think Mr. Rashbaum's

24  first impulse, which is to figure out if they can all be here on

25  Monday, makes the most sense.

1            THE COURT:  Well, they cannot.  Two of them have told

2     me.

3            MR. JUENGER:  Well, I think one of them told you they

4     couldn't be here after 4 or maybe before.

5            THE COURT:  He has a test at 4 p.m.

6            MR. JUENGER:  Right.  And the other one has some

7     undetermined time for an appointment.

8            THE COURT:  Okay.  We have to determine the time, which

9     means she has to get the phone.  See, we don't give them phones,

10    remember --

11           MR. JUENGER:  Yes.

12           THE COURT:  -- when they are deliberating?

13           So we have to figure that out at 5:15.  So I probably

14    should have given the instruction that I gave them even earlier

15    so we could react to it reasonably in order to accommodate the

16    jurors who have taken two weeks of their time to serve you all.

17    All right.

18           Shirley, have Ms. Rodriguez -- give her her phone.  See

19    which one it is.  Take the phone, see if she can call to find

20    out what time her doctor's appointment is.  Once we find that

21    out, once she's done with that, we will bring her out and we

22    will bring in Mr. Febres, too.

23        (There was a brief discussion off the record.)

24           THE COURT:  Ms. Rodriguez told my courtroom deputy that

25    her appointment is at 2:00 in Kendall.  So let's bring in

1    Mr. Febres to see when he has to -- Jansel Febres, bring him

2    out, please.  Febres.  Mr. Febres.

3            THE COURT SECURITY OFFICER:  All rise.

4        (Juror Jansel Febres Cotto entered the courtroom at 5:25

5    p.m.)

6            THE COURT:  Mr. Febres.  Okay.  Have a seat.  Any chair

7    will do.

8            You got your test on Monday at what time, 4:00?

9            MR. FEBRES:  4, yes, sir.

10           THE COURT:  What time would you have to leave?

11           MR. FEBRES:  I think 3 would be all right.

12           THE COURT:  All right.  Thank you.

13           MR. FEBRES:  All right.

14           THE COURT:  Go back.  Thank you very much.

15       (Juror Jansel Febres Cotto retired from the courtroom at

16   5:25 p.m.)

17           THE COURT:  All right.  It's 5:25.  So what we'll do

18   is -- they'll keep on deliberating, and if we have to recess,

19   the two alternates are -- I've only done this once, but for them

20   to come back on Saturday or Sunday, barring any religious

21   objections, and coming back also, if necessary, on Monday

22   morning at 8, and they can work from 8 until 12:30.  And then on

23   Monday we will deal with Tuesday.  No point dealing with Tuesday

24   now when we are not there yet.  So that's what we'll do.

25           Any objections from the Government?

1      MR. JUENGER:  No objections from the Government.

2      THE COURT:  From the defense?

3      MR. RASHBAUM:  Judge, we object to them having to come

4 in on the weekend.

5      THE COURT:  Because?

6      MR. RASHBAUM:  We think, again, the Court is pressuring

7 them to make a decision.

8      THE COURT:  Absolutely not.  And the record has been

9 clear that I'm not pressuring.  From day one I said no minimum

10 time and no maximum time.  Absolutely not.  I'll only do

11 whatever the jurors want.

12      MR. RASHBAUM:  Oh, so you're going to give them an

13 option to come in on the weekend?

14      THE COURT:  I will never force anybody to do anything.

15 So I take umbrage at the word "pressure."  In all my years, I

16 have never pressured the jury to do anything.  So when you make

17 an accusations like that, you'd better back it up.

18      MR. RASHBAUM:  Your last instruction, Your Honor, was

19 inappropriate --

20      THE COURT:  You've got it for the record.

21      MR. RASHBAUM:  It was inappropriate, Your Honor.

22      THE COURT:  I've overruled the objection.  You didn't

23 even object after I gave it.  So you probably waived it.

24      MR. RASHBAUM:  I'm objecting before, after, and I

25 didn't object during.

1          THE COURT:  You did not object afterwards, but it's up

2    to you to tell that to the Court of Appeals if you have to.

3          MR. RASHBAUM:  Hopefully, I won't have to.

4          THE COURT:  But you did not object afterwards.

5          MR. RASHBAUM:  So, Judge, are you going to give them --

6          THE COURT:  You did not object afterwards.  You

7    objected before.  And if it's a wrong objection -- if it's a

8    wrong instruction the way I said it, it's there.  Whatever I

9    said is there, but it's obvious that it doesn't pressure the

10   jurors because they haven't done anything about it.  I've always

11   given the jurors the option to see how long they want to stay.

12   That's how I've done it in every single trial and that's how

13   I've done it in this case, again, ratified by the fact that it's

14   5:30 in the afternoon, not 5:00 like I told them.

15          I do not put pressure on jurors; never have and never

16   will.  You disagree.  You made your objection before I gave the

17   instruction, not after, and it's up to wiser judges to decide

18   whether that was enough or whether what I said was modified by

19   your suggestions afterwards.  It's up to them, not up to me.

20          MR. RASHBAUM:  That's fine.  Judge, so you're going to

21   give them the option then of coming in on the weekend, is that

22   what I understand?

23          THE COURT:  I always give the jurors the option to do

24   whatever they want.

25          MR. RASHBAUM:  Oh, okay.  That's fine.

1          THE COURT:  I always have.

2          MR. RASHBAUM:  As long as you --

3          THE COURT:  If you listen instead of getting so uppity

4    about it, you would understand.

5          MR. RASHBAUM:  Judge, there's nothing personal here.  I

6    have a record to protect and a client to defend.

7          THE COURT:  The record is protected when someone says

8    something to the court reporter.

9          MR. RASHBAUM:  I think the record speaks for itself,

10   Your Honor.

11         THE COURT:  It does indeed.  It does indeed.  That's

12   what I've said.  It does indeed.

13         Hang around the hallway, no farther than this floor,

14   just in case --

15         THE COURT SECURITY OFFICER:  All rise.

16         THE COURT:  -- the jurors want to have a decision or a

17   question.  Don't go farther than this floor.

18         We're in recess.

19    (A recess was taken at 5:33 p.m. after which the following

20   proceedings were held at 6:04 p.m.)

21         THE COURT:  I have a note from the jury that says --

22   please be seated -- since it's almost 6:05 which is sunset,

23   today anyway, "We would like to leave for today.  Thank you."

24         So bring in the jurors and we will send them home, as

25   they wish.

1          THE COURT SECURITY OFFICER:  All rise, please.

2     (The jury entered the courtroom at 6:04 p.m.)

3          THE COURT:  Thank you, folks.  Please be seated for

4  just a second.

5          I got your note that you want to go home and as is

6  typical -- please be seated -- we'll let you do whatever you

7  want.

8          Now, you know what I'm going to say, and I know it's

9  tiring.  Do not read anything about the case.  Do not talk to

10 anybody about the case.  Do not see anything about the case.  Do

11 not google or any other Internet search about this case.  All

12 right?  Can you do that for the weekend?  And I assume that you

13 all don't want to come in tomorrow or Sunday, right?

14          MS. PADRON:  No.

15          THE COURT:  See?  All right.  So consistent with

16 letting you do whatever you want, Monday.

17          Because we have got some conflicts in the afternoon,

18 how about if we start earlier?  Can you do that?  But then you

19 all really have to -- you avoid some of the traffic.  Is 8:30

20 okay or do you want to do it at 8:00?

21          MS. PADRON:  I can't --

22          THE COURT:  Can you make it by 8:30?

23          MS. PADRON:  Yes.

24          THE COURT:  Okay.  All righty.  8:30 in the morning.

25 As soon as the 12th person is there, you start deliberating.

1   You know the drill because it will be your fourth day.  No

2   minimum, no maximum time.  Take all the time you want, as I've

3   told you probably as often as I've told you not to google

4   things, and I can tell you know that because you're all smiling

5   at that instruction.  We want you to be conscientious, take this

6   seriously, as you have, and take all the time you want.  I'll be

7   doing other things, so we will find another jury room.  There's

8   never any pressure whatsoever on you, except to follow the law

9   and look at the evidence and I think that's what you're doing,

10  and take all the time you want.

11         All right.  So you'll work from 8:30 till -- is 1:00

12  too late?  You can get to your doctor's appointment on time?

13         Okay.  Till 1:00.  So eat -- I don't want to bring

14  doughnuts again because sometimes I think they're not healthy,

15  though I like them, but you can bring in something.  So we won't

16  have a lunch break or anything like that.  Just work straight

17  through, and then Tuesday, Wednesday, Thursday, Friday,

18  Saturday, there's absolutely no problem whatsoever.  That's what

19  I've said always in all of my jury trials that I've had, and you

20  can take as long as you want.  All right?

21         So have a good evening.  I think I can say that since

22  it's 6:05 p.m.  All right?  It's sunset.

23         See you Monday.  I'll stop in just to say good morning.

24  Okay?  Thank you.

25     (The jury retired from the courtroom at 6:08 p.m.)

1          THE COURT:  Okay.  Sit here for five minutes, maybe a

2     little longer, so that they can go home.  And then I want you

3     all back -- one lawyer for each side and the defendant to be

4     here at 11:30 Monday morning.

5          Is that understood, Mr. Grow?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  All right.  So then we'll see you then, but

8     stay here for five minutes.

9          MR. LARSEN:  All right.  Have a nice weekend.

10        (The trial adjourned at 6:09 p.m.)

11

12                    C E R T I F I C A T E

13        I hereby certify that the foregoing is an accurate

14   transcription of proceedings in the above-entitled matter.

15

16   _____          _____
          DATE                 GILDA PASTOR-HERNANDEZ, RPR, FPR
17     09-10-18                 Official United States Court Reporter
                                Wilkie D. Ferguson Jr. U.S. Courthouse
18                              400 North Miami Avenue, Suite 13-3
                                Miami, Florida  33128     305.523.5118
19                              gphofficialreporter@gmail.com

20

21

22

23

24

25