```
 1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
 2                          MIAMI DIVISION

 3                  CASE NUMBER 16-20893-CR-MORENO

 4   UNITED STATES OF AMERICA,

 5              Plaintiff,                    Courtroom 13-3

 6      vs.                                   Miami, Florida

 7   MONTY RAY GROW,                          February 5, 2018

 8              Defendant.
```

```
 9   ================================================================

                     JURY TRIAL PROCEEDINGS
10        BEFORE THE HONORABLE FEDERICO A. MORENO
                UNITED STATES DISTRICT JUDGE
11   ================================================================

12   APPEARANCES:

13   FOR THE GOVERNMENT:      KEVIN J. LARSEN, AUSA
                             JON M. JUENGER, AUSA
14                           DAREN GROVE, AUSA
                             United States Attorney's Office
15                           Economic Crimes Section
                             United States Attorney's Office
16                           99 Northeast Fourth Street
                             Miami, Florida 33132
17                                              305-961-9356
                                           Fax: 305-530-6168
18                                       kevin.larsen@usdoj.gov
                                          jon.juenger@usdoj.gov
19                                        daren.grove@usdoj.gov

20   FOR THE DEFENDANT:       DANIEL L. RASHBAUM, ESQ.
                             JEFFREY E. MARCUS, ESQ.
21                           Marcus Neiman & Rashbaum, LLP
                             2 South Biscayne Boulevard
22                           Suite 1750
                             Miami, Florida 33131
23                                              305-400-4261
                                           Fax: 866-780-8355
24                                       drashbaum@mnrlawfirm.com
                                          jmarcus@mnrlawfirm.com

25
```

```
 1                              KATHRYN A. MEYERS, ESQ.
                                Law Office of Kathryn A. Meyers PLLC
 2                              2 South Biscayne Boulevard
                                Suite 1750
 3                              Miami, Florida 33131
                                                   305-400-4266
 4                                         kate@kmeyerslaw.com

 5   REPORTED BY:               GILDA PASTOR-HERNANDEZ, RPR, FPR
                                Official United States Court Reporter
 6                              Wilkie D. Ferguson Jr. US Courthouse
                                400 North Miami Avenue - Suite 13-3
 7                              Miami, Florida  33128    305.523.5118
                                gphofficialreporter@gmail.com
 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

 1                    **TABLE OF CONTENTS**

 2                                                    Page

 3

 4
   Closing Argument by Mr. Grove ............................. 27

 5
   Closing Argument by Mr. Marcus ........................... 32

 6
   Reporter's Certificate ................................... 76

 7

 8

 9

10

11                        **EXHIBITS**

12  Exhibits                 Marked for          Received
                           Identification      in Evidence
13
    Description               Page    Line      Page    Line
14

15

16

17

18

19

20

21

22

23

24

25

1          (The following proceedings were held at 11:55 a.m.:)

2          THE COURT:  United States versus Grow Case.  Defendant

3     is present, defense counsel, Government counsel.  Thank you for

4     being here.

5          We have nothing -- please be seated.  We have nothing

6     from the jury.  So just to confirm, they're here until 1:00

7     because of a doctor's appointment.  So I'm going to bring them

8     out -- and also the test by another juror.  So I'm going to

9     bring them out to remind them no lunch and 1:00 is when they

10    leave -- they all got here on time this morning -- and confirm

11    that they can come in tomorrow at 9:00 or 8:30, let's see, in

12    case any of them have any problems.  We'll do it day by day.

13         I don't want to ask them about more than one day and my

14    jury trial settled this morning, so I don't have the problem

15    with the jury room, but even if I did, we'd worked it out.  But

16    that's what I'm going to do.

17         Any problems with that from the Government?

18         MR. LARSEN:  No, sir.

19         THE COURT:  From the defense?

20         MR. RASHBAUM:  No, Your Honor.

21         THE COURT:  Okay.  Shirley, tell them to bring out the

22    jurors.

23         THE COURTROOM DEPUTY:  We have one hour.

24         THE COURT:  You can do it here.  They need to stretch

25    their legs.  It's almost 12:00.

1       (The jury entered the courtroom at 11:57 a.m.)

2       THE COURT:  Good morning, everybody.  Just wanted to

3  see you before I said good afternoon.  That's all.  I think we

4  have everybody, right?  Yeah.  Okay.  Have a seat and relax.

5       All right.  We have the defendant present, defense

6  counsel, Government counsel.

7       I know you all are going through everything as

8  meticulously as you have for the last three days, but I wanted

9  to remind you, you probably don't need any reminding, you're

10  going to work till 1:00, so I'm not going to order any lunch.

11  That way, at 1:00 you can be on your own.  You kind of like that

12  anyway, at least from Friday.

13       Then, again, no minimum time, obviously, and no maximum

14  time either.  You take as long as you want to reach whatever

15  decisions you think the law and the facts dictate that you

16  should.  So at 1:00, if you haven't reached a decision on

17  anything yet, then we'll just send you home with the same

18  instructions not to read anything, watch anything, talk about

19  anything, and come back tomorrow, Tuesday.

20       I just wanted to confirm, are there any issues

21  tomorrow?  Remember I said two and a half weeks?  It's kind of

22  becoming two and a half weeks, but there's no limitation on the

23  half a week because you're in control now, all right, not me.

24       Okay.  So any problems with coming in -- after 1:00

25  today -- tomorrow morning?  We don't have any issues, anybody in

1      the first row?  Second row?

2              So tomorrow we will work from, the typical thing, 9:00

3      to 5:00, and we will do that from time to time throughout the

4      week.  All right?

5              You have the coffee, soda, the Verdict Form, the jury

6      instructions.  We don't bother you.  You can put your papers

7      there, so no one will touch it, but someone has to come in --

8      well, there won't be that much to clean up, but there's a little

9      bit of cleaning up to do.  So leave that, but we will take --

10     Shirley will take the Verdict Form.  You each have your own jury

11     instructions, but she will take that envelope with those things,

12     which will be your cue tomorrow morning, if you need to come in

13     tomorrow morning, and that's the routine that we will have from

14     day-to-day.

15             Any issues on Wednesday?  No issues?  You know, I

16     almost wasn't going to ask, but I'm kind one of these planners.

17     I always want to know a little bit ahead of time.  Yes.

18             MS. PADRON:  Wednesday at 11:30 I have an appointment

19     at my daughter's school for --

20             THE COURT:  But she's the one who takes the test.

21             MS. PADRON:  But I have to be there to sign the paper.

22             THE COURT:  Okay.  Do you think you can sign the papers

23     this afternoon?

24             MS. PADRON:  I can ask when I pick her up if it's okay,

25     but I --

1      THE COURT:  You've got a little extra time this

2  afternoon if it's just that.  I mean that's an important thing,

3  but you don't have to -- how old is she?

4      MS. PADRON:  Five.

5      THE COURT:  Okay.  So someone has got to take her

6  obviously.

7      MS. PADRON:  Well, yeah, I would have to take her.  No,

8  it would be at her school, so I would take her in the morning,

9  normal.

10      THE COURT:  Oh, in the morning, you sign, but you said

11  at 11:00.

12      MS. PADRON:  No, her testing is at 11:30, is when I

13  have the appointment with the gifted counselor.

14      THE COURT:  Can you sign the papers before?

15      MS. PADRON:  I will find out today.

16      THE COURT:  Yeah, and then pick her up at the end of

17  the day.  All right?  I mean, I'm not suggesting you'll be here

18  Wednesday.  You all decide how long you're here for.

19      MS. PADRON:  Understood.

20      THE COURT:  All right.  Okay.  Thank you.  Nobody else?

21  All right.  See you whenever you want to be seen.

22      THE COURT SECURITY OFFICER:  All rise for the jury.

23   (The jury retired from the courtroom at 12:01 p.m. after

24  which the following proceedings were held:)

25      THE COURT:  Okay.  Have a seat.  You all have to wait

1    five minutes, maybe a little bit more, so the jurors will leave.

2            I had denied the Motion for Judgment as a Matter of Law

3    and I think the defendant also renewed it at the end, I'm pretty

4    sure, and I denied it and said I would wait till the jury would

5    decide.  One of the main cases cited by the defense was Medina,

6    United States versus Medina, 485 F.3d 1291, from 2007, and there

7    are a couple of other cases by Judge Hull from the Eleventh

8    Circuit that I think you all should look at in the event that

9    it's necessary to file anything afterwards.

10           One of them is United States versus Vernon, Chris

11   Vernon, and there was also a Jeff Vernon, and Butch Brill.  It's

12   a more recent case because it's from 2013, 723 F.3d 1234, and of

13   course, no case is identical to another case.  There the Court

14   of Appeals found sufficient evidence supported the jury's

15   finding that the defendant, as the chief financial officer for a

16   specialty pharmacy, acted willfully in approving pharmacy's

17   payments to health care provider and its owner, thus supporting

18   the defendant's conviction under the Anti-Kickback Statute.

19           Evidence showed that at the time that he approved those

20   payments, the defendant knew that the commission-based nature of

21   the pharmacy's payments to provider and its owners, that owner

22   was not employed by pharmacy, and that the Anti-Kickback Statute

23   criminalized such commission-based arrangements between health

24   care providers and third parties.  It's a long opinion because I

25   think it was a long trial.  There were two cases.  It was a very

1    long opinion.

2           But I submit that both -- you all probably know the

3    case, but in case you didn't, you may want to read it.

4           It also talks about there being sufficient evidence

5    supported the jury's finding that individual was not a bona fide

6    employee of specialty pharmacy for which defendant was an

7    executive, precluding the defendant's affirmative defense under

8    the Anti-Kickback Statute's safe harbor provisions and

9    prosecution for violations of the Anti-Kickback Statute.

10          The Court had instructed the jury as to bona fide

11   employee, and in that case, even listed the relevant factors

12   about it and then talked about conspiracy.

13          What the Eleventh Circuit did, Judge Hull, Pryor, and

14   District Judge Schlesinger, was they reversed the granting of

15   the Rule 29 acquittal after the jury's decision, and they

16   vacated the granting of a new trial in that particular case.

17          There are, of course, distinctions and we don't even

18   have a verdict so -- but it's also helpful in case there are new

19   motions.  There, there was good faith reliance on counsel's

20   advice, which was not the case here, though we had some lawyers

21   testifying, but they also -- which is the law under United

22   States versus Miranda, a different Miranda case, from the

23   Eleventh Circuit, 425 F.3d 953, where the District Court's

24   determination that the evidence introduced at trial was

25   insufficient to support the jury's verdict of guilt is an issue

1  of law entitled to no deference on appeal.

2        You know, I'm thinking ahead.  I don't know what's

3  going to happen.  I hate saying I don't care what's going to

4  happen because I always care a little bit, but as sometimes

5  people say, I don't have a dog in the fight because I'm not for

6  either side.

7        There's another case that you probably are even more

8  familiar with because it's a more recent case and that's United

9  States of America versus Clay.  It's also an opinion by Judge

10  Hull and it deals with the fraud itself.  So it's interesting to

11  see that it has to do in a way with the first nine counts of the

12  conviction, and when the Court of Appeals goes through the

13  procedural history, there are some things that are not the same,

14  but it says:

15        After a trial lasting almost three months, the jury

16  returned a mixed verdict.  It was unable to reach a verdict as

17  to any defendant on Count 1, the conspiracy charge.  The jury

18  acquitted the defendants of Counts 2 and 3 involving some

19  expense reports.  As to Counts 4 and 5, involving some other

20  year's expense reports, the jury convicted one defendant,

21  Behrens, acquitted another one, and was unable to reach a

22  verdict as to other defendants, Clay and Kale, and there were

23  some other acquittals.  I mean, it was, as we've accepted for a

24  long time, mixed verdicts at some point, and it also reiterates

25  what you all know about the law because it quotes both Vernon

1   and Medina.

2        This is what it says:  "We agree that in a health care

3      fraud case such as this, the defendant must be shown to have

4      known that the claims submitted were, in fact, false.

5      Although the Government --" and then they cite those cases.

6      "Although the Government must prove the defendant's

7      knowledge of falsity, a defendant's knowledge can be proven

8      in more than one way.  Here the District Court properly

9      instructed the jury that a statement or representation is

10     false or fraudulent if it is about a material fact that the

11     speaker knows is untrue or makes with deliberate

12     indifference as to the truth and makes it with intent to

13     defraud.  Representations made with deliberate indifference

14     to the truth and with intent to defraud adequately satisfy

15     the knowledge requirement."

16        There's just a wealth of things that could be helpful.

17   It talks also about a willful blindness instruction, which I did

18   not give in this case even though the Government requested it.

19   It talks about the basic requirements of that, the difference

20   between reckless indifference.  In those cases there were cash

21   bonuses, and you're probably familiar with the cases, but I

22   wasn't.  And as I read them and thinking about the possibility

23   of a renewed Motion for Judgment of Acquittal, I thought you all

24   should know -- you know more than I do, but you should know at

25   least as much as I do, so we're kind of on the same page or on

1   the same pages, with distinctions and all of that, for two

2   reasons; number one, in the event that the jury does not reach a

3   verdict on any count in this case, we will proceed to trial as

4   indicated -- I think I said -- what did I say, March 19th?

5   March 5th.

6           THE COURTROOM DEPUTY:  March 5th or March 12th.

7           THE COURT:  No.  What did I say?  Did you write it

8   down, Shirley?

9           March 12th.  March 5th would be -- March 5th, but it's

10  that two-week period, and if it's a mixed verdict, we're going

11  to go to trial on whatever they didn't find.

12          Of course, if they are acquitted we won't go to trial.

13  If they are acquitted of some, we won't go to trial, but you all

14  were going to block off I think -- Mr. Larsen, you were going to

15  go to Phoenix.  I thought of you when I was watching the golf

16  tournament today -- I mean, not today, yesterday, before the

17  Super Bowl.  It's a beautiful place.

18          Did you ever go to the Museum of Musical Instruments?

19          MR. LARSEN:  No, I've not been to that one.

20          THE COURT:  I know it sounds boring, but it's actually

21  one of the best museums I've ever been to.

22          MR. LARSEN:  Is it downtown or Scottsdale?

23          THE COURT:  It's a little outside, it's in Phoenix, but

24  I tell everyone who has ever been there.  I didn't think so.  My

25  wife always drags me to museums and I go reluctantly because I

1    need to find culture and I thought that would be in the bottom

2    and it was actually on the top and I encouraged my son when he

3    went there on a golf outing and he loved it.  He just became 33

4    with a bunch of golfing buddies, so that shows you that it's

5    kind of a different type of museum.

6            But be that as it may, you all talked about your

7    vacations, going to LEGOLAND for two weeks during spring break

8    and things of that nature and I think I've accommodated your

9    schedules and I've accommodated the jurors' schedules.  I don't

10   know what's going to happen, but I suspect we will either get a

11   hung jury or a mixed verdict, but I've been wrong in this case

12   on timing obviously.  I don't remember if it's the longest

13   deliberations that I've had.  I don't keep track of that, but I

14   can't remember one, but they're going to take as long as they

15   think is necessary.  They haven't asked for anything.  They did

16   he ask for more notes, more papers, so we dropped off five more,

17   but we didn't get any, so we'll see what happens, and you know

18   what the schedule is.

19           I'm not going to make you -- well, you know what will

20   happen?  They'll have something at five to 1:00.  So, you know,

21   it's 12:10 already, so why don't you just hang around.  I hate

22   doing that to you all because it's almost like a waste of time,

23   but just in case something happens that I need to do something

24   by 1:00, so get here about five minutes to 1:00.  If nothing has

25   happened, I'll just send you home first and then send them home

1  without any other instructions because they have heard it

2  already.  I don't think I need to repeat it unless you all think

3  I do.

4       Does anybody think I need to repeat my instructions at

5  1:00?  Government?

6       MR. LARSEN:  No.

7       THE COURT:  Defense?

8       MR. RASHBAUM:  No.

9       THE COURT:  All right.  So that's what we will do, and

10  then we'll keep on doing it every day until we're done.  Okay?

11  Thank you.

12       THE COURT SECURITY OFFICER:  All rise.

13    (There was a brief recess at 12:14 p.m. after which the

14  following proceedings were held at 12:48 p.m.)

15       THE COURT:  Defendant is present, defense counsel,

16  Government counsel.

17       We've got a note from the jury that says, "We have a

18    verdict.  Kelly Padron."

19       Bring in the jurors, please.

20       THE COURT SECURITY OFFICER:  All rise.

21       THE COURT:  Here, Shirley, this is for you.

22    (The jury entered the courtroom at 12:48 p.m.)

23       THE COURT:  We've got all the jurors.  The defendant is

24  present, defense counsel, Government counsel.  Please be seated.

25       I understand you have all reached a verdict.  Am I

1  right, Ms. Padron?

2          MS. PADRON:  Yes, sir.

3          THE COURT:  Could you give it to the court security

4  officer?  He's going to give it to my courtroom deputy.  She's

5  going to give it to me.  After I look at it, I'm going to give

6  it back to her and then she's going to read it out loud.

7          When she reads it out loud, what will happen is after

8  that, listen carefully, I'm going to ask her to poll the jury.

9  That means she's going to ask every single one of you by name

10  whether the verdict as read by her is indeed your verdict.  If

11  it is, you say yes.  If for some reason one of you says no, then

12  you go back and continue your deliberations.  All right?

13          So be patient with me for a little bit.  Okay?

14          On Count 23, there was one check and then one circled

15  with the initials K.P., right?

16          MS. PADRON:  Yes.

17          THE COURT:  All right.

18          Madam Clerk, please publish the verdicts.

19          THE COURTROOM DEPUTY:  United States District Court,

20  Southern District of Florida, Case Number 16-CR-20893-FAM,

21  United States of America versus Monty Ray Grow, Defendant.

22          Verdict Form:

23          We, the jury, unanimously find the defendant, Monty Ray

24  Grow, as to Count 1 of the Indictment, conspiracy to defraud the

25  United States, guilty.

1        As to Count 2 of the Indictment, health care fraud for

2   beneficiary P.S., claim 12-29-14, not guilty.

3        As to Count 3 of the Indictment, health care fraud for

4   beneficiary R.R., claim 1-28-15, not guilty.

5        As to Count 4 of the Indictment, health care fraud for

6   beneficiary J.B., claim 1-31-15, not guilty.

7        As to Count 5 of the Indictment, health care fraud for

8   beneficiary B.V., claim 2-20-15, guilty.

9        As to Count 6 of the Indictment, health care fraud for

10  beneficiary A.D., claim 2-23-15, not guilty.

11       As to Count 7 of the Indictment, health care fraud for

12  beneficiary J.F., claim 3-12-15, not guilty.

13       As to Count 8 of the Indictment, health care fraud for

14  beneficiary M.E., claim 5-7-15, not guilty.

15       As to Count 9 of the Indictment, conspiracy to pay and

16  receive health care kickbacks, guilty.

17       If guilty, which object of the conspiracy do you

18  unanimously agree that the Government has proven?

19       A.  Solicit and receive kickbacks in exchange for

20  referring individuals to a person to arrange for furnishing

21  prescription medication.  Yes.

22       B.  Offer and pay kickbacks to induce a person to

23  arrange or recommend the purchase of prescription medication.

24  No.

25       C.  Offer and pay kickbacks to induce a person to refer

1    an individual to a person for the furnishing of any item and

2    service paid by a Federal health care program.  Yes.

3            As to Count 10 of the Indictment, receipt of kickbacks

4    in connection with a Federal health care program on 11-7-14 for

5    $85,946, guilty.

6            As to Count 11 of the Indictment, receipt of kickbacks

7    in connection with a Federal health care program on 11-21-14 for

8    $74,663, guilty.

9            As to Count 12 of the Indictment, receipt of kickbacks

10   in connection with a Federal health care program on 12-9-14 for

11   $210,763, guilty.

12           As to Count 13 of the Indictment, receipt of kickbacks

13   in connection with a Federal health care program on 12-18-14 for

14   $288,290, guilty.

15           As to Count 14 of the Indictment, receipt of kickbacks

16   in connection with a Federal health care program on 1-2-15 for

17   $732,974, guilty.

18           As to Count 17 of the Indictment, receipt of kickbacks

19   in connection with a Federal health care program on 1-20-15 for

20   $436,490, guilty.

21           As to Count 18 of the Indictment, receipt of kickbacks

22   in connection with a Federal health care program on 1-30-15 for

23   $1,206,817, guilty.

24           As to Count 20 of the Indictment, receipt of kickbacks

25   in connection with a Federal health care program on 2-13-15 for

1  $1,964,741, guilty.

2          As to Count 22 of the Indictment, receipt of kickbacks

3  in connection with a Federal health care program on 2-27-15 for

4  $2,322,451, guilty.

5          As to Count 23 of the Indictment, receipt of kickbacks

6  in connection with a Federal health care program on 3-13-15 for

7  $3,644,894, guilty.

8          As to Count 24 of the Indictment, receipt of kickbacks

9  in connection with a Federal health care program on 3-27-15 for

10  $1,630,903, guilty.

11          As to Count 25 of the Indictment, receipt of kickbacks

12  in connection with a Federal health care program on 4-10-15 for

13  $4,425,544, guilty.

14          As to Count 26 of the Indictment, receipt of kickbacks

15  in connection with a Federal health care program on 4-27-15 for

16  $1,832,268, guilty.

17          As to Count 28 of the Indictment, receipt of kickbacks

18  in connection with a Federal health care program on 5-19-15 for

19  $690,733, not guilty.

20          As to Count 29 of the Indictment, receipt of kickbacks

21  in connection with a Federal health care program on 5-29-15 for

22  $188,844, not guilty.

23          As to Count 30 of the Indictment, receipt of kickbacks

24  in connection with a Federal health care program on 5-29-15 for

25  $43,164, not guilty.

1        As to Count 31 of the Indictment, receipt of kickbacks

2   in connection with a Federal health care program on June 12,

3   2015 for $6,156, not guilty.

4        As to Count 32 of the Indictment, receipt of kickbacks

5   in connection with a Federal health care program on June 26,

6   2015 for $69,615, not guilty.

7        As to Count 33 of the Indictment, receipt of kickbacks

8   in connection with a Federal health care program on June 29,

9   2015 for $60,360, not guilty.

10       As to Count 36 of the Indictment, payment of kickbacks

11  in connection with a Federal health care program on 1-20-15 for

12  $1,800, not guilty.

13       As to Count 37 of the Indictment, payment of kickbacks

14  in connection with a Federal health care program on 2-18-15 for

15  $1,680, not guilty.

16       As to Count 38 of the Indictment, payment of kickbacks

17  in connection with a Federal health care program on 2-18-15 for

18  $1,680, not guilty.

19       As to Count 39 of the Indictment, payment of kickbacks

20  in connection with a Federal health care program on 2-23-15 for

21  $1,750, not guilty.

22       As to Count 40 of the Indictment, payment of kickbacks

23  in connection with a Federal health care program on 3-18-15 for

24  $3,400, not guilty.

25       As to Count 41 of the Indictment, payment of kickbacks

1   in connection with a Federal health care program on 3-18-15 for

2   $1,650, not guilty.

3          As to Count 43 of the Indictment, payment of kickbacks

4   in connection with a Federal health care program on 4-22-15 for

5   $900, not guilty.

6          As to Count 44 of the Indictment, payment of kickbacks

7   in connection with a Federal health care program on 4-22-15 for

8   $1,600, not guilty.

9          As to Count 45 of the Indictment, money laundering on

10  2-3-15 for $105,545, guilty.

11          As to Count 46 of the Indictment, money laundering on

12  5-22-15 for $90,478, not guilty.

13          As to Count 47 of the Indictment, money laundering on

14  3-4-16 for $250,000, not guilty.

15          As to Count 48 of the Indictment, money laundering on

16  3-5-16 for $1,539,815, not guilty.

17          As to Count 49 of the Indictment, money laundering on

18  4-5-16 for $24,521, not guilty.

19          So say we all, dated 2-5-2018, foreperson of the jury,

20  printed name and signature, Kelly Padron.

21          THE COURT:  Poll the jury, please.

22          THE COURTROOM DEPUTY:  Ladies and gentlemen of the

23  jury, as I call your name, please answer yes or no:  Is the

24  verdict I have just read your verdict?

25          Reshma Vettaparambil.

1          MS. VETTAPARAMBIL:  Yes.

2          THE COURTROOM DEPUTY:  James Jones.

3          MR. J. JONES:  Yes.

4          THE COURTROOM DEPUTY:  Angelica Berezin.

5          MS. BEREZIN:  Yes.

6          THE COURTROOM DEPUTY:  Kelly Ann Padron.

7          MS. PADRON:  Yes.

8          THE COURTROOM DEPUTY:  Diego Hurtado.

9          MR. HURTADO:  Yes.

10         THE COURTROOM DEPUTY:  Leisy Meneses.

11         MS. MENESES:  Yes.

12         THE COURTROOM DEPUTY:  Berny Garcia.

13         MR. GARCIA:  Yes.

14         THE COURTROOM DEPUTY:  Pedro Bodden.

15         MR. BODDEN:  Yes.

16         THE COURTROOM DEPUTY:  German Merida.

17         MR. MERIDA:  Yes.

18         THE COURTROOM DEPUTY:  Gerald Jones.

19         MR. G. JONES:  Yes.

20         THE COURTROOM DEPUTY:  Jansel Febres Cotto.

21         MR. FEBRES:  Yes.

22         THE COURTROOM DEPUTY:  Dineiska Rodriguez.

23         MS. RODRIGUEZ:  Yes.

24         THE COURT:  Ladies and gentlemen of the jury, I want to

25  thank you for your service in this particular case.  The length

1   of your deliberations, the questions that you asked throughout

2   the deliberations and the verdicts that you reached,

3   distinguishing one count from another, is a credit to how

4   carefully you reviewed all of the evidence in this case, and I

5   want to thank you.

6          As a token of my appreciation I'm going to have here

7   certificates as well as your attendance sheet which we give you

8   in exchange for your juror badge.

9          No one linked to the case by friendship, family,

10  occupation will inquire as to the reasons why you reached the

11  verdict that you did -- the verdicts that you did.  No one

12  related to the case will inquire under the pain of contempt.

13  You, of course, can refuse to talk about the case with whomever

14  you want, or you can talk about the case, as long as it's not

15  someone linked to one side or the other.

16         We'll give you back your phones.  We'll keep the

17  notebooks and we destroy the paper.  We keep all the evidence

18  because it has to be filed, and we thank you for your service.

19  You're always welcome in whatever capacity you want.  You've

20  been a great jury, and I want to compliment you on that.  All

21  right?

22         Have a good afternoon now.  Okay.  Thank you.

23         THE COURT SECURITY OFFICER:  All rise.

24         THE COURT:  If you want the newspapers articles or

25  whatever, my courtroom deputy has made copies for you, if you

1   want.  Okay?

2      (The jury retired from the courtroom at 1:05 p.m.)

3           THE COURT:  Mr. Grow, the jury having found not guilty

4   of Counts 2, 3, 4, 6, 7, 8, 28, 29, 30, 31, 32, 33, 36 -- you

5   can all be seated -- 37, 38, 39, 40, 41, 43, 44, 46, 47, 48 and

6   49, you are hereby acquitted from that.

7           The jury having found you guilty of Counts 1, 5, 9, 10,

8   11, 12, 13, 14, 17, 18, 20, 22, 23, 24, 25, 26 and 45, I accept

9   the verdict.  I adjudicate you guilty.  I order a Presentence

10  Investigation Report and schedule sentencing for April 16, 2018

11  at 9:30 in the morning.

12          In view of the nature of the offenses and because of

13  the money involved and the high guidelines that I expect will be

14  shown, I'm going to take you into custody until the sentencing.

15  So I know you probably have friends and family and loved ones

16  here.  You should give your belt and your tie and your

17  belongings to them and then we'll see you at sentencing.  A

18  Presentence Investigation Report will be done.

19          Oh, you know what?  I forgot the forfeiture.  Darn it.

20  It's been going on so long.  Kenny, go outside, the court

21  security officers, stop the jurors outside.  I forgot that.  My

22  mistake.  Hold on, we have to do that.  All right.  I forgot.

23  Someone should have said something.  You've got to remind me.

24  When a judge makes a mistake never be reluctant to get up and

25  say something.  We're human beings.  I forgot all about it.

```
 1              THE COURT SECURITY OFFICER:  There are all still here.
 2              THE COURT:  They're all still here?  Okay.  I don't
 3   whether he wants to put on his tie or his coat.  It doesn't
 4   matter to me.
 5              I forgot all about it.
 6              MR. GROVE:  Your Honor, there's a Special Verdict, that
 7   would have to be fixed.
 8              THE COURT:  I know.  You all are going to make argument
 9   now.
10              Defendant still wants to proceed to the forfeiture?
11              MR. MARCUS:  Your Honor, I don't think we need to
12   retain the jury.
13              THE COURT:  No, no, it's either you do or you don't.
14   It doesn't matter to me.
15              MR. GROVE:  From what I understand, defense wants to
16   contest --
17              THE COURT:  No, no.  You all want talk to each other?
18   You should have done that while we were waiting.  Okay?
19              I'm asking the defendant whether you still wish to
20   proceed to the forfeiture.  I made a mistake because -- I've
21   never done this in the 20 -- what is it now -- 28 years.  So now
22   they have to decide forfeiture.  It's my fault.  Since the
23   deliberations were over such a long period of time, I actually
24   was not thinking and it's my fault, but no harm is done, but we
25   have to let the one that's going to the doctor go.
```

1           Have you got the forfeiture papers?  Bring my papers
2    that are on my desk.
3           So what I'm going to do is I'm going to tell the jurors
4    they have to come back tomorrow morning for the forfeiture,
5    unless you want to go with 11.  One of them needs to go to the
6    doctor.  I think it was the doctor.  I don't remember.
7           So I want to know what the defendant wants to do.  It
8    matters not to me, but we've got to organize it with the jurors
9    because I spoke about this early on last week.
10          So the issue is, you all were going to be prepared to
11   do a closing argument, neither side wanted to present evidence,
12   that's what you all told me.  Now you know what the verdict is.
13   So the question is:  Argument, instructions, and another Verdict
14   Form, but we have a juror who has a doctor appointment at 1:00.
15          So Government is ready to proceed, right?
16          MR. JUENGER:  Yes, Your Honor.
17          THE COURT:  And we have another lawyer who has
18   announced his appearance for the record.  Who is that?
19          MR. GROVE:  At counsel table, Your Honor, Assistant
20   United States Attorney, Daren Grove, for the Government.
21          THE COURT:  Okay.  What say the defendant?
22          MR. MARCUS:  We are ready to proceed, Your Honor.
23          THE COURT:  All right.  So you want the jurors to come
24   back tomorrow?  That's what you want?
25          How long is your presentation?

1          MR. MARCUS:  Five minutes or less, Your Honor.

2          THE COURT:  How long is the Government's?

3          MR. GROVE:  Approximately the same, Your Honor.

4          THE COURT:  All right.  Bring in the jurors.  Let's go.

5          THE COURT SECURITY OFFICER:  All rise.

6      (The jury entered the courtroom at 1:10 p.m.)

7          THE COURT:  Have a seat, folks.  Let me tell you --

8   please be seated.

9          There was one other thing that I forgot to do and it's

10  my fault because, with all the number of counts, I forgot one

11  other thing that you had to do that we didn't tell you about,

12  intentionally I didn't tell you about it before, and that is,

13  whenever there is a forfeiture claim -- forfeiture is where the

14  Government wants to seize assets -- you also must determine

15  that.  So I've got to give each side a few minutes, that's all

16  they want, to tell you on the forfeiture and then I'm going to

17  give you instructions and a Verdict Form on that.  All right?

18          Okay.  Government, you may proceed.  Announce your

19  appearance for the jurors because I don't think they know you,

20  and tell us what you want to say.

21          MR. GROVE:  May it please the Court, opposing counsel.

22          Ladies and gentlemen of the jury --

23          THE COURT:  No, no, you've got to use a microphone, and

24  you've got to turn that lectern.  The court reporter can't hear

25  you otherwise.  Go ahead.

1           MR. GROVE:  I will speak over here.

2           THE COURT:  No, no, no.  Turn the lectern.  This is

3  forfeiture.

4           MR. GROVE:  I was going to use the --

5           THE COURT:  I'm sorry, turn the lectern and make your

6  argument.  Let's go.

7                        CLOSING ARGUMENTS

8           MR. GROVE:  Well, ladies and gentlemen, I haven't had

9  an opportunity to speak to you yet.  My name is Daren Grove, I'm

10  an Assistant United States Attorney, and like Kevin and Jon, I

11  represent the Government.

12           In this case, or in this matter that's now before you,

13  essentially what we're asking you to do is to bring life or

14  meaning to the phrase "crime does not pay."  Now, you found the

15  defendant guilty of certain offense, and as actually what we've

16  alleged and we believe the evidence already in the record that

17  you've probably reviewed, shows, that the defendant profited

18  from his crimes.

19           What we're going to ask you to do is to make a finding

20  that basically there is a connection between certain assets that

21  I'm going to describe for you now and the crimes that you found

22  the defendant guilty of.  If you find that connection, then

23  essentially what we will do then is forfeit that property, which

24  is to say, we're going to strip the defendant of it, to

25  essentially bring meaning and effect to the phrase "crime does

 1   not pay."

 2          So with that, there are two exhibits that I think will

 3   highlight it for you.  Actually can I --

 4          THE COURT:  These were exhibits that were already

 5   admitted?

 6          MR. GROVE:  Yes, Your Honor.

 7          THE COURT:  Give me the numbers.

 8          MR. GROVE:  The first number, Your Honor, is

 9   Government's Exhibit 159, it's a summary chart.

10          THE COURT:  All right.  You all have it, you can pull

11   it out, 159.  And the next one?

12          MR. GROVE:  The next one, Your Honor, is Government's

13   Exhibit 165.

14          THE COURT:  Okay.  Any other exhibit?

15          MR. GROVE:  That's it, Your Honor.

16          THE COURT:  You can talk about them if you want,

17   briefly.

18          MR. GROVE:  Yes, Your Honor.

19          Essentially, if you will recall, these were exhibits

20   that were entered during the testimony of a financial examiner,

21   analyst, Ms. Lisa Klitz.  Essentially what she showed -- what

22   she showed is essentially the flow of money from Tricare to a

23   Patient Care America account.  You probably have reviewed this

24   evidence.  And what she showed is that essentially -- and I know

25   you can't see it from here and I don't have access to the

1    overhead.  But you'll see that the first account that we're

2    attempting to forfeit is this MGTEN bank account 147 -- I'm

3    sorry -- MGTEN bank account 4397, and essentially the

4    allegation, what the evidence has shown, is that that account

5    received what's called gross proceeds.  That just means funds

6    went into that account irrespective of what money went out of

7    that account, just the gross proceeds of these claims to Tricare

8    that you've heard about, went into this account and went into

9    this account up to -- and I believe we are alleging

10   approximately $15 million or so, or actually 19 million.

11        If you use this exhibit, 159, and just look on the jury

12   Verdict Form for this account number ending in 4397, you'll see

13   from this chart and from the evidence that 19 million went into

14   that account.  So basically what we're asking for, based on the

15   evidence that you've already seen, is that, in fact, this

16   account is connected to the crimes that you have convicted the

17   defendant of, and specifically Counts 1 and 9.  Those are the

18   two conspiracy counts, so the conspiracy to commit health care

19   fraud and wire fraud that you found him guilty of, and the

20   conspiracy to pay and receive kickbacks, that's Count 9.  So

21   basically this account is traceable to those offenses.

22        The next bank account is MGTEN bank account -- Bank of

23   America account 4176, and again, you'll see from this chart,

24   it's Government's Exhibit 159, again 19 million of proceeds from

25   this scheme went into that account.  So we ask you to basically

Closing Arguments

1   check the box yes because the evidence shows there is a

2   connection between this bank account and those crimes.

3          And then if yes, you will see that there's a blank in

4   the Verdict Form that you're going to receive, and you basically

5   will put the amount that you believe the evidence shows went

6   into that account.  And it's simple enough.  You'll see the

7   figure that Ms. Klitz actually discussed with you during her

8   testimony.

9          Then next you'll see the Monty Grow -- an individual

10  account, it's bank account number 6597.  Again, if you use this

11  summary chart and Ms. Klitz's testimony, you'll see that

12  approximately $9,373,088 went into that account, so it is

13  connected to the crimes for which you found the defendant

14  guilty.  And if you see that the evidence proves that -- and by

15  the way, as the Judge will instruct you, the evidence are the

16  quantum of evidence.  How much evidence do you need to make

17  these findings?  It's not beyond a reasonable doubt.  It's going

18  to be more likely than not, or a preponderance of the evidence.

19  So if you find more likely than not that $9 million went into

20  this account, we ask that you make a finding consistent with

21  that and then put in the amount that you found went into that

22  account, and it's right there on the exhibit for you.

23         And then last, from the Monty Grow bank account 6597,

24  $3 million went into the T Ameritrade account that's in the

25  defendant's name.

1          So we ask, again, that you find, consistent with the

2     evidence, that more likely than not, this bank account is

3     traceable to the crimes for which you found him guilty,

4     specifically Counts 1 and 9, and that the amount of money that

5     he derived from that crime, or that he got from that crime is at

6     least $3 million.  Okay.

7          Now, that's all for the bank accounts.  Now we also

8     ask --

9          THE COURT:  Wrap it up.

10         MR. GROVE:  Last thing, Your Honor, is the Porsche.

11    You found him guilty of a money laundering offense, specifically

12    Count 45.  Basically, you found that he spent more than $10,000

13    of specified unlawful activity proceeds, or money that he

14    obtained from his crimes that you found him guilty of, he spent

15    more than $10,000 on a particular asset.  In this case, Count

16    45, he spent it on a Porsche.  So there's the connection between

17    the asset and the crime.

18         All we ask is that you make a finding based on the

19    evidence that you've already heard that, in fact, the Porsche is

20    involved in that crime and that's kind of self-explanatory.

21    Obviously, it is.  You found that he purchased that Porsche with

22    SUA proceeds, so we ask that you return a Special Verdict

23    consistent with that.

24         So ultimately, all we are asking for is just for you to

25    provide a verdict that is consistent with the evidence and give

1  life to --

2          THE COURT:  Thank you.  For the defense.

3          MR. GROVE:  Yes, Your Honor.  Thank you.

4          THE COURT:  Thank you.  Mr. Marcus.

5          MR. MARCUS:  Thank you, Your Honor.

6          I'm going to keep this brief.  I know you've been

7  deliberating a long time in this case, and your verdict is

8  obviously a split one on pretty much all of the different

9  possible counts that were before you.

10          To find forfeiture now, as you see, the Government is

11  asking you to provide forfeiture on a number of bank accounts as

12  well as Mr. Grow's house that's at 5803 Mariner Street in Tampa.

13  There are a couple of theories.  There are health care theories,

14  of which you split in your verdict on the first eight counts,

15  which comprised health care claims being submitted to Tricare.

16  To find that monies are the property of those offenses you have

17  to find that this defendant -- first of all, that false claims

18  were submitted to Tricare, fraudulent claims, that he knew that

19  the claims submitted to Tricare were false, and that proceeds

20  were generated with that knowledge.

21          The other potential theory is money laundering where

22  you convicted on one count and dismissed on the remaining four

23  counts.  For money laundering, we would argue that, as we've

24  done throughout the case, that none of these transactions were

25  concealed.  They weren't done -- there was no laundering.  There

1    was no hiding of assets.  This was money earned from a business

2    through a relationship, a marketing relationship, a business

3    relationship with a pharmacy.  Everything was transparent, in

4    the open.  You saw that from the exhibits with the bank

5    accounts, the way the transactions were handled, as well as the

6    fact that Mr. Grow paid nearly $5 million to the U.S. Treasury

7    and to IRS for his taxes.

8            So on these forfeiture counts, particularly I would

9    direct you to Count 47 that you dismissed, which was monies that

10   came from the Bank of America account ending in 6597.  You also

11   acquitted Mr. Grow of money laundering with respect to the MG

12   bank account from Bank of America ending in 4176, and on Count

13   48, that was monies that came from the Bank of America account

14   that ends in 4397.

15           Thank you.

16           THE COURT:  You all have the proposed Verdict Form and

17   the jury instructions that we discussed and prepared.

18   Government, you have it.  Show it to the defense and hand that

19   over to me, the Verdict Form and the proposed instructions.

20           Any objections from the defense?  Just show it to him.

21   Any objections?  They've seen it before.  We've discussed this

22   before.

23           Any objections?

24           MR. MARCUS:  No objection, Your Honor.

25           THE COURT:  All right.  Let me have it, please.  Let me

1  have it, please.

2      MR. GROVE:  Actually, I'm sorry -- do you have an

3  objection?

4      THE COURT:  You do or you don't?

5      MR. GROVE:  These are counts for which he was

6  acquitted, your Honor.  I think defense wants us to strike them.

7  We're fine with that.  I can do that.

8      THE COURT:  Then do it.  That's why I said, what

9  instruction do you have, what objections do you have.

10      Show it to your opponent, also the Verdict Form,

11  anything you don't like, scratch it out.  Let me see it.

12      Don't talk into the microphone when you're whispering

13  to each other.

14      Any objections to what has been prepared by the

15  Government, from the Government?  Any objections from the

16  Government to what you've prepared and deleted?

17      MR. GROVE:  No, Your Honor.

18      THE COURT:  Any objections from the defendant as to

19  what was shown to you?

20      MR. MARCUS:  No.

21                  CHARGE TO THE JURY

22      THE COURT:  Okay.

23      Members of the jury, your verdict in this case does not

24  complete your jury service as it would in most cases.  In fact,

25  this is the first time I've done this in 28 years, which is why

1    I forgot.  It wasn't the fault of the lawyers.  It's my fault.

2    Because there's another matter you must now consider.

3         You must decide whether the defendant, Monty Grow,

4    should forfeit certain money or property to the United States as

5    a part of the penalty for the crimes charged in the Superseding

6    Indictment.  In a portion of Superseding Indictment not

7    previously discussed or disclosed to you, it is alleged that the

8    defendant got certain money or property from committing the

9    offenses charged in Counts 1 through 14, 17 through 18, 20, 22

10   through 26, 28 through 33, 36 through 41, and 43 through 49 of

11   the Indictment.

12        In view of your verdict finding the defendant guilty of

13   some of those offenses, you must also decide whether the money

14   or property should be forfeited to the United States.  To

15   forfeit a thing is to be divested or deprived of the ownership

16   of it as a part of the punishment allowed by the law for certain

17   criminal offenses.

18        To decide whether money or property should be

19   forfeited, you should consider all of the evidence you have

20   already heard.  There's no additional evidence, but you've heard

21   the arguments from the lawyers.  I will give you a copy of the

22   forfeiture allegations and the Superseding Indictment to

23   consider during your supplemental deliberations, so you'll be

24   able to see that in the Indictment.  What you have to find is

25   whether the property to be forfeited constitutes or is derived

1  directly or indirectly from gross proceeds traceable to the

2  commission of a health care offense and you already know what

3  the offenses were and you know what you did regarding whether

4  the defendant was guilty or not.

5      Regarding money laundering, you would have to find that

6  the property to be forfeited was involved in a money laundering

7  offense, specifically what you have already analyzed and

8  discussed, and that the property to be forfeited is traceable to

9  property that was involved in money laundering offenses.

10     Before you can find that the defendant must forfeit any

11 property under any of those standards, you must unanimously

12 agree upon which of the two standards should be applied in

13 forfeiting a particular asset.

14     Now, the standard of proof with forfeiture is not as

15 great as reasonable doubt.  It's called a preponderance of the

16 evidence, which simply means the greater weight of the evidence.

17 It means an amount of evidence that is enough to persuade you

18 that a claim or contention is more likely true than not true.

19     To be derived from something means that the money or

20 property under consideration must have been formed or developed

21 out of the original source as to be descended from that source.

22     To be involved in a money laundering offense includes

23 that money or property which was actually laundered, along with

24 any commissions or fees paid to the launderer and any property

25 used to facilitate the laundering offense.  Property will

1  facilitate an offense if it makes the prohibited conduct less

2  difficult or more or less free from obstruction or hinderance.

3       To be traceable to something means that the property

4  under consideration must have followed an ascertainable course

5  or trail in successive stages of development or progress from

6  the original source.

7       While deliberating concerning the issue of forfeiture,

8  you must not re-examine your previous determination regarding

9  the defendant's guilt.  However, all of the instructions

10  previously given to you, considering the consideration of the

11  evidence, the credibility of the witnesses, your duty to

12  deliberate together, your duty to base your verdict solely on

13  the evidence without prejudice, bias, or sympathy, and the

14  necessity of a unanimous verdict will continue to apply to these

15  supplemental considerations.

16       All right.  What I have to do now is -- we're going to

17  give you the Verdict Form, but I have to change a couple of

18  things in it because you just reached the verdict that you did.

19  So what I'm going to do is, we're going to give you a copy of

20  the Verdict Form that you've all entered because I think that

21  will be helpful, and then I'm going to give you the Special

22  Verdict Form and we'll send you back and then we'll wait for you

23  to decide.  All right?  Go back in there.  Next time you come

24  in, we'll be done.

25       THE COURT SECURITY OFFICER:  All rise.

1      (The jury retired to consider their verdict at 1:29 p.m.)

2          THE COURT:  Any objections to the jury instructions as

3  they were given to the jurors, from the Government?

4          MR. GROVE:  No, Your Honor.

5          THE COURT:  From the defense?

6          MR. MARCUS:  No.

7          THE COURT:  Okay.  The jurors are gone.  The Verdict

8  Form will include the first three pages of what was submitted,

9  and on Page 4, it's only the Porsche related to money laundering

10  offenses.  Government agrees?

11          MR. GROVE:  That's correct, Your Honor.

12          THE COURT:  Defense agrees?

13          MR. MARCUS:  Yes.

14          THE COURT:  All right.  So that's going to go back.

15  I'll give them the Verdict Form so that they remember which -- I

16  mean, they would remember because they've been at it for a long

17  time, and then just have a seat and wait because I think they'll

18  decide it quickly.

19          So we'll retype this and we'll give you copies of the

20  Verdict Forms with their decision, too.  If the marshals could

21  hang around for a little bit, this shouldn't take too long, it

22  will be easier.  So he can just sit there and we'll give you

23  copies.  We'll give you extra copies in case you want to give it

24  to anybody of what the jurors have done.

25          Just be at ease for a few minutes.  I'll get copies of

1   the Verdict Form for you all, too, and the final instructions.

2     (There was a brief recess.)

3        THE COURT:  Defendant is present, defense counsel,

4   Government counsel.

5        I think they have a note.  Please be seated.

6        I gave them the Special Verdict Form that has what we

7   indicated on the two sections.  I also cut out from the last

8   pages of the Indictment the forfeiture provisions and they have

9   that.  You'll notice when I read the instruction, I deleted the

10   mention of the two counts that I acquitted the defendant on so

11   it wouldn't be confusing.

12        So they have the forfeiture portion of the Indictment,

13   the Special Verdict Form.  The jury instructions I gave orally

14   because you all explained it well, but I think they have a

15   question, and the question is -- we also gave the phone to the

16   juror who needed to tell the jury doctor she was going to be

17   late -- "Can we please have a calculator?"  Since there's

18   something like that, let me see if mine works.

19        Yeah, here.  Any objection with responding to that?

20        MR. GROVE:  No, objection, Your Honor.

21        MR. MARCUS:  No, Your Honor.

22        THE COURT:  From the defense?

23        MR. MARCUS:  No.

24        THE COURT:  Okay.  We'll give them that.  We are

25   working on it and we'll see.

1          Here.  Do you all want copies of the Verdict Forms?  We

2    will give you some.

3          MR. MARCUS:  Yes.  Thank you.

4          MR. JUENGER:  Yes, Your Honor.

5      (There was a brief discussion off the record.)

6          THE COURT:  I have given both sides copies of the

7    Verdict Form and each count has what the charge was, as agreed

8    by both sides, with the money.

9          Consistent with how these jurors have been in being

10   very deliberative in their deliberations, the one juror with the

11   doctor's appointment, we let her have a phone and she changed it

12   for tomorrow, but we still have the other juror who has the 4:00

13   test.  So I still want you all to hang around so that we can

14   finish the forfeiture portion of the case.

15         Do you want another copy of the Verdict Form?  Our

16   machine jammed for a while, but we got it.  Do you want one or

17   not?

18         Go ahead, Shirley, give it to them.

19     (There was a brief recess.)

20         THE COURT:  Well, it's now 2:20.  Is the cafeteria

21   still open, or what should we do?  What do you all want to do

22   with the jury?  Defense?

23         MR. RASHBAUM:  I'm sorry, what's the question, Your

24   Honor?

25         THE COURT:  Well, it's 2:20.  Since I thought we were

1   going to quit at 1:00, I told the jurors we wouldn't provide any

2   lunch for them, but it is now 2:20, and they haven't asked for

3   anything, but they've been here since 9:00.  So I don't know

4   what you all want to do with the jury.

5          There is one that needs to leave probably by 3:00, so I

6   don't know if it's worth -- I always hate imposing on the jury

7   and not giving them food.  I just was not prepared for this, so

8   it's my fault, but what are your suggestions?  Defense?

9          MR. RASHBAUM:  I have no suggestions.

10          THE COURT:  What are your suggestions, Government?

11          MR. LARSEN:  I am personally hungry, so I can imagine

12   they're very hungry, too.

13          THE COURT:  I think, even though you don't need it, you

14   can do without lunch so --

15          MR. LARSEN:  True.

16          THE COURT:  I haven't eaten lunch either, which for me

17   is a big deal.  But in any event, what's going to happen if

18   you're successful on all the claims for forfeiture?  Was there a

19   seizure of the -- I know Mr. Rashbaum mentioned in closing

20   argument that everything had been seized.  What are we talking

21   about?

22          MR. GROVE:  That's correct, Your Honor.

23          THE COURT:  Use one of the two microphones that are by

24   the lecterns.  I was going to say I didn't mean to rush you, but

25   I did mean to rush you in closing so I can't say that, because I

1    always find that freedom is more important than money.

2            MR. GROVE:  Your Honor, all the assets that we are

3    seeking forfeiture of have been seized.  The bank accounts, I do

4    have --

5            THE COURT:  Don't you have to give notice in case

6    someone else wants to claim something?

7            MR. GROVE:  That's correct, Your Honor.  If the jury

8    verdict comes back that those assets are subject to forfeiture,

9    then I would submit a Motion for Preliminary Order of Forfeiture

10   based on the jury's Special Verdict.  And then, once that order

11   is entered, then we'd have to publish and give notice to any

12   known third parties and then we could potentially have an

13   ancillary proceeding before Your Honor.  I'm sure you'd enjoy

14   that.

15           THE COURT:  Well, you know who the potential third

16   parties are probably.

17           MR. GROVE:  I mean, we would serve notice to -- if the

18   bank accounts are forfeited, then we would have to send notice

19   to the corporate entities, MGTEN, and then through their

20   registered agent or so forth.

21           THE COURT:  And who owns that according to your --

22           MR. GROVE:  I'd have to look at the Articles of

23   Organization, but I believe the defendant is the only -- I think

24   he's the sole owner of MGTEN.

25           THE COURT:  All right.  And what's the defendant going

1  to do if they find forfeiture of all items?

2      MR. RASHBAUM:  I don't think there's anything for us to

3  do.  I mean, obviously it would be part --

4      THE COURT:  So what are we doing?

5      MR. RASHBAUM:  I'm not sure what the question is, Your

6  Honor.  The jury may find no forfeiture of items.

7      THE COURT:  Pardon?

8      MR. RASHBAUM:  The jury is deciding whether to find

9  forfeiture or not.

10      THE COURT:  Okay.  And if the jury decides that the

11  items should not be forfeited and he's been found guilty of

12  counts with the kickbacks that are $18.8 million and the fraud,

13  whatever the amount is, is the Government going to seek

14  restitution?

15      MR. GROVE:  Your Honor, the Government will certainly

16  seek restitution, but also will file a Motion for a Forfeiture

17  Money Judgment.

18      THE COURT:  No, if you win on forfeiture.

19      MR. GROVE:  Or even if we lose, frankly, Your Honor.

20      THE COURT:  If you lose, you are going to --

21      MR. GROVE:  That's correct.

22      THE COURT:  It doesn't matter what we do.

23      MR. GROVE:  I guess the thing is, Your Honor, the

24  defendant is entitled to a jury if we want to deprive him of

25  specific property that we allege is connected to the crime.

1        THE COURT:  If you want me to order restitution after a

2    jury has found him guilty, he is also entitled to the jury's

3    decision of guilt, which he got in part, which is -- it just

4    ratifies my experience of never having to do this after a guilty

5    verdict.  I have done it civilly, by the way, where people do

6    fight for money, but I'm not understanding.

7        You're going to ask in any event for a forfeiture,

8    even if the jury says no.

9        MR. GROVE:  That's correct, Your Honor.

10       THE COURT:  So if the jury says yes, you're going to do

11   the same thing as if the jury says no.

12       MR. GROVE:  It will be slightly different.

13       THE COURT:  Tell me what the difference is.

14       MR. GROVE:  Really all we're asking the jury to do is

15   to make a factual finding that there's a connection between his

16   crimes of conviction and property that we've seized.  If they

17   say there's no actual connection between the two, like for

18   instance that he didn't profit directly from his crimes by

19   virtue of ownership of these assets, we nonetheless can say,

20   well, he did profit from the crime, and we'll have to show

21   evidence of that, to the tune of this amount of money, but we

22   just couldn't find assets.

23       THE COURT:  What do you mean, you'll have to show

24   evidence?  Hasn't the Government proven some money?

25       MR. GROVE:  Yes, Your Honor.

1           THE COURT:  They have, right?

2           MR. GROVE:  What we would do is we'd just cite to the

3   trial record and probably Ms. Klitz's testimony, again, the

4   financial analyst, to talk about essentially the money that was

5   derived from claims submitted to Tricare.

6           THE COURT:  You've already done that.

7           MR. GROVE:  That's correct, Your Honor, but we would

8   just in a separate motion -- because it's really not for the

9   jury to determine that, in a separate motion to Your Honor we

10  would make a Motion for Entry of a Forfeiture Money Judgment in

11  that sum, and I imagine defense counsel would object, so there

12  would probably be some hearing prior --

13          THE COURT:  To do what?  What would the hearing be

14  about?

15          MR. GROVE:  The amount of money that the defendant

16  should be ordered to pay.

17          THE COURT:  But hasn't that been proven at the trial

18  already?

19          MR. GROVE:  The Government would argue it has, Your

20  Honor.  I imagine defense would object --

21          THE COURT:  Well, yeah, they're going to object and

22  appeal and they have every right to, but if the jury has already

23  made that finding, then where are we going, which is what I

24  asked and you said you don't understand what I meant, where are

25  we going.  Well, that's where we're going.  We're going nowhere

1   because it doesn't make any difference what we're doing.

2        That's kind of what the prosecutor has just said.

3        MR. RASHBAUM:  Not always, Your Honor.

4        THE COURT:  Pardon?

5        MR. RASHBAUM:  Not always, Your Honor.

6        THE COURT:  What do you mean?  That's what I'm asking,

7   where are we going?

8        MR. RASHBAUM:  So let's say the jury comes back and

9   says no forfeiture.

10       THE COURT:  Okay.

11       MR. RASHBAUM:  Let's just assume that hypothetically

12  and then there's a sentencing hearing in which the Government

13  says we want forfeiture of what the jury found no forfeiture on.

14  First of all, that might affect your decision on whether to give

15  forfeiture or not, and second of all, that might affect some of

16  our appellate issues with the Eleventh Circuit.

17       THE COURT:  What appellate issues?

18       MR. RASHBAUM:  Well, we're not going to get into all of

19  them.  On the forfeiture issue, there would be an appellate

20  issue on the forfeiture issue considering that the jury had

21  found that they were not proceeds of fraud.

22       THE COURT:  Obviously, if they do that.  However, isn't

23  there a right -- is restitution mandatory?

24       MR. RASHBAUM:  Restitution is --

25       THE COURT:  How about if I ask the Government?  They

1   come up with it more quickly.  Is restitution mandatory?

2            MR. JUENGER:  It is, Your Honor.

3            THE COURT:  Yes.  And the restitution should be in the

4   amount of the money, right?  The money happens to be $18.8

5   million, right?  So I'm going to order restitution, right?

6            MR. RASHBAUM:  I don't know what you're going to do.

7            THE COURT:  If it's mandatory, you better believe I'm

8   going to order restitution because, if not, the Eleventh Circuit

9   would reverse me on that.  So I'm going to order that the money

10  be paid back in any event, whether you label it forfeiture,

11  whether you label it restitution.  A rose by any other name is

12  still a rose, which is probably why I've never had this after a

13  guilty verdict.

14           MR. RASHBAUM:  Judge, it sometimes also goes to the

15  merits of the case and the sufficiency of the evidence of the

16  actual case.

17           THE COURT:  What goes to the --

18           MR. RASHBAUM:  Their ruling on forfeiture.

19           THE COURT:  You mean, if they find forfeiture it

20  weakens your sufficiency case, which is why you would want that.

21           MR. RASHBAUM:  I didn't say that.

22           THE COURT:  Well, what's the other alternative?

23           MR. RASHBAUM:  In the last case Mr. Marcus and I lost,

24  we lost the case and they didn't find forfeiture.  They didn't

25  take a penny -- did they take a penny?  Maybe a penny.

1          THE COURT:  And no restitution was ordered?

2          MR. RASHBAUM:  It hasn't been litigated yet.

3          THE COURT:  What do you mean?  He hasn't been sentenced

4  yet?

5      (There was a brief discussion off the record.)

6          MR. MARCUS:  The Government had a hard time finding

7  victims in that case that qualified.

8          THE COURT:  Well, who's the victim in this case?

9          MR. GROVE:  It would be Tricare, Your Honor.

10          THE COURT:  I have a feeling they will find it.

11          MR. MARCUS:  It depends on the counts that get

12  affirmed.  I understand.

13          THE COURT:  Well, no, the order is going to be made

14  before they're affirmed and then you can appeal.  I'm not going

15  to wait.  Did that judge wait before entering a final judgment?

16  You couldn't appeal if I don't enter a final judgment.

17          MR. MARCUS:  Well, so Counts 1 and 5, which we've been

18  talking about, you know, we obviously made our Rule 29 arguments

19  that we'll renew on the health care claims.  Whether those

20  counts remain at sentencing will factor into this equation.

21  Otherwise, they're just talking about the kickback counts where

22  they were convictions on.

23          THE COURT:  I know, but it's 18 million dollars' worth.

24          MR. MARCUS:  Well --

25          THE COURT:  I added them, I just added them.  While you

1 were sitting there, I took the calculator.  I could have added

2 wrong, but it's 18.8.

3          MR. JUENGER:  Can I add my two cents, Your Honor?

4          THE COURT:  Well, no, it's $18 million.  If it's two

5 cents, I probably wouldn't let you do it.

6          MR. JUENGER:  Because I've working --

7          THE COURT:  See, it doesn't really matter.  It doesn't

8 really matter.  So I always wonder why we spend so much time and

9 money on things that don't really matter.  I understand the

10 frustration when there's a mixed verdict on both sides.  You're

11 not happy either way, though I suspect the defendant is less

12 happy, which is normal.  All right.  But there's going to be an

13 order of restitution, absolutely, unless I throw everything out.

14 And I've already said that on the kickback there's really no

15 reason to unless I am convinced otherwise.  If not, I would have

16 granted judgment of acquittal on the fraud, the conspiracy, but

17 you've got the kickbacks which add up to $18 million in any

18 event.  I am going to order it.  Does he have it?  It's the $18

19 million that has been seized or where is the money?

20          MR. GROVE:  No, Your Honor.  We have seized I would

21 say, at most, approximately $2 million.

22          THE COURT:  Okay.  So where do we go from there?  See,

23 that's the whole thing.

24          I always wonder what are you fighting for, and I'm not

25 understanding what you're fighting for.

1          If you think a finding by the jury on forfeiture will

2    have an impact on the sufficiency of the evidence, I think

3    you're mistaken.  Plus, even if you're not, it's too big of a

4    gamble because then, if they find that it should be forfeited,

5    you're even worse off.

6          But I don't think the Court of Appeals and certainly I

7    won't say, well, they found -- they already have a mixed verdict

8    and he only has $2 million, though I assume maybe there's money

9    someplace.  Since $20 million was made there's got to be some

10   money someplace, which is why I find him a risk of flight.

11         So why are we going through with this?  You're entitled

12   to it, but since we've got time now at 2:30, and they have been

13   at it for almost two hours, the jurors, on this, what am I

14   missing?  Where are we going?

15         MR. MARCUS:  Well, Judge, we're not going to stipulate

16   to something, a legal finding or a factual finding.  That's one

17   issue, right?  Even today the verdict --

18         THE COURT:  And the reason you won't is because you

19   think you would lose your right to appeal.

20         MR. MARCUS:  We're not going to concede any findings on

21   the factual evidence in the case.

22         THE COURT:  Okay.  What do you think will be the most

23   important factor for me in any white-collar crime before I

24   sentence individuals?  What do you think is the most important

25   factor, one of the most important factors, considering 3553(a)

1    and all of that?  What do you think it is?  I mean, I have said

2    it so many times.

3              MR. RASHBAUM:  Prepayment of money.

4              THE COURT:  Pay back the money you stole, and you

5    probably have suffered through a few sentencings even during

6    this trial.  Pay back the money that was taken.

7              Now, someone says they're not guilty, I understand, but

8    I'm going to order it anyway, right?  I mean, what judge would

9    not order restitution when it's mandatory?  So it's going to be

10   ordered anyway.

11             MR. MARCUS:  Judge, we just had a verdict.  I mean,

12   even when you look at the kickback counts --

13             THE COURT:  I know you've had a verdict and it's

14   difficult.  The problem is, we are forcing the jury to decide

15   immediately after -- to show you how conscientious they are,

16   they have skipped lunch.  They thought they were going to go

17   home at 1:00 and they are still deliberating.  That shows you

18   what a great jury you all picked despite the outcome the way you

19   see it, which I understand.  I understand.

20             MR. MARCUS:  We think it's more significant, Your

21   Honor.

22             THE COURT:  You do.  All right.  I'm missing it.

23             MR. MARCUS:  Okay.  So on the kickbacks they found

24   nothing on payments.  They found only the receipt charges and

25   only receipt charges after he became a W-2 employee after April

1   of 2015.

2          So, again, that goes to the compensation, the monies he

3   received from the pharmacy.  I mean, that goes to that W-2, 1099

4   issue, but they found not guilty after he was converted by the

5   pharmacy to W-2.

6          THE COURT:  By what standard?

7          MR. MARCUS:  Well, you're asking me, right?

8          THE COURT:  Yes, I am.  By what standard did they make

9   that finding?

10         MR. MARCUS:  Well, they're supposed to make it beyond a

11  reasonable doubt.

12         THE COURT:  I know and that's what they did.  By what

13  standard do they decide forfeiture?

14         MR. RASHBAUM:  Preponderance.

15         MR. MARCUS:  It's a preponderance standard.

16         THE COURT:  Which is a lesser standard, right?  So you

17  could have those inconsistencies easily, but what difference

18  does it make?

19         What is he looking at as far as the sentence here

20  according to the guidelines, more or less?  I'm not binding you

21  to anything and, of course, I am not sentencing him today.  What

22  are we talking about?

23         MR. LARSEN:  Your Honor, we were originally looking at

24  life, 300 --

25         THE COURT:  Life.

1          MR. LARSEN:  Close to it, 360.  I mean, that was

2     originally when we were calculating the guidelines.

3          THE COURT:  And what about now?

4          MR. LARSEN:  Your Honor, I mean, I still think it's

5     significant.  I think it's north of 200, 240 months.

6          THE COURT:  Is that what you're going to ask for?

7          MR. LARSEN:  Your Honor, we're going to ask for a

8     sentence within the guidelines, yes.

9          THE COURT:  Whatever it is.

10         MR. LARSEN:  Well, I'd like to go back and consider it,

11    but, yeah, I believe it's appropriate.

12         THE COURT:  And what is the defendant going to ask for?

13    I know it's difficult.

14         MR. RASHBAUM:  Judge, we haven't even --

15         MR. MARCUS:  It's going to be contested.

16         THE COURT:  Of course, it's going to be contested.

17         MR. MARCUS:  The guidelines will certainly be

18    contested.  It depends a lot on what happens with Counts 1 and

19    5.

20         THE COURT:  Right now he's been found guilty.

21         MR. MARCUS:  Yes, right.  Those are two counts you

22    indicated you were leaning --

23         THE COURT:  Assume I agree with the jury, then what is

24    he looking at?

25         MR. RASHBAUM:  What is he looking at or what are we

1  going to ask for?

2        THE COURT:  No, we first start with what he's looking

3  at and then what you're going to ask for.

4        MR. RASHBAUM:  I mean, I think the Government will take

5  the position that he's looking at 240 months.

6        THE COURT:  And based upon what the jurors found, how

7  are the guidelines any different when the jurors have made the

8  finding based on the evidence as presented?

9        MR. RASHBAUM:  Okay.  So I'm not sure --

10        THE COURT:  Isn't that what it is?

11        MR. RASHBAUM:  Judge, I'm not sure what you're asking

12  us.  I mean, the bottom line is --

13        THE COURT:  I ask specific questions.  I say:  What are

14  you going to ask for?

15        MR. RASHBAUM:  Judge, we are not in a position to tell

16  you what we're asking for at this point.  We don't know.  We

17  haven't even looked at what he's been found guilty of and not

18  guilty of.

19        THE COURT:  I just gave you copies of the Verdict Form.

20        MR. RASHBAUM:  I understand, Your Honor.  We're not law

21  professors, so it takes us some time to look at things.

22        THE COURT:  Thank goodness, because law professors

23  would probably be the worst trial lawyers around.  There's no

24  question.  Do they make good judges?  I leave that up to the

25  President and the Senate, but sometimes they're just theorists

1   and we have to be practical.  But my focus was on what we are

2   doing now.

3        We're waiting for a jury to decide whether money that

4   has already been seized should be kept by the Government,

5   barring any third party.  Apparently, there's no third party,

6   all right, because the companies are owned by the defendant.

7        I would assume the defendant's most -- and I've said

8   this already because I say it in every case, not in front of the

9   jury of course, that the defendant's primary consideration is

10  how much time is he going to spend in prison.  I would think

11  that's the most important thing, versus a Porsche, for example.

12  All right.  Which is one of the counts in the money laundering.

13       So if the jury is spending hours on the Porsche, which

14  can be seized in any event through administrative proceedings, I

15  wonder why do we fight over the Porsche, even if you're

16  constitutionally entitled to the Porsche, when it's a lot more

17  important if he is going to get, as the Government suggests, 30

18  years to life.  I mean, that's what I'm not getting, but

19  apparently, I'm in left field, which sometimes I am and you'll

20  bring me home.

21       But it's always better, since we've got some time here

22  outside the presence of the jury -- and he's been convicted

23  already, not before -- of some practical considerations, but

24  I've been accused, I suspect, of being overly practical.

25       MR. RASHBAUM:  One is not exclusive of the other, Your

  1  Honor, so --

  2          THE COURT:  What is not exclusive of the other?

  3          MR. RASHBAUM:  So you're asking about freedom versus

  4  money.  We had a trial on freedom and we will have a Rule 29 on

  5  freedom and we will have --

  6          THE COURT:  I have already ruled on it.  You can renew

  7  it.  I've ruled.

  8          MR. RASHBAUM:  Okay.  And we will have a sentencing on

  9  freedom.

 10          THE COURT:  We will.  No, no, the sentencing will

 11  include money --

 12          MR. RASHBAUM:  I understand.

 13          THE COURT:  -- because I'm mandated to order

 14  restitution.

 15          I suspect the restitution order will be consistent with

 16  the jurors' finding in the Verdict Form by the counts.  So that

 17  will be the same $18 million that will be ordered whether it's

 18  through mandatory restitution or through forfeiture.  It's the

 19  same amount of money.  So the only distinction is -- do we have

 20  real estate?

 21          MR. GROVE:  There is, Your Honor.

 22          THE COURT:  Which one?

 23          MR. GROVE:  The one at 5803 Mariner Street.

 24          THE COURT:  Okay.  What is that?

 25          MR. GROVE:  That's a residence, Your Honor.

1            THE COURT:  Whose residence?

2            MR. GROVE:  The defendant's residence in Tampa.

3            THE COURT:  All right.  And then another item that's

4    not money is what?

5            MR. GROVE:  There are jet skis, Your Honor.

6            THE COURT:  The jet skis, I want to make sure, that's

7    important, right?  The jet skis and?

8            MR. GROVE:  And then there's also a Land Rover vehicle.

9            THE COURT:  The Land Rover, that's paid for, the

10   Porsche.

11           MR. GROVE:  The Porsche.

12           THE COURT:  That's what the fight is about.  Are you

13   entitled to fight it?  Of course, you're entitled.

14           MR. RASHBAUM:  Judge, I'm just trying to answer your

15   question.  If you want me to finish my answer, I can try to.  I

16   mean, I'm just trying to answer your question.

17           THE COURT:  What was my question?

18           MR. RASHBAUM:  Your question was comparing freedom to

19   these assets, and they are two separate issues.

20           THE COURT:  No question about it.

21           MR. RASHBAUM:  So --

22           THE COURT:  That's why we've got the same jury deciding

23   that separately.

24           MR. RASHBAUM:  Right.  So one has absolutely nothing to

25   do with the other.  I'm not even sure why we're conflating the

1  two.  Right?  Mr. Grow had a trial.  The jury found what it

2  found.

3          THE COURT:  The jury found him guilty of many counts.

4          MR. RASHBAUM:  And they found him not guilty of many

5  counts.

6          THE COURT:  You're right, but you know that in law in

7  Federal court, it doesn't make as much difference as people

8  think.

9          MR. RASHBAUM:  That may be, Your Honor.  Again, that

10  may be, or it may make a difference, right?  It may make a

11  difference.

12          THE COURT:  I don't know.

13          MR. RASHBAUM:  I don't know either, but that's

14  irrelevant to the question you are asking us.

15          THE COURT:  No, it's not irrelevant.

16          MR. RASHBAUM:  It is.  Judge, you asked --

17          THE COURT:  You can disagree.

18          MR. RASHBAUM:  Okay.  It wouldn't be the first time.

19          THE COURT:  We'll the fight over the Porsche and the

20  house.  If he is going to be sentenced to 30 years, it doesn't

21  really matter unless -- who else lives in the house?

22          MR. GROVE:  That I'm not aware of.

23          THE COURT:  Well, you'll find out if there's a third

24  party, but that will be separate, it won't have anything to do

25  with me, see.

1     MR. MARCUS:  We didn't bring these -- the Government

2  has asked for the findings of the jury.  I mean, you're asking

3  us either to stipulate to them or contest.  I mean, those are

4  the only two choices we have on the defense side.  These are not

5  our charges.

6     THE COURT:  You're right.  You're right.

7     MR. GROVE:  There is one other option that we sort of

8  explored, but I guess we didn't explain it very well, and that

9  is, defense can reserve the right to challenge forfeiture, but

10  yet nonetheless elect not to retain the jury for that purpose,

11  for the finding of fact, is there a connection between the asset

12  and the crime of conviction.  They could instead elect to have

13  that factual finding be made by the Court.

14     THE COURT:  But except for the property, the money is

15  going to be ordered by the Court in any event, folks, right?

16     MR. GROVE:  Right.

17     THE COURT:  So he would have to have -- $18 million is

18  going to be ordered in any event, or whatever the amount of

19  money is, I could have been wrong, because that's what the jury

20  found.  So it's really a fight over a house, a Land Rover, a

21  Porsche, and some jet skis, right?

22     MR. GROVE:  And some bank accounts, Your Honor.

23     THE COURT:  No, the bank accounts have money.

24     MR. GROVE:  That's correct.

25     THE COURT:  So if you order money, where does the money

1  come from to pay the restitution?

2      MR. GROVE:  It will come at least from those bank

3  accounts.

4      THE COURT:  So it doesn't matter, see, except for the

5  jet skis.  I can't believe -- are you entitled to a jury trial

6  on jet skis seized?  The answer is yes.  Does it make any sense

7  to fight over that?  It does if you are not fighting to avoid

8  what I'm told the guidelines are, if they are -- I don't know if

9  they are, but guidelines many times are driven by the amount of

10  money, of 30 years to life.

11      Now, you know, these are pyrrhic victories.  So you win

12  on the Porsche and the house and the Land Rover and you get

13  sentenced to 30 years, what does that mean, unless someone else

14  has it?

15      MR. RASHBAUM:  See, this is where we have the

16  disconnect.

17      THE COURT:  You obviously do, I agree with you.

18      MR. RASHBAUM:  We do.

19      THE COURT:  I agree with you that you have a

20  disconnect.

21      MR. RASHBAUM:  We do, unless what you're saying to us

22  is by fighting on the forfeiture and getting our constitutional

23  right, that you are somehow going to hold that against Mr. Grow

24  in his sentence.

25      THE COURT:  I would never hold it against a defendant

1   for that.

2           MR. RASHBAUM:  Okay, good.

3           THE COURT:  But it doesn't help him either.

4           MR. RASHBAUM:  But we --

5           THE COURT:  How does it help you?

6           MR. RASHBAUM:  With all due respect, we're his lawyers

7   and we think it may help him.

8           THE COURT:  All right.  All right.

9           MR. RASHBAUM:  So we're making a strategic decision,

10  which we are allowed to do as his lawyers, we're making a

11  strategic decision to use his constitutional rights to have this

12  jury decide in forfeiture because we believe that that may help

13  us down the road in something more than money.

14          THE COURT:  All right.  All right.  So if they say no

15  Porsche, the Eleventh Circuit will say judgment of acquittal

16  granted.  All right.  I don't think so but --

17          MR. RASHBAUM:  That's not what we're saying, Judge.

18          THE COURT:  But that is what you're what saying.

19          MR. RASHBAUM:  No, that's not what we're saying, but

20  maybe one day we'll see what happens.

21          THE COURT:  We will see what happens one day, though

22  you've selected such a deliberative jury, they take everything

23  seriously, so they will have to come back tomorrow to decide

24  this.  No question about that, and I have to decide when to let

25  them go so that the one juror can have his test.  Remember?

1   That's the problem.

2          We all have to think about the jurors who take their

3   time to be here.  We can't forget about them, and they're the

4   ones who make the decision.  One has already canceled a doctor's

5   appointment.  That doesn't affect their decisions and it doesn't

6   affect my decision.  I don't really care one way or another, I

7   really don't, but I always want to understand.

8          And since I've never had one in all these years, I

9   guess it's not unusual to ask:  Why is this the first time?  And

10  I still don't understand it, but the answer is, the lawyers have

11  decided it's strategically important and they have the right to

12  do that and I've given them the right to do that, as I would

13  under any circumstances.  I'm just wondering why no one else has

14  asked for it.

15         It's quarter to 3:00, so why don't we let the marshals

16  take care of the defendant and you all come back at 3:15.  We

17  have to figure out what to do, if I send food for the jurors or

18  not.  All right?  We will do that.  Give the court reporter a

19  bathroom break.

20     (There was a brief recess and the following proceedings were

21  held at 3:00 p.m.)

22         THE COURT:  We have a note from the jurors.  The note

23  is:  We have a verdict.  Let's see what they say.

24     (The jury entered the courtroom at 3:01 p.m.)

25         THE COURT:  Thank you, folks.  We have all the jurors.

1   The defendant is present, defense counsel, Government counsel.

2        Thank you very much.  Please be seated.  And thank you

3   for working through the lunch hour.  I appreciate it.  I was

4   thinking, and the lawyers were very cooperative, to say what are

5   we going to do with the jurors for lunch, and I know that one of

6   you has the test at 4:00.  So we were going to bring you back

7   tomorrow if we needed to because, as I mentioned repeatedly,

8   there's no rush.  And I couldn't tell you about the forfeiture

9   while you were discussing the other matters because it wasn't

10  appropriate.  So I hope you understand, okay, though you have a

11  verdict I understand.

12        JUROR PADRON:  Yes.

13        THE COURT:  Let me see it.

14        All right.  Madam Clerk, publish the verdict.  You can

15  start on Page 2.  Okay?

16        THE COURTROOM DEPUTY:  All right.

17        We, the jury, unanimously find by a preponderance of

18  the evidence and return the following Special Verdict as to the

19  specific property alleged to be subject to criminal forfeiture

20  in the above-styled criminal case.

21        Section I, health care offenses:

22        The following property constitutes or is derived

23  directly or indirectly from the gross proceeds traceable to the

24  commission of the health care offenses as indicated below:

25        1.  Money or funds in Account Number 229042044397 held

1  at Bank of America, N.A. in the name of MGTEN Marketing Group.

2  Count 1, no.  Count 9, no.

3       2.  Money or funds in the Account Number 898067684176

4  held at Bank of America, N.A. in the name of MGTEN Marketing

5  Group.  Count 1, yes.  Count 9, yes.

6       If yes, up to the following amount, $988,834 (US).

7       3.  Money or funds in Account Number 229019916597 held

8  at Bank of America, N.A. in the name of Monty Grow.  Count 1,

9  yes.  Count 9, yes.

10       If yes, up to the following amount of $1,680,922 (US).

11       4.  Money or funds in Account Number 869-914682 held at

12  TD Ameritrade in the name of Monty Ray Grow.  Count 1, no.

13  Count 9, no.

14       Section II, money laundering offenses:

15       The following property was involved in the money

16  laundering offenses as indicated below or is traceable to

17  property that was involved in the money laundering offense as

18  indicated below:

19       One 2014 Porsche 911, VIN Number WP0AB2A92ES120563,

20  Count 45, yes.

21       So say we all, dated February 5, 2018, foreperson's

22  signature and printed name, Kelly Padron.

23       THE COURT:  Is the verdict as read by the courtroom

24  deputy your verdict?  Anyone says no in the first row, in the

25  second row?

1        Thank you very much.

2        Remember, no one linked to the case will talk to you

3   about this case under the pain of contempt.  You are free to

4   discuss this case with whomever you want except individuals

5   related to the case.

6        All right.  Thank you.  Have a good afternoon.  Enjoy

7   your late lunch.  All right?

8        THE COURT SECURITY OFFICER:  All rise.

9     (The jury retired from the courtroom at 3:06 p.m.)

10       THE COURT:  All right.  Sentencing April 16, 2018.

11       What happens now with this forfeiture?  You take care

12  of it separately.  What do I have to do?

13       MR. GROVE:  Your Honor, I will submit or the Government

14  will submit a Motion for Preliminary Order of Forfeiture for the

15  specific property that the jury came back with the finding of a

16  nexus that is subject to forfeiture.

17       We're also going to move for a forfeiture money

18  judgment in an amount that is in total what was received as a

19  result of the two conspiracy counts for which the defendant was

20  found guilty.  That will be in excess of $19 million.  We're

21  then going to move, upon entry of that money judgment, for an

22  Order of Forfeiture of Substitute Property, that substitute

23  property being essentially the property that we can identify

24  which --

25       THE COURT:  But what do I do with that?  When are you

1  going to do that?

2          MR. GROVE:  Prior to sentencing, Your Honor.

3          THE COURT:  Everything is prior to sentencing.

4  Whatever motions you have to do, you've got to do everything

5  before, so it gets responded and replied, because sentencing is

6  going to occur on April 16, barring an act of God, some health

7  issue, or the Court of Appeals.

8          MR. GROVE:  Right, Your Honor.  And I assume that the

9  forfeiture money judgment or the motion will be opposed.

10  Certainly, we'll have a hearing.  I don't know if they'll be --

11          THE COURT:  And what would happen at that hearing from

12  the Government's perspective?

13          MR. GROVE:  Your Honor, we would either point to the

14  evidence in the record or --

15          THE COURT:  No, the evidence is already in the record.

16  So you can submit whatever you want in writing and link it to

17  the record.  We're not going to have any testimony.

18          MR. GROVE:  Okay, Your Honor.  Then that's what we'll

19  do.

20          THE COURT:  It's whatever it is, it is.

21          MR. GROVE:  Yes, Your Honor.

22          THE COURT:  What else is there?

23          MR. GROVE:  I believe that's it.  Once the forfeiture

24  money judgment is entered, this would be prior to sentencing,

25  then we would move for --

1           THE COURT:  Have a seat.  Usually the judgment is

2    entered at the time of sentence.

3           MR. GROVE:  That's correct, Your Honor.

4           THE COURT:  Not prior to sentence.

5           MR. GROVE:  But what Rule 32.2 requires is that we

6    submit any motion in advance of sentencing --

7           THE COURT:  Oh, yes.

8           MR. GROVE:  -- so that matters can be cleared up prior

9    to sentencing because, literally, the forfeiture has to be

10   announced as part of the defendant's sentence.

11          THE COURT:  Of course.

12          MR. GROVE:  So it has to be resolved.

13          THE COURT:  I've done plenty of those, obviously, but

14   you better do it way before.  What is the time limit?

15          MR. GROVE:  There is no time limit.

16          THE COURT:  Well, let's put one.

17          MR. GROVE:  Okay.  I was going to say, Your Honor, I

18   think the rule just states as soon as practical after the

19   verdict.

20          THE COURT:  Like beauty and music and everything else,

21   we all can disagree as to when that is.  We have already seen

22   that, which is normal, but everything has to be done before.

23          MR. GROVE:  Right.

24          THE COURT:  I don't want to come in on April 16th and

25   have -- we can have all the disputes you want, but I want to

1  know about them way before so we can all be prepared --

2          MR. GROVE:  Yes, Your Honor.

3          THE COURT:  -- to discuss both, the property and

4  freedom.

5          MR. GROVE:  Right.

6          THE COURT:  So when do you think is a good deadline for

7  you to submit -- what do you need to submit now?  You've got to

8  submit --

9          MR. GROVE:  A Motion for Preliminary Order of

10  Forfeiture for --

11          THE COURT:  Based on what the jurors have found.

12          MR. GROVE:  That's correct, Your Honor.

13          THE COURT:  Any objection to that?

14          MR. MARCUS:  Yes.

15          THE COURT:  Okay.  I'll overrule that.  And based upon

16  what the jury has done, a Preliminary Order of Forfeiture will

17  be granted as to the items that the jury has found.

18          What's next?

19          MR. GROVE:  Then, Your Honor, a Motion for Entry of a

20  Forfeiture Money Judgment in an amount which would be equal in

21  value to the sum total of the --

22          THE COURT:  You file that motion and you can do that.

23  That shouldn't take you too long.  All you've got to do is add,

24  right?

25          MR. GROVE:  That's correct, Your Honor.

 1              THE COURT:  How long does it take you to add?

 2              MR. GROVE:  The only thing that could cause delay is I

 3    would like to say --

 4              THE COURT:  Someone wants to talk to you behind you.

 5    You said it's much more complicated than what Moreno makes

 6    everything, I know.

 7              MR. GROVE:  No, actually -- basically, I would need the

 8    transcript to cite to the court record where the Court could

 9    find the testimony --

10              THE COURT:  Because your colleagues who have been here

11    cannot tell you?

12              MR. GROVE:  They certainly can, Your Honor.  I don't

13    know if you want me to cite directly to the record or not.  I

14    can sum up the testimony.

15              THE COURT:  They did that.

16              MR. GROVE:  Right.

17              THE COURT:  And you can sum it up.  See, this is what

18    I'm trying to get at:  We're not going to continue the

19    proceeding or hearing for you to order a transcript from the

20    court reporter unless you're going to order expedite because I

21    try a lot of cases, unfortunately or fortunately, depending on

22    your point of view.  There are a lot of appeals going on, which

23    is fine.  I certainly don't care about that.  I kind of like it,

24    so the Court of Appeals can decide whether we did things right

25    or whether the jury did it right or wrong.

1          But, see, that's what I'm getting at.  I'm not going to

2    wait for the transcript.  You tell me, based upon your

3    discussions with your colleagues, this is what we proved, this

4    is what was said, this is how it's linked --

5          MR. GROVE:  Right.

6          THE COURT:  -- unless there's some more evidence.

7          MR. GROVE:  No, Your Honor.

8          THE COURT:  If there's no evidence, it's whatever it

9    is.  That's what I do and that's how the sentencing is going to

10   be, too.  Even though relevant conduct is something that I can

11   always consider as a Federal judge, it's been my practice to

12   limit myself to whatever you presented at trial, even though I

13   could go beyond.  So I'm giving you a warning ahead of time,

14   we're sticking to what was presented here and to what was found

15   by the jurors.  That seems like the fair thing to do even though

16   I could go beyond.  All right?

17         That's why I am warning you ahead of time, so you won't

18   be calling the court reporter, oh, my God.  She's got to respond

19   to the Court of Appeals before she responds to you.  The

20   transcripts are usually prepared after there's a final judgment,

21   so you can appeal, or the defendant can appeal, or both of you

22   can appeal if you don't like -- that happens sometimes in

23   sentencing even in criminal cases, and it doesn't bother me in

24   the least.  All right?

25         MR. GROVE:  Absolutely.

1       THE COURT:  So we've got it.  So you say this is what

2   we proved:  We proved that this money from this account was

3   linked to this and then you do that and then the defense has to

4   react.  They don't have to prove anything.  They can react if

5   they want or not react.  It's up to them to decide whatever they

6   want, but you're the one who has to do that.  All right?

7       MR. GROVE:  Yes, Your Honor.

8       THE COURT:  So you're going to give me a deadline.

9       MR. GROVE:  Can I have two weeks, Your Honor?

10      THE COURT:  Sure, that's reasonable, because the

11  sentencing is not till April 16th.  So that means you will file

12  something by -- how about real Washington's birthday, February

13  22nd.  When does the defendant wish to respond to what the

14  Government will file?  I'm looking at three lawyers.  One

15  speaks.

16      MR. MARCUS:  How about the 9th, Your Honor.

17      THE COURT:  The 9th of March, is that what you want?

18  You didn't mean what you said or you picked the 9th thinking it

19  was the 9th of February?  No, I just want you to respond.  You

20  don't have to do anything except to respond to whatever you want

21  first.

22      MR. MARCUS:  I was saying one week, Your Honor, to

23  respond.

24      THE COURT:  If it's one week from the 22nd, it would be

25  March 1st.  We'll give you till March 2nd if that's what you

1    want.

2         Now, you're going to file a renewed Motion for Judgment

3    Notwithstanding the Verdict, right?

4         MR. MARCUS:  Yes.

5         THE COURT:  When are you going to file that?

6         MR. MARCUS:  I think it's the 25th or 26th, whatever

7    that Monday is, Your Honor, three weeks from today.

8         THE COURT:  Three weeks from today.  One, two, three,

9    so we'll give you -- you know what we're going to do in order to

10   make the deadlines easier, March 2nd at noon to file any

11   motions; the Renewed Motion for Judgment of Acquittal, Motion

12   for New Trial, or whatever you want to file.

13        So that means the Government can reply to the defense

14   response or regarding forfeiture or to the judgment of acquittal

15   by what date?

16        Mr. Larsen, you're going to do that?

17        MR. LARSEN:  Yes.

18        THE COURT:  When are you going on vacation again?

19        MR. LARSEN:  Well, I was going to go this week, but I

20   was going -- since it was going to be early March, around the

21   9th, 10th.

22        THE COURT:  That's when you're going?  You changed it?

23        MR. LARSEN:  No, no, Your Honor.

24        THE COURT:  You can do what you want.

25        MR. LARSEN:  If we were going to retry the case, I was

1    not going to go, but since the case isn't being retried, I would

2    like to go with my plans, but I'll be back by the 10th of March.

3            THE COURT:  So when do you want to respond to the

4    expected Motion for New Trial and the expected Renewed Motion

5    for Judgment of Acquittal Notwithstanding the Guilty Verdict,

6    the jury's guilty verdict?

7            MR. LARSEN:  Three weeks, Your Honor.

8            THE COURT:  Three weeks from then?  Now you guys are

9    starting to get into -- okay.  March 23rd.

10           MR. LARSEN:  Very good, Your Honor.

11           THE COURT:  When does the Government wish to respond on

12   the forfeiture thing that he's responding to, so you're

13   replying?

14           MR. GROVE:  So the reply, Your Honor, seven days after

15   the response is due, which I believe is March 7th -- or excuse

16   me -- March 2nd.

17           THE COURT:  So March 9th, right?

18           MR. GROVE:  Yes, Your Honor.

19           THE COURT:  We've got all the dates, no extensions.

20   Since you've picked your own dates, you live with your own

21   dates.  Okay?  And that means you do everything in order for the

22   Presentence Investigation Report so we can proceed on April

23   16th.

24           Anything else from the Government?

25           MR. LARSEN:  Nothing from the Government.

1          THE COURT:  From the defense?

2          MR. MARCUS:  Just the reply for our new trial and

3   motions, their response we're going to receive on the 23rd of

4   March.  Could we have the week?  Is that --

5          THE COURT:  No, that's too long.  You know what they're

6   going to say, that the evidence is sufficient.  You've all

7   argued everything.  I have even given you some cases that go

8   both ways.  You can find some more and then tell me what it is.

9   The 28th of March.  Okay?

10         There was something else.

11         You all are going to get the exhibits back and, under

12  the Chief Judge's order and pursuant to Eleventh Circuit

13  dictate, all exhibits have to be filed by you electronically so

14  that the Court of Appeals can look at it.  All right?  So you're

15  going to sit there and wait, you're going to get your exhibits

16  back.  As officers of the Court, you'll file them and that will

17  be it.  Okay?

18         Anything from either side?  Government.

19         MR. LARSEN:  Your Honor, just to make sure I

20  understand, when do we have to have them filed by, by noon?

21         THE COURT:  I think it has to be filed -- I don't know

22  what the order says.

23         MR. LARSEN:  Your Honor --

24         THE COURT:  Kind of immediately.

25         MR. LARSEN:  Well, I did speak with my paralegal last

1   week, and she mentioned that given the number of documents that

2   need to be redacted because there was a lot of PII --

3           THE COURT:  A lot of what?

4           MR. LARSEN:  Personal identifiable information that we

5   need to redact out, so we would ask for --

6           THE COURT:  Why didn't you do that before?

7           MR. LARSEN:  Your Honor, it was just brought to my

8   attention Friday -- Thursday, Friday of last week.

9           THE COURT:  It's got to be done.

10          MR. LARSEN:  Yes.

11          THE COURT:  It's got to be done.  That's what the Court

12  of Appeals wants, so you've got to do it.  There's a Chief

13  Judge's order when you have to do it, but that's what you all

14  have to do in every case.  I think we talked about this, or I

15  certainly talked about it, saying I don't like it.  I prefer

16  just getting the exhibits that you think are important on both

17  sides so that you look at them, but the Court of Appeals wants

18  everything.  They want everything.  They're the bosses.  They

19  get everything they want.  So just follow the local rule.

20          MR. LARSEN:  Okay.

21          THE COURT:  The new administrative order.  It's a new

22  administrative order.  You all should know about it because most

23  of the time, it's exhibits filed by the Government.  Usually the

24  defense doesn't have exhibits.  Okay?

25          And the defense, you've got to file your exhibits,

1   follow the administrative order, too.  Okay?

2           Anything else?  All right.

3           MR. MARCUS:  No, Your Honor.

4           THE COURT:  See you in April.

5       (The trial concluded at 3:20 p.m.:)

6

7                 C E R T I F I C A T E

8       I hereby certify that the foregoing is an accurate

9   transcription of proceedings in the above-entitled matter.

10

11  __09-10-18_____          _____
          DATE                  GILDA PASTOR-HERNANDEZ, RPR, FPR
12                              Official United States Court Reporter
                                Wilkie D. Ferguson Jr. U.S. Courthouse
13                              400 North Miami Avenue, Suite 13-3
                                Miami, Florida  33128    305.523.5118
14                              gphofficialreporter@gmail.com

15

16

17

18

19

20

21

22

23

24

25

**A**

able 35:24
about 4:13 5:18 9:4,12,12 10:25
  11:10,17,19,2 2 13:6,24 22:13
  22:14 23:25 24:5 25:9 26:11
  26:12 28:16 29:8 41:21 45:4
  45:14 46:25 48:18,21 52:22
  53:3 56:3 57:12,20 61:24 62:2
  62:3 63:8 65:3 68:1 69:23
  71:12,16 75:14,15,22
above-entitled 76:9
above-styled 63:20
absolutely 49:13 57:24 70:25
accept 23:8
accepted 10:23
access 28:25
accommodated 13:8,9
according 42:21 52:20
account 28:23 29:1,2,3,4,6,7,8,9
  29:12,14,16,21,22,22,23,25
  30:2,6,10,10,12,20,22,23,24
  31:2 33:10,12,1 3 63:25 64:3,7
  64:11 71:2
accounts 31:7 32:11 33:5 42:3
  42:18 59:22,23 60:3
accurate 76:8
accused 55:24
acquittal 9:15 11:23 49:16 61:15
  72:11,14 73:5
acquittals 10:23
acquitted 10:18,21 12:12,13
  23:6 33:11 34:6 39:10
act 66:6
acted 8:16
activity 31:13
actual 44:17 47:16
actually 12:20 13:2 24:23 27:15
  28:3 29:10 30:7 34:2 36:23
  69:7
add 49:3,17 68:23 69:1
added 48:25,25 49:1
additional 35:20
adequately 11:14
adjudicate 23:9
administrative 55:14 75:21,22
  76:1
admitted 28:5
advance 67:6
advice 9:20
affect 46:14,15 62:5,6
affirmative 9:7
affirmed 48:12,14
after 5:24 7:23 9:15 10:15 14:13
  15:5,7 44:1,4 47:12 51:15,25
  51:25 52:4 67:18 70:20 73:14
afternoon 5:3 6:23 7:2 22:22
  65:6
afterwards 8:9
again 5:13 29:23,24 30:10 31:1
  45:3 52:2 58:9 72:18
against 60:23,25
agent 42:20
agree 11:2 16:18 36:12 53:23
  60:17,19
agreed 40:7
agrees 38:10,12
ahead 6:17 10:2 26:25 40:18
  70:13,17
allegation 29:4
allegations 35:22
allege 43:25
alleged 27:16 35:7 63:19
alleging 29:9
allowed 35:16 61:10
almost 4:25 6:16 10:15 13:22
  50:13
along 36:23
already 13:21 14:2 27:16 28:4
  29:15 31:19 35:20 36:2,7 45:6

45:18,22 49:14 50:7 55:4,8,23
  56:6 62:4 66:15 67:21
alternative 47:22
Although 11:5,6
always 6:17 10:4 12:25 22:19
  41:6 42:1 46:3,5 49:8,24
  55:21 62:7 70:11
America 1:4 10:9 15:21 28:23
  29:23 33:10,12,1 3 64:1,4,8
Ameritrade 30:24 64:12
amount 30:5,21 31:4 36:17
  43:13 44:21 45:15 47:4 56:19
  59:18 60:9 64:6,10 65:18
  68:20
analyst 28:21 45:4
analyzed 36:7
ancillary 42:13
Angelica 21:4
Ann 21:6
Announce 26:18
announced 25:18 67:10
another 4:8 8:13 10:7,21 22:3
  25:13,17 35:2 40:15 57:3 62:6
answer 20:23 57:14,15,16 60:6
  62:10
Anti-Kickback 8:18,22 9:8,9
anybody 5:25 14:4 38:24
Anyone 64:24
anything 5:17,18,18,1 9 8:9
  13:15 34:11 41:3 43:2 52:21
  58:24 71:4,20 73:24 74:18
  76:2
anyway 5:12 51:8,10
apparently 55:5,19
appeal 10:1 45:22 48:14,16
  50:19 70:21,21,22
appeals 8:14 10:12 50:6 66:7
  69:22,24 70:19 74:14 75:12
  75:17
appearance 25:18 26:19
APPEARANCES 1:12
appellate 46:16,17,19
applied 36:12
apply 37:14
appointment 4:7 6:18 7:13
  25:14 40:11 62:5
appreciate 63:3
appreciation 22:6
appropriate 53:11 63:10
approved 8:19
approving 8:16
approximately 26:3 29:10 30:12
  49:21
April 23:10 51:25 65:10 66:6
  67:24 71:11 73:22 76:4
argue 32:23 45:19
argued 74:7
argument 3:4,5 24:8 25:11,13
  27:6 41:20
arguments 27:7 35:21 48:18
around 13:21 38:21 40:13 54:23
  72:20
arrange 16:20,23
arrangements 8:23
articles 22:24 42:22
ascertainable 37:4
asked 13:15 22:1 41:2 45:24
  58:16 59:2 62:14
asking 24:19 27:13 29:14 31:24
  32:11 44:14 46:6 52:7 54:11
  54:16 56:3 58:14 59:2
asset 31:15,17 36:13 59:11
assets 26:14 27:20 33:1 42:2,8
  44:19,22 57:19
Assistant 25:19 27:10
assume 46:11 50:8 53:23 55:7
  66:8
attempting 29:2
attendance 22:7

attention 75:8
Attorney 25:20 27:10
Attorney's 1:14,15
AUSA 1:13,13,14
Avenue 2:6 76:13
avoid 60:7
aware 58:22
A.D 16:10
a.m 4:1 5:1

**B**

B 16:22
back 5:19 15:6,12 22:16 25:4,24
  37:22,23 38:14 42:8 46:8
  47:10 51:4,6 53:10 62:13
  62:16 63:6 65:15 73:2 74:11
  74:16
badge 22:8
bank 29:2,3,22,22,2 2 30:2,10,23
  31:2,7 32:11 33:4,10,12,12,13
  42:3,18 59:22,23 60:2 64:1,4
  64:8
barring 55:5 66:6
base 37:12
based 29:14 31:18 42:10 54:6,8
  68:11,15 70:2
basic 11:19
basically 37:20 29:14,21,25 30:4
  31:12 69:7
bathroom 62:19
beautiful 12:17
beauty 67:20
became 13:3 51:25
becoming 5:22
before 1:10 5:3 7:14 12:16 26:12
  27:12 32:9 33:21,22 36:10
  42:13 48:14,15 50:23 55:23
  66:5 67:14,22 68:1 70:19 75:6
behind 69:4
Behrens 10:21
being 4:4 9:4 32:15 40:9 55:24
  65:23 73:1
beings 23:25
believe 27:16 29:9 30:5 42:23
  47:7 53:11 60:5 61:12 66:23
  73:15
belongings 23:17
below 63:24 64:16,18
belt 23:16
beneficiary 16:2,4,6,8,10,12,14
Berezin 21:4,5
Berny 21:12
best 12:21
better 47:7 55:21 67:14
between 8:23 11:20 27:20 30:2
  31:16 44:15,17 59:11
beyond 30:17 52:10 70:13,16
bias 37:13
big 41:17 50:3
binding 52:20
birthday 71:12
Biscayne 1:21 2:2
bit 6:9,17 8:1 10:4 15:13 38:21
blank 30:3
blindness 11:17
block 12:14
Bodden 21:14,15
bona 9:5,10
bonuses 11:21
boring 12:20
bosses 75:18
both 9:2 10:25 40:6,8 49:10 68:3
  70:21 74:8 75:16
bother 6:6 70:23
bottom 13:1 54:12
Boulevard 1:21 2:2
Bowl 12:17
box 30:1
break 13:7 62:19

brief 14:13 32:6 39:2 40:5,19
  48:5 62:20
briefly 28:17
Brill 8:11
bring 4:7,9,21 14:19 25:1 26:4
  27:13,25 55:20 59:1 63:6
brought 75:7
buddies 13:4
bunch 13:4
business 33:1,2
Butch 8:11
B.V 16:8

**C**

C 16:25 76:7,7
cafeteria 40:20
calculating 53:2
calculator 39:17 49:1
call 20:23
called 29:5 36:15
calling 70:18
came 33:10,13 65:15
canceled 62:4
capacity 22:19
care 8:17,24 10:3,4 11:2 16:1,3,5
  16:7,9,11,13,1 6 17:2,4,7,10
  17:13,16,19,22,2 5 18:3,6,9,12
  18:15,18,21,24 19:2,5,8,11,14
  19:17,20,23 20:1,4,7 28:23
  29:18 32:13,15 36:2 48:19
  62:6,16 63:21,24 65:11 69:23
carefully 15:8 22:4
case 1:3 4:2,12 8:12,13,13 9:3,3
  9:11,16,18,20,2 2 10:7,8 11:3
  11:18 12:3 13:11,23 15:20
  21:25 22:4,9,12,13,14 27:12
  31:15 32:7,24 34:23 38:23
  40:14 42:5 47:15,16,20,23,24
  48:7,8 50:21 55:8 63:20 65:2
  65:3,4,5 72:25 73:1 75:14
cases 8:5,7,25 11:5,20,21 34:24
  69:21 70:23 74:7
cash 11:20
cause 69:2
cents 49:3,5
certain 27:15,20 35:4,8,16
certainly 43:15 50:6 53:17 66:10
  69:12,23 75:15
Certificate 3:6
certificates 22:7
certify 76:8
challenge 59:9
change 37:17
changed 40:11 72:22
charge 10:17 34:21 40:7
charged 35:5,9
charges 51:24,25 59:5
chart 28:9 29:13,23 30:11
check 15:14 30:1
chief 8:15 74:12 75:12
choices 59:4
Chris 8:10
circled 15:14
Circuit 8:8 9:13,23 46:16 47:8
  61:15 74:12
circumstances 62:13
cite 11:5 45:2 69:8,13
cited 8:5
civilly 44:5
claim 16:2,4,6,8,10,12,1 4 26:13
  36:18 42:6
claims 11:4 29:7 32:15,17,18,19
  41:18 45:5 48:19
Clay 10:9,22
clean 6:8
cleaning 6:9
cleared 67:8
Clerk 15:18 63:14
Close 53:1

closing 3:4,5 25:11 27:7 41:19
    41:25
coat 24:3
coffee 6:5
colleagues 69:10 70:3
come 4:11 5:19 6:7,12 25:4,23
    37:23 47:1 60:1,2 61:23 62:16
    67:24
comes 42:8 46:8
coming 5:24
commission 36:2 63:24
commissions 36:24
commission-based 8:20,23
commit 29:18
committing 35:8
companies 55:6
comparing 57:18
compensation 52:2
complete 34:24
complicated 69:5
compliment 22:20
comprised 32:15
concealed 32:25
concede 50:20
concerning 37:7
concluded 76:5
conduct 37:1 70:10
confirm 4:6,10 5:20
conflating 57:25
confusing 39:11
connected 29:16 30:13 43:25
connection 17:4,7,10,13,16,19
    17:22,25 18:3,6,9,12,15,18,21
    18:24 19:2,5,8,11,14,17,20,23
    20:1,4,7 27:20,22 30:2 31:16
    44:15,17 59:11
conscientious 51:15
consider 35:2,19,23 38:1 53:10
    70:11
consideration 36:20 37:4,10
    55:9
considerations 37:15 55:23
considering 37:10 46:20 50:25
consistent 30:20 31:1,23,25 40:9
    56:15
conspiracy 9:12 10:17 15:24
    16:15,17 29:18,18,20 49:16
    65:19
constitutes 35:25 63:22
constitutional 60:22 61:11
constitutionally 55:16
contempt 22:12 65:3
contention 36:18
CONTENTS 3:1
contest 24:16 59:3
contested 53:15,16,18
continue 15:12 37:14 69:18
control 5:23
converted 52:4
convicted 10:20 29:16 32:22
    55:22
conviction 8:18 10:12 44:16
    59:12
convictions 48:22
convinced 49:15
cooperative 63:4
copies 22:25 38:19,23,23,25 40:1
    40:6 54:19
copy 35:21 37:19 40:15
corporate 42:19
correct 38:11 41:22 42:7 43:21
    44:9 45:7 59:24 67:3 68:12,25
Cotto 21:20
counsel 4:3,3 5:6,6 14:15,16,24
    14:24 25:19 26:21 39:3,4
    45:11 63:1,1
counselor 7:13
counsel's 9:19
count 10:17 12:3 15:14,24 16:1

16:3,5,7,9,11,13,15 17:3,6,9
    17:12,15,18,21,24 18:2,5,8,11
    18:14,17,20,23 19:1,4,7,10,13
    19:16,19,22,2 5 20:3,6,9,11,13
    20:15,17 22:3 29:20 31:12,15
    32:22 33:9,12 40:7 64:2,2,5,5
    64:8,9,12,13,20
counts 10:11,18,19 23:4,7 26:10
    29:17,18 31:4 34:22,23 33:8
    34:5 35:9 39:10 43:12 48:11
    48:17,20,21 51:12,15,18,21
    55:12 56:16 58:3,5 65:19
couple 8:7 32:13 37:17
course 8:13 9:17 12:12 22:13
    37:4 52:21 53:16 55:9 57:13
    67:11
court 1:1 2:5 4:2,19,21,24 5:2
    6:20,22 7:1,5,10,14,16,20,22
    7:25 8:13 9:10 10:12 11:8
    12:7,20,23 14:7,9,12,15,20,21
    14:23 15:3,3,17,19 20:21
    21:24 22:23,24 23:3,20 24:1,2
    24:8,13,17 25:17,21,23 26:2,4
    26:5,7,21,23,24 27:2,5 28:4,7
    28:10,14,16 31:9 32:2,4 33:16
    33:25 34:4,8,18,22 37:25 38:2
    38:5,7,12,14 39:3,22,24 40:6
    40:20,25 41:10,13,16,23 42:5
    42:15,21,25 43:4,7,10,18,20
    43:22 44:1,10,13,23 45:1,6,13
    45:17,21 46:4,6,10,17,22,25
    47:3,7,17,19,2 2 48:1,3,8,10
    48:13,23,25 49:4,7,22 50:6,18
    50:22 51:4,13,22 52:6,8,12,16
    52:25 53:3,6,9,12,16,20,23
    54:2,6,10,13,19,2 2 56:2,6,10
    56:13,22,24 57:1,3,6,9,12,17
    57:20,22 58:3,6,7,12,15,17,19
    58:23 59:6,13,14,15,17,23,25
    60:4,17,19,25 61:3,5,8,14,18
    61:21 62:18,22,25 63:13
    64:23 65:8,10,25 66:3,7,11,15
    66:20,22 67:1,4,7,11,13,16,20
    67:24 68:3,6,11,13,15,22 69:1
    69:4,8,8,10,15,17,20,24 70:6
    70:8,18,19 71:1,8,10,17,24
    72:5,8,18,22,24 73:3,8,17,17
    73:19 74:1,5,14,16,21,24 75:3
    75:6,9,11,11,17,2 1 76:4,12
Courthouse 2:6 76:12
courtroom 1:5 4:23 5:1 7:23
    12:6 14:22 15:4,19 20:22 21:2
    21:4,6,8,10,12,14,16,18 ,20,22
    22:25 23:2 26:6 62:24 63:16
    64:23 65:9
Court's 9:23
credibility 37:11
credit 22:3
crime 27:14,25 31:5,5,17,20
    43:25 44:20 50:23 59:12
crimes 1:15 27:18,21 29:16 30:2
    30:13 31:3,14 35:5 44:16,18
criminal 35:17 63:19,20 70:23
criminalized 8:23
cue 6:12
culture 13:1
custody 23:14
cut 39:7

D
D 2:6 76:12
DANIEL 1:20
Daren 1:14 25:20 27:9
daren.grove@usdoj.gov 1:19
Darn 23:19
date 72:15 76:11
dated 20:19 64:21
dates 73:19,20,21
daughter's 6:19

day 4:12,12,13 7:17 14:10 61:20
    61:21
days 5:8 73:14
day-to-day 6:14
deadline 68:6 71:8
deadlines 72:10
deal 41:17
deals 10:10
decide 7:18 8:5 24:22 35:3,13,18
    37:23 38:18 51:14 52:13 55:3
    61:12,23,24 69:24 71:5
decided 62:11
decides 43:10
deciding 43:8 57:22
decision 5:16 9:15 38:20 44:3
    46:14 61:9,11 62:4,6
decisions 5:15 62:5
defendant 1:8,20 4:2 5:5 8:3,15
    8:20 9:6 10:17,20 11:3 14:15
    14:23 15:21,23 24:10,19 25:7
    25:21 27:15,17,22,24 29:17
    30:13 32:17 34:18 35:3,8,12
    36:4,10 39:3,10 42:23,25
    43:24 45:15 49:11 53:12 55:6
    60:25 62:16 63:1 65:19 70:21
    71:13
defendants 10:18,22
defendant's 8:18 9:7 11:6,7
    30:25 37:9 55:7,9 57:2 67:10
defense 4:3,19 5:5 8:5 9:7 14:7
    14:15,24 24:15 32:2 33:18,20
    34:6 38:5,12 39:3,22 40:22
    41:8 45:11,20 59:4,9 63:1
    71:3 72:13 74:1 75:24,25
deference 10:1
defraud 11:13,14 15:24
delay 69:2
deleted 34:16 39:9
deliberate 11:11,13 37:12
deliberating 32:7 37:7 51:17
deliberations 13:13 15:12 22:1,2
    24:23 35:23 40:10
deliberative 40:10 61:22
denied 8:2,4
depending 69:1
depends 48:11 53:18
deprive 43:24
deprived 35:15
deputy 4:23 12:6 15:4,19 20:22
    21:2,4,6,8,10,12,14,16,18,20
    21:22 22:25 63:16 64:24
derived 31:5 35:25 36:19 45:5
    63:22
descended 36:21
describe 27:21
Description 3:13
desk 25:2
despite 51:18
destroy 22:17
determination 9:24 37:8
determine 26:14 45:9
developed 36:20
development 37:5
dictate 5:15 74:13
Diego 21:8
difference 11:19 44:13 46:1
    52:17 58:7,10,11
different 9:22 13:5 32:8 44:12
    54:7
difficult 37:2 51:14 53:13
Dineiska 21:22
direct 33:9
directly 36:1 44:18 63:23 69:13
disagree 58:17 67:21
disclosed 35:7
disconnect 60:16,20
discuss 65:4 68:3
discussed 30:7 33:17,21 35:7
    36:8

discussing 63:9
discussion 40:5 48:5
discussions 70:3
dismissed 32:22 33:9
disputes 67:25
distinction 56:19
distinctions 9:17 12:1
distinguishing 22:3
District 1:1,1,10 9:14,23 11:8
    15:19,20
divested 35:15
DIVISION 1:2
doctor 24:25 25:6,6,14 39:16
doctor's 4:7 40:11 62:4
documents 75:1
dog 10:5
doing 13:22 14:10 43:4 46:1
    55:2
dollars 48:23
done 14:10 23:18 24:18,21,24
    32:24,25 34:25 37:24 38:24
    44:5 45:6 67:13,22 68:16 75:9
    75:11
doubt 30:17 36:15 52:11
down 12:8 61:13
downtown 12:22
drags 12:25
drashbaum@mnrlawfirm.com
    1:24
driven 60:9
dropped 13:16
due 61:6 73:15
during 13:7 28:20 30:7 35:23
    51:5
duty 37:11,12

E
E 1:20 76:7,7
each 6:10 24:17 26:15 34:13
    40:7
early 25:9 72:20
earned 33:1
ease 38:25
easier 38:22 72:10
easily 52:17
eaten 41:16
Economic 1:15
effect 27:25
eight 32:14
either 5:14 10:6 13:10 24:13
    41:16 49:11 58:13 59:3 61:3
    66:13 74:18
elect 59:10,12
electronically 74:13
Eleventh 8:7 9:13,23 46:16 47:8
    61:15 74:12
employed 8:22
employee 9:6,11 51:25
encouraged 13:2
end 7:16 8:3
ending 29:12 33:10,12
ends 33:14
enjoy 42:13 65:6
enough 30:6 36:17
enter 48:16
entered 5:1 14:22 26:6 28:20
    37:20 42:11 62:24 66:24 67:2
entering 48:15
entities 42:19
entitled 10:1 43:24 44:2 50:11
    55:16 57:13,13 60:5
entry 45:10 65:21 68:19
envelope 6:11
equal 68:20
equation 48:20
ESQ 1:20,20 2:1
essentially 27:13,23,25 28:19,21
    28:22,24 29:3 45:4 65:23
estate 56:20

**even** 4:15 9:11,17 10:7 11:18
41:13 43:19 44:8 50:3,5,17
51:5,12 53:14 54:17 55:15
57:25 70:10,12,15,23 74:7
**event** 8:8 12:2 41:17 44:7 47:10
49:18 55:14 59:15,18
**ever** 12:18,21,24
**every** 14:10 15:9 45:22 55:8
75:14
**everybody** 5:2,4
**everyone** 12:24
**everything** 5:7 33:3 41:20 49:13
61:22 66:3,4 67:20,22 69:6
73:21 74:7 75:18,18,19
**evidence** 3:12 8:14,19 9:4,24
22:4,17 25:11 27:16 28:24
29:4,13,15 30:1,5,14,15,16,16
30:18 31:2,19,25 35:19,20
36:16,16,17 37:11,13 44:21
44:24 47:15 50:2,21 54:8
63:18 66:14,15 70:6,8 74:6
**examiner** 28:20
**example** 55:11
**except** 59:14 60:4 65:4 71:20
**excess** 65:20
**exchange** 16:19 22:8
**exclusive** 55:25 56:2
**excuse** 73:15
**executive** 9:7
**exhibit** 28:9,13,14 29:11,24
30:22
**exhibits** 3:11,12 28:2,4,19 33:4
74:11,13,15 75:16,23,24,25
**expect** 23:13
**expected** 73:4,4
**expedite** 69:20
**expense** 10:19,20
**experience** 44:4
**explain** 59:8
**explained** 39:14
**explored** 59:8
**extensions** 73:19
**extra** 7:1 38:23

**F**

**F** 76:7
**facilitate** 36:25 37:1
**fact** 11:4,10 29:15 31:19 33:6
34:24 59:11
**factor** 48:20 50:23,25
**factors** 9:11 50:25
**facts** 5:15
**factual** 44:15 50:16,21 59:13
**fair** 70:15
**faith** 9:19
**false** 11:4,10 32:17,19
**falsity** 11:7
**familiar** 10:8 11:21
**family** 22:9 23:15
**far** 52:19
**fault** 24:22,24 26:10 35:1,1 41:8
**Fax** 1:17,23
**Febres** 21:20,21
**February** 1:7 64:21 71:12,19
**Federal** 17:2,4,7,10,13,16,19,22
17:25 18:3,6,9,12,15,18,21,24
19:2,5,8,11,14,17,20,2 3 20:1
20:4,7 58:7 70:11
**FEDERICO** 1:10
**feeling** 48:10
**fees** 36:24
**Ferguson** 2:6 76:12
**few** 26:15 38:25 51:5
**fide** 9:5,10
**field** 55:19
**fight** 10:5 44:6 55:15 57:12,13
58:19 59:20 60:7
**fighting** 49:24,25 60:7,22
**figure** 30:7 62:17

**file** 8:9 43:16 68:22 71:11,14
72:2,5,10,12 74:16 75:25
**filed** 22:18 74:13,20,21 75:24
**final** 39:1 48:15,16 70:20
**financial** 8:15 28:20 45:4
**find** 7:15 12:11 13:1 15:23 27:22
30:19 31:1 32:10,16,17 35:24
36:5,10 42:1 43:1,6,8 44:22
47:19,24 48:10 50:4,10 58:23
63:17 69:9 74:8
**finding** 8:15 9:5 27:19 30:20
31:18 35:12 44:15 45:23 48:6
50:1,16,16 52:9 54:8 56:16
59:11,13 65:15
**findings** 30:17 50:20 59:2
**fine** 34:7 69:23
**finish** 40:14 57:15
**first** 6:1 10:11 13:25 28:8 29:1
32:14,17 34:25 38:8 46:14
54:2 58:18 62:9 64:24 71:21
**five** 7:8 41:8 13:16,20,24 26:1
**fixed** 24:7
**flight** 50:10
**Florida** 1:1,6,16,22 2:3,7 15:20
76:13
**flow** 28:22
**focus** 55:1
**folks** 26:7 59:15 62:25
**follow** 75:19 76:1
**followed** 37:4
**following** 4:1 7:24 14:14 62:20
63:18,22 64:6,10,15
**food** 41:7 62:17
**forcing** 51:14
**foregoing** 76:8
**foreperson** 20:19
**foreperson's** 64:21
**forfeit** 27:23 29:2 35:4,15 36:10
**forfeited** 35:14,19,25 36:6,8
42:18 43:11 50:4
**forfeiting** 36:13
**forfeiture** 23:19 24:10,20,22
25:1,4 26:13,13,16 27:3 32:10
32:11 33:8 35:22 36:14 37:7
39:8,12 40:14 41:18 42:3,8,9
43:1,6,9,16,1 8 44:7 45:10
46:9,13,13,15,19,2 0 47:10,18
47:19,24 50:1 52:13 56:18
59:9 60:22 61:12 63:8,19
65:11,14,16,17,2 2 66:9,23
67:9 68:10,16,20 72:14 73:12
**forget** 62:3
**forgot** 23:19,21,22,2 5 24:5 26:9
26:10 35:1
**Form** 6:5,10 15:22 25:14 26:17
29:12 30:4 33:16,19 34:10
37:17,20,22 38:8,15 39:1,6,13
40:7,15 54:19 56:16
**formed** 36:20
**Forms** 38:20 40:1
**forth** 42:20
**fortunately** 69:21
**found** 8:14 23:3,7 27:14,21
29:19 30:13,21 31:3,11,12,14
31:21 43:11 44:2 46:13,21
50:7 51:23,24 52:4 53:20 54:6
54:17 58:1,2,3,4 59:20 65:20
68:11,17 70:14
**four** 32:22
**Fourth** 1:16
**FPR** 2:5 76:11
**frankly** 43:19
**fraud** 10:10 11:3 16:1,3,5,7,9,11
16:13 29:19,19 43:12 46:21
49:16
**fraudulent** 11:10 32:18
**free** 37:2 65:3
**freedom** 42:1 56:3,4,5,9 57:18
68:4

**Friday** 5:12 75:8,8
**friends** 23:15
**friendship** 22:9
**from** 4:6,17,19 5:12 6:2,3,13
7:23 8:6,7,12 9:22 14:17 22:3
23:2,6 24:15 27:18 28:22,25
29:13,13,23,2 4 30:23 31:5,5
31:14 33:1,4,10,12,13,20
34:15,15,18 35:8,21 36:1,19
36:21 37:2,5 38:3,5 39:7,22
44:18,20 45:5 49:22 52:3 60:1
60:2 62:22 63:23 65:9 66:11
69:19 71:2,24 72:7,8 73:8,24
73:25 74:1,18
**front** 55:8
**frustration** 49:10
**funds** 29:5 63:25 64:3,7,11
**furnishing** 16:20 17:1
**F.3d** 8:6,12 9:23

**G**

**G** 21:19
**gamble** 50:4
**Garcia** 21:12,13
**gave** 39:6,13,15 54:19
**generated** 32:20
**gentlemen** 20:22 21:24 26:22
27:8
**Gerald** 21:18
**German** 21:16
**gets** 66:5
**getting** 55:18 60:22 70:1 75:16
**gifted** 7:13
**GILDA** 2:5 76:11
**give** 11:18 15:3,4,5,5 22:7,16
23:16 26:15,17 28:7 31:25
35:21 37:17,19,2 1 38:15,19
38:22,23,23 39:24 40:2,18
42:5,11 46:14 62:18 71:8,25
72:9
**given** 37:10 38:3 40:6 62:12 74:7
75:1
**giving** 41:7 70:13
**go** 12:11,12,13,15,18,2 5 15:12
23:20 24:25 25:5,5 26:4,25
27:6 37:23 38:14 40:18 49:22
51:16 53:10 61:25 70:13,16
72:19 73:1,2 74:7
**God** 66:6 70:18
**goes** 10:12 47:14,17 52:2,3
**going** 4:7,8,16 5:7,10,10 6:16
10:3,3 12:10,14,14 13:7,10,14
13:19 15:4,5,5,6,8,9 22:6
23:14,20 24:8,25 25:3,3,10
26:16 27:4,19,21,2 4 30:4,17
32:6 37:16,19,19,2 1 38:14
39:16 41:1,17,24 42:25 43:13
43:20 44:7,10 45:21,23,25,25
45:25 46:7,18 47:5,6,8,9
48:13,14 49:12,18 50:11,14
50:15,20 51:8,9,16 53:6,7,12
53:15,16 54:1,3,14 55:10,17
58:20 59:15,18 60:23 63:5,6
65:17,21 66:1,6,17 67:17
69:18,20,22 70:1,9 71:8 72:2
72:5,9,16,18,19,20,20,22,25
73:1 74:3,6,11,15,15
**golf** 12:15 13:3
**golfing** 13:4
**gone** 38:7
**good** 5:2,3 9:19 22:22 54:24 61:2
65:6 68:6 73:10
**goodness** 54:22
**Government** 1:13 4:3,17 5:6
11:5,6,18 14:5,16,24 16:18
25:15,20 26:14,18 27:11
32:10 33:18 34:15,15,16 38:3
38:10 39:4 41:10 43:13,15
44:24 45:19 46:12,25 48:6

54:4 55:4,17 59:1 63:1 65:13
71:14 72:13 73:11,24,25
74:18 75:23
**Government's** 26:2 28:9,12
gphofficialreporter@gmail.com
2:7 76:14
**granted** 49:16 61:16 68:17
**granting** 9:14,16
**great** 22:20 36:15 51:18
**greater** 36:16
**gross** 29:5,7 36:1 63:23
**Group** 64:1,5
**Grove** 1:14 3:4 24:6,15 25:19,20
26:3,21 27:1,4,8,9 28:6,8,12
28:15,18 31:10 32:3 34:2,5,17
38:4,11 39:20 41:22 42:2,7,17
42:22 43:15,19,21,23 44:9,12
44:14,25 45:2,7,15,19 48:9
49:20 56:21,23,25 57:2,5,8,11
58:22 59:7,16,22,24 60:2
65:13 66:2,8,13,18,21,23 67:3
67:5,8,12,15,17,2 3 68:2,5,9
68:12,19,25 69:2,7,12,16 70:5
70:7,25 71:7,9 73:14,18
**Grow** 1:7 4:2 15:21,24 23:3 30:9
30:23 33:6,11 35:3 58:1 60:23
64:8,12
**Grow's** 32:12
**guess** 43:23 59:8 62:9
**guidelines** 23:13 52:20 53:2,8,17
54:7 60:8,9
**guilt** 9:25 37:9 44:3
**guilty** 15:25 16:2,4,6,8,10,12,14
16:16,17 17:5,8,11,14,17,20
17:23 18:1,4,7,10,13,16,19,22
18:25 19:3,6,9,12,15,18,21,24
20:2,5,8,10,12,14,16,1 8 23:3
23:7,9 27:15,22 29:19 30:14
31:3,11,14 35:12 36:4 43:11
44:2,4 47:13 51:7 52:4 53:20
54:17,18 58:3,4 65:20 73:5,6
**guys** 73:8

**H**

**half** 5:21,22,23
**hand** 33:18
**handled** 33:5
**hang** 13:21 38:21 40:13
**happen** 10:3,4 13:10,20 15:7
41:17 66:11
**happened** 13:25
**happens** 13:17,23 47:4 53:18
61:20,21 65:11 70:22
**happy** 49:11,12
**harbor** 9:8
**hard** 48:6
**harm** 24:24
**hate** 10:3 13:21 41:6
**having** 23:3,7 44:4
**health** 8:17,23 11:2 16:1,3,5,7,9
16:11,13,16 17:2,4,7,10,13,16
17:19,22,25 18:3,6,9,12,15,18
18:21,24 19:2,5,8,11,14,17,20
19:23 20:1,4,7 29:18 32:13,15
36:2 48:19 63:21,24 66:6
**hear** 26:24
**heard** 14:1 29:8 31:19 35:20,20
**hearing** 45:12,13 46:12 66:10,11
69:19
**held** 4:1 7:24 14:14 62:21 63:25
64:4,7,11
**help** 61:3,5,7,12
**helpful** 9:18 11:16 37:21
**her** 6:24 7:5,7,8,8,12,1 6 15:6,8
15:10 30:7 40:11
**hiding** 33:1
**high** 23:13
**highlight** 28:3

**him** 29:19 31:3,11,14 33:20
  43:24 44:2 50:10 52:21 58:3,4
  61:3,7
**hinderance** 37:2
**history** 10:13
**hold** 23:22 60:23,25
**home** 5:17 13:25,25 51:17 55:20
**Honor** 4:20 24:6,11 25:16,19,22
  26:1,3 28:6,8,12,15,18 31:10
  32:3,5 33:24 34:6,17 38:4,11
  39:20,21 40:4,24 41:22 42:2,7
  42:13 43:6,15,19,23 44:9,25
  45:7,9,20 46:3,5 47:2 48:9
  49:3,20 51:21 52:23 53:4,7
  54:20 56:1,21,25 57:5 58:9
  59:22 65:13 66:2,8,13,18,21
  67:3,17 68:2,12,19,25 69:12
  70:7 71:7,9,16,2,2 72:7,23
  73:7,10,14,1 8 74:19,23 75:7
  76:3
**HONORABLE** 1:10
**hope** 63:10
**hour** 4:23 63:3
**hours** 50:13 55:13
**house** 32:12 58:20,21 59:20
  60:12
**Hull** 8:7 9:13 10:10
**human** 23:25
**hung** 13:11
**hungry** 41:11,12
**Hurtado** 21:8,9
**hypothetically** 46:11

**I**

**identical** 8:13
**identifiable** 75:4
**Identification** 3:12
**identify** 65:23
**II** 64:14
**imagine** 41:11 45:11,20
**immediately** 51:15 74:24
**impact** 50:2
**important** 7:2 42:1 50:23,24,25
  55:11,17 57:7 62:11 75:16
**imposing** 41:6
**include** 38:8 56:11
**includes** 36:22
**inconsistencies** 52:17
**indeed** 15:10
**indicated** 12:4 39:7 53:22 63:24
  64:16,18
**Indictment** 15:24 16:1,3,5,7,9
  16:11,13,15 17:3,6,9,12,15,18
  17:21,24 18:2,5,8,11,14,17,20
  18:23 19:1,4,7,10,13,16,19,22
  19:25 20:3,6,9,11,13,15,17
  35:6,6,11,22,2,4 39:8,12
**indifference** 11:12,13,20
**indirectly** 36:1 63:23
**individual** 9:5 17:1 30:9
**individuals** 16:20 50:24 65:4
**induce** 16:22,25
**information** 75:4
**initials** 15:15
**inquire** 22:10,12
**instance** 44:18
**instead** 59:12
**instruct** 30:15
**instructed** 9:10 11:9
**instruction** 11:17 34:9 39:9
**instructions** 5:18 6:6,11 14:1,4
  25:13 26:17 33:17,19 37:9
  38:2 39:1,13
**Instruments** 12:18
**insufficient** 9:25
**intent** 11:12,14
**intentionally** 26:12
**interesting** 10:10
**introduced** 9:24

**Investigation** 23:10,18 73:22
**involved** 23:13 31:20 36:6,9,22
  64:15,17
**involving** 10:18,19
**irrelevant** 58:14,15
**irrespective** 29:6
**IRS** 33:7
**issue** 9:25 25:10 37:7 46:19,20
  46:20 50:17 52:4 66:7
**issues** 5:20,25 6:15,15 46:16,17
  57:19
**item** 17:1 57:3
**items** 43:1,6,11 68:17

**J**

**J** 1:13 21:3
**James** 21:2
**jammed** 40:16
**Jansel** 21:20
**Jeff** 8:11
**JEFFREY** 1:20
**jet** 57:5,6,7 59:21 60:5,6
  **jmarcus@mnrlawfirm.com**
  1:24
**Jon** 1:13 27:10
**Jones** 21:2,3,18,19
**Jr** 2:6 76:12
**judge** 1:10 8:7 9:13,14 10:9
  23:24 30:15 47:14 48:15
  50:15 51:8,11 53:14 54:11,15
  57:14 58:16 61:17 70:11
**judges** 54:24
**Judge's** 74:12 75:13
**judgment** 8:2 11:23 43:17 45:10
  48:15,16 49:16 61:15 65:18
  65:21 66:9,24 67:1 68:20
  70:20 72:2,11,14 73:5
**JUENGER** 1:13 25:16 40:4 47:2
  49:3,6
**June** 19:2,5,8
**juror** 4:8 22:8 25:14 39:16 40:10
  40:12 61:25 63:12
**jurors** 4:22 8:1 13:9 14:19,23
  23:21 25:3,8,23 26:4,19 38:3
  38:7,24 40:9 41:1 50:13 54:6
  54:7 56:16 62:2,17,22,25 63:5
  68:11 70:15
**jury** 1:9 4:6,14,15 5:1 6:5,10
  7:22,23 8:4 9:10 10:15,17,20
  11:9 12:2 13:11 14:17,22 15:8
  15:23 20:19,21,23 21:24
  22:20 23:2,3,7 24:12 26:6,22
  29:11 33:17 34:21,23,24 38:1
  38:2 39:13,16 40:22 41:4,6
  42:7 43:6,8,10,2 44 44:2,8,10
  44:11,14 45:9,22 46:8,13,20
  50:1 51:14,18 53:23 55:3,9,13
  55:22 57:22 58:1,3 59:2,10,19
  60:5 61:12,22 62:24 63:17
  65:9,15 68:16,17 69:25
**jury's** 8:14 9:5,15,25 42:10 44:2
  73:6
**just** 4:6 5:2,17,20 7:2 11:16 13:3
  13:21,23,25 20:24 29:5,7,11
  31:24 33:20 37:18 38:17,22
  38:25 41:7 44:3,22 45:2,8
  46:2,11 48:21,25 51:11 54:19
  54:25 57:14,16 62:13 67:18
  71:19 74:2,19 75:7,16,19
**J.B** 16:6
**J.F** 16:12

**K**

**Kale** 10:22
  **kate@ kmeyerslaw.com** 2:4
**Kathryn** 2:1,1
**keep** 13:13 14:10 22:16,17 32:6
**Kelly** 14:18 20:20 21:6 64:22

**Kenny** 23:20
**kept** 55:4
**Kevin** 1:13 27:10
  **kevin.larsen@usdoj.gov** 1:18
**kickback** 48:21 49:14 51:12
**kickbacks** 16:16,19,22,2,5 17:3,6
  17:9,12,15,18,21,2 4 18:2,5,8
  18:11,14,17,20,2 3 19:1,4,7,10
  19:13,16,19,22,2 5 20:3,6
  29:20 43:12 49:17 51:23
**kind** 5:11,21 6:16 11:25 13:5
  31:20 46:2 69:23 74:24
**Klitz** 28:21 30:7
**Klitz's** 30:11 45:3
**knew** 8:20 12:8
**know** 5:7 6:15,17 9:2 10:2,2,25
  11:24,24,24 12:20 13:10,17
  13:19,20 23:15,19 24:8 25:7
  25:12 26:19 28:24 32:6 36:2,3
  41:3,6,19 42:15 47:6 48:18,23
  51:13 52:12 53:13 54:16 58:6
  58:12,13 60:8,11 63:5 66:10
  68:1 69:6,13 72:9 74:5,21
  75:22
**knowledge** 11:7,7,15 32:20
**known** 11:4 42:12
**knows** 11:11
**K.P** 15:15

**L**

**L** 1:20
**label** 47:10,11
**ladies** 20:22 21:24 26:22 27:8
**Land** 57:8,9 59:20 60:12
**Larsen** 1:13 4:18 12:14,19,22
  14:6 41:11,15 52:23 53:1,4,7
  53:10 72:16,17,19,23,2 5 73:7
  73:10,25 74:19,23,2 5 75:4,7
  75:24 75:25 75:8
**lasting** 10:15
**late** 39:17 65:7
**laundered** 36:23
**launderer** 36:24
**laundering** 20:9,11,13,15,17
  31:11 32:21,23,25 33:11 36:5
  36:6,9,22,2,5 38:9 55:12 64:14
  64:16
**law** 2:1 5:15 8:2 9:21 10:1,25
  35:16 54:20,22 58:6
**lawyer** 25:17
**lawyers** 9:20 35:1,21 54:23 61:6
  61:10 62:10 63:4 71:14
**leaning** 53:22
**least** 5:12 11:25 31:6 60:2 70:24
**leave** 4:10 6:8 41:1 41:5 54:24
**lectern** 26:24 27:2,5
**lecterns** 41:24
**left** 55:19
**legal** 50:16
**LEGOLAND** 13:7
**legs** 4:25
**Leisy** 21:10
**length** 21:25
**less** 26:1 37:1,2 49:11 52:20
**lesser** 52:16
**let** 24:25 26:7 33:25,25 34:11
  39:18 40:11 49:5 61:24 62:15
  63:13
**let's** 4:11 26:4 27:6 46:8,11
  42:13 67:16
**life** 27:13 32:1 52:24,25 55:18
  60:10
**like** 5:11 13:22 27:10 34:11
  39:18 44:17 53:10 67:20 69:3
  69:23 70:15,22 73:2 75:15
**likely** 30:18,19 31:2 36:18
**limit** 67:14,15 70:12

**limitation** 5:22
**line** 3:13,13 54:12
**link** 66:16
**linked** 22:9,15 65:2 70:4 71:3
**Lisa** 28:21
**listed** 9:11
**listen** 15:8
**literally** 67:9
**litigated** 48:2
**little** 6:8,17 7:1 8:1 10:4 12:23
  15:13 38:21
**live** 73:20
**lives** 58:21
**LLP** 1:21
**local** 75:19
**long** 5:14 7:18 8:24,25 9:1 10:24
  13:14 22:14 23:20 24:23
  25:25 26:2 32:7 38:16,21
  68:23 69:1 74:5
**longest** 13:12
**look** 8:8 15:5 29:11 42:22 51:12
  54:21 74:14 75:17
**looked** 54:17
**looking** 52:19,23 53:24,25 54:2
  54:5 71:14
**lose** 43:19,20 50:19
**lost** 47:23,24
**lot** 53:18 55:16 69:21,22 75:2,3
**loud** 15:6,7
**loved** 13:3 23:15
**lunch** 4:9 5:10 41:2,14,16 51:16
  63:3,5 65:7

**M**

**M** 1:13
**machine** 40:16
**Madam** 15:18 63:14
**made** 11:13 22:25 24:20 45:23
  48:13,18 50:9 54:7 59:13
**main** 8:5
**make** 13:19 24:8 27:5,19 30:16
  30:20 31:18 44:15 45:10 46:1
  52:8,10,18 54:24 57:6 58:7,10
  58:10 60:6 62:4 72:10 74:19
**makes** 11:11,12 23:24 37:1 69:5
**making** 61:9,10
**mandated** 56:13
**mandatory** 46:23 47:1,7 51:9
  56:18
**many** 51:2 58:3,4 60:9
**March** 12:4,5,6,6,9,9,9 71:17,25
  71:25 72:10,20 73:2,9,15,16
  73:17 74:4,9
**Marcus** 1:20,21 3:5 24:11 25:22
  26:1 32:4,5 33:24 34:20 38:6
  38:13 39:21,23 40:3 47:23
  48:6,11,17,2,4 50:15,20 51:11
  51:20,23 52:7,10,15 53:15,17
  53:21 59:1 68:14 71:16,22
  72:4,6 74:2 76:3
**Mariner** 32:12 56:23
**Marked** 3:12
**marketing** 33:2 64:1,4
**marshals** 38:20 62:15
**material** 11:10
**matter** 8:2 24:4,14 27:12 35:2
  43:22 49:7,8,9 58:21 60:4
  76:9
**matters** 25:8 63:9 67:8
**maximum** 5:13
**may** 9:3 13:6 26:18,21 43:6 58:9
  58:10,10,10 61:7,12
**maybe** 8:1 47:25 50:8 61:20
**mean** 7:2,17 10:23 12:16 38:16
  41:24,25 42:17 43:3 44:23
  46:6 47:19 48:3 51:1,8,11
  52:3 53:1,4 54:4,12 55:18
  57:16 59:2,3 60:13 71:18
**meaning** 27:14,25

means 15:9 29:5 36:16,17,19
  37:3 71:11 72:13 73:21
meant 45:24
medication 16:21,23
Medina 8:5,6 11:1
Members 34:23
Meneses 21:10,11
mention 39:10
mentioned 41:19 63:7 75:1
Merida 21:16,17
merits 47:15
meticulously 5:8
Meyers 2:1,1
MG 33:11
MGTEN 29:2,3,22 42:19,24
  64:1,4
Miami 1:2,6,16,22 2:3,6,7 76:13
  76:13
microphone 26:23 34:12
microphones 41:23
might 46:14,15
million 29:10,10,13,2 4 30:19,24
  31:6 33:6 43:12 47:5 48:23
  49:4,17,19,2 1 50:8,9 56:17
  59:17 65:20
mine 39:18
minimum 5:13
minutes 8:1 13:24 26:1,15 38:25
Miranda 9:22,22
missing 50:14 51:22
mistake 23:22,24 24:20
mistaken 50:3
mixed 10:16,24 12:10 13:11
  49:10 50:7
Monday 72:7
money 20:9,11,13,15,1 7 23:13
  28:22 29:6 31:4,11,13 32:21
  32:23 33:1,11 35:4,8,13,18
  36:5,6,9,19,22,2 3 38:9 40:8
  42:1 43:17 44:6,21,24 45:4,10
  45:15 47:4,4,9 49:9,19 50:8
  50:10 51:3,4,6 55:3,12 56:4
  56:11,19 57:4 59:14,19,23,25
  59:25 60:10 61:13 63:25 64:3
  64:7,11,14,15,1 7 65:17,21
  66:9,24 68:20 71:2
monies 32:16 33:9,13 52:2
months 10:15 53:5 54:5
Monty 1:7 15:21,23 30:9,23
  35:3 64:8,12
more 4:13 8:1,12 10:7,8 11:8,24
  13:16,16,16 30:18,19 31:2,12
  31:15 36:18 37:2 42:1 47:1
  51:20 52:20 55:16 61:13 69:5
  70:6 74:8
Moreno 1:10 69:5
morning 4:10,14 5:2,25 6:12,13
  7:8,10 23:11 25:4
most 34:24 49:21 50:22,24,25
  55:7,11 75:22
motion 8:2 11:23 42:9 43:16
  45:8,9,10 65:14 66:9 67:6
  68:9,19,22 72:2,11,11 73:4,4
motions 9:19 66:4 72:11 74:3
move 65:17,21 66:25
much 6:8 11:25 30:16 32:8 49:8
  55:10 58:7 63:2 65:1 69:5
museum 12:18 13:5
museums 12:21,25
music 67:20
Musical 12:18
must 11:3,6 26:14 35:2,3,13
  36:10,11,20 37:4,8
myself 70:12
M.E 16:14

—— N ——
name 15:9 20:20,23 27:9 30:25
  47:11 64:1,4,8,12,22

nature 8:20 13:8 23:12
nearly 33:6
necessary 8:9 13:15
necessity 37:14
need 4:24 5:9 6:12 13:1,23 14:2
  14:4 24:11 30:16 41:13 68:7
  69:7 75:2,5
needed 39:16 63:7
needs 25:5 41:5
Neiman 1:21
neither 25:1
never 23:24 24:21 44:4 47:12
  60:25 62:8
new 9:16,18 72:12 73:4 74:2
  75:21,21
newspapers 22:24
next 28:11,12 29:22 30:9 37:23
  68:18
nexus 65:16
nine 10:11
Nobody 7:20
none 32:24
nonetheless 44:19 59:10
noon 72:10 74:20
normal 7:9 49:12 67:22
north 2:6 53:5 76:13
Northeast 1:16
note 14:17 39:5 62:22,22
notebooks 22:17
notes 13:16
nothing 4:5,5 13:24 51:24 57:24
  73:25
notice 39:9 42:5,11,17,18
Notwithstanding 72:3 73:5
nowhere 45:25
number 1:3 12:2 15:20 26:10
  28:8 29:12 30:10 32:11 63:25
  64:3,7,11,19 75:1
numbers 28:7
N.A 64:1,4,8

—— O ——
object 16:17 45:11,20,21
objection 33:24 34:3 39:19,20
  68:13
objections 33:20,21,23 34:9,14
  34:15,18 38:2
obstruction 37:2
obtained 31:14
obviously 5:13 7:6 13:12 31:21
  32:8 43:3 46:22 48:18 60:17
  67:13
occupation 22:10
occur 66:6
off 12:14 13:16 40:5 48:5 50:5
offense 27:15 31:11 36:2,7,22,25
  37:1 64:17
offenses 23:12 29:21 32:16 35:9
  35:13,17 36:3,9 38:10 63:21
  63:24 64:14,16
Offer 16:22,25
Office 1:14,15 2:1
officer 7:22 8:15 14:12,20 15:4
  22:23 24:1 26:5 37:25 65:8
officers 23:21 74:16
Official 5:2 76:12
oh 7:10 23:19 67:7 70:18
okay 4:21 5:4,24 6:22,24 7:5,20
  7:25 14:10 15:13 22:22 23:1
  24:2,18 25:21 26:18 28:14
  31:6 34:22 38:7 39:24 43:10
  46:10 49:22 50:22 51:23 54:9
  56:8,24 58:18 61:6 63:10,15
  66:18 67:17 68:15 73:9,21
  74:9,17 75:20,24 76:1
old 7:3
once 42:10 66:23
one 4:13,23 6:7,16,20 8:5,10
  10:20,21 11:8 12:2,19,21

13:14 15:9,11,14,14 4 22:3,9,11
  22:15 24:25 25:5 26:9,10
  28:11,12 32:8,22 40:10,16
  41:5,23 50:16,25 55:12,25
  56:22,23 57:24 75:17 76:2
  61:25 62:4,6,8,13 63:5 64:19
  65:2 67:16 71:6,14,22,24 72:8
ones 23:15 62:4
only 38:9 42:23 50:8 51:24,25
  56:19 59:4 69:2
open 33:4 40:21
opinion 8:24 9:1 10:9
opponent 34:10
opportunity 27:9
opposed 66:9
opposing 26:21
option 59:7
orally 39:13
order 5:10 23:9 42:9,10 44:1
  47:5,8,9 48:13 49:13,18 51:8
  51:9 56:13,15 59:25 65:14,22
  68:9,16 69:19,20 72:9 73:21
  74:12,22 75:13,21,22 76:1
ordered 45:16 48:1 51:10 56:17
  59:15,18
Organization 42:23
organize 25:8
original 36:21 37:6
originally 52:23 53:2
other 8:7 10:19,22,23 14:1 22:15
  24:17 26:9,11 28:14 32:21
  34:13 40:12 47:11,22 55:25
  56:2 57:25 59:7 63:9
otherwise 26:25 48:21 49:15
out 4:8,9,15,21 7:15 15:6,7
  28:11 29:6 34:11 36:21 39:7
  49:13 58:23 62:17 75:5
outcome 51:18
outing 13:3
outside 12:23 23:20,21 55:22
over 24:23 27:1 33:19 55:15
  58:19 59:20 60:7
overhead 29:1
overly 55:24
overrule 68:15
own 5:11 6:10 73:20,20
owned 55:6
owner 8:17,21 42:24
owners 8:21
ownership 35:15 44:19
owns 42:21

—— P ——
Padron 6:18,21,24 7:4,7,12,15
  7:19 14:18 15:1,2,16 20:20
  21:6,7 63:12 64:22
page 3:2,13,13 11:25 38:9 63:15
pages 12:1 38:8 39:8
paid 17:2 33:6 36:24 47:10 57:9
pain 22:12 65:3
paper 6:21 22:17
papers 6:6,22 7:14 13:16 25:1,1
paralegal 74:25
Pardon 43:7 46:4
part 35:5,16 43:3 44:3 67:10
particular 9:16 21:25 31:15
  36:13
particularly 33:8
parties 8:24 42:12,16
party 55:5,5 58:24
PASTOR-HERNANDEZ 2:5
  76:11
patient 15:13 28:23
pay 16:15,22,25 27:14 28:1
  29:20 45:16 51:4,6 60:1
payment 19:10,13,16,19,22,25
  20:3,6
payments 8:17,20,21 51:24
Pedro 21:14

penalty 35:5
penny 47:25,25,25
people 10:5 44:5 58:7
period 12:10 24:23
person 16:20,22,5 17:1
Personal 75:4
personally 41:11
perspective 66:12
persuade 36:17
pharmacy 8:16,22 9:6 33:3 52:3
  52:5
pharmacy's 8:16,21
Phoenix 12:15,23
phone 39:15 40:11
phones 22:16
phrase 27:14,25
pick 6:24 7:16
picked 51:18 71:18 73:20
PII 75:2
place 12:17
Plaintiff 1:5
planners 6:16
plans 73:2
please 4:5 14:19,24 15:18 20:21
  20:23 26:8,21 33:25 34:1 39:5
  39:17 63:2
plenty 67:13
PLLC 2:1
Plus 50:3
point 10:24 54:16 66:13 69:22
poll 15:8 20:21
Porsche 31:10,16,19,2 1 38:9
  55:11,13,15,1 6 57:10,11
  58:19 59:21 60:12 61:15
  64:19
portion 35:6 39:12 40:14
position 54:5,15
possibility 11:22
possible 32:9
potential 32:21 42:15
potentially 42:12
practical 55:1,23,24 67:18
practice 70:11
precluding 9:7
prefer 75:15
prejudice 37:13
Preliminary 42:9 65:14 68:9,16
prepared 25:10 33:17 34:14,16
  41:7 68:1 70:20
Prepayment 51:3
preponderance 30:18 36:15
  52:14,15 63:17
prescription 16:21,23
presence 55:22
present 4:3 5:5 14:15,24 25:11
  39:3 63:1
presentation 25:25
presented 54:8 70:12,14
Presentence 23:9,18 73:22
President 54:25
pretty 8:3 32:8
previous 37:8
previously 35:7 37:10
primary 55:9
printed 20:20 64:22
prior 45:12 66:2,3,24 67:4,8
prison 55:10
probably 5:9 9:2 10:7 11:21
  23:15 27:17 28:23 41:5 42:16
  45:3,12 47:12 49:5 51:5 54:23
problem 4:14 51:14 62:1
problems 4:12,17 5:24
procedural 10:13
proceed 12:3 24:10,20 25:15,22
  26:18 73:22
proceeding 42:13 69:19
proceedings 1:9 4:1 7:24 14:14
  55:14 62:20 76:9
proceeds 29:5,7,24 31:13,22

32:19 36:1 46:21 63:23
**professors** 54:21,22
**profit** 44:18,20
**profited** 27:17
**program** 17:2,4,7,10,13,16,19
17:22,25 18:3,6,9,12,15,18,21
18:24 19:2,5,8,11,14,17,20,23
20:1,4,7
**progress** 37:5
**prohibited** 37:1
**proof** 36:14
**properly** 11:8
**property** 27:23 32:16 35:4,8,14
35:18,25 36:6,8,9,11,20,23,24
36:25 37:3 43:25 44:16 59:14
63:19,22 64:15,17 65:15,22
65:23,23 68:3
**proposed** 33:16,19
**prosecution** 9:9
**prosecutor** 46:2
**prove** 11:6 71:4
**proved** 70:3 71:2,2
**proven** 11:7 16:18 44:24 45:17
**proves** 30:14
**provide** 31:25 32:11 41:1
**provider** 8:17,21
**providers** 8:24
**provisions** 9:8 39:8
**Pryor** 9:13
**publish** 15:18 42:11 63:14
**pull** 28:10
**punishment** 35:16
**purchase** 16:23
**purchased** 31:21
**purpose** 59:10
**pursuant** 74:12
**put** 6:6 24:3 30:5,21 67:16
**pyrrhic** 60:11
**p.m** 7:23 14:13,14,22 23:2 26:6
38:1 62:21,24 65:9 76:5
**P.S** 16:2

### Q

**qualified** 48:7
**quantum** 30:16
**quarter** 62:15
**question** 25:13 39:15,15 40:23
43:5 54:24 57:15,16,17,18,20
58:14 61:24
**questions** 22:1 54:13
**quickly** 38:18 47:1
**quit** 41:1
**quotes** 10:25

### R

**R** 76:7
**Rashbaum** 1:20,21 4:20 14:8
40:23 41:9,19 43:2,5,8 46:3,5
46:8,11,18,24 47:6,14,18,21
47:23 48:2 51:3 52:14 53:14
53:25 54:4,9,11,15,20 55:25
56:3,8,12 57:14,18,21,24 58:4
58:9,13,16,18 60:15,18,21
61:2,4,6,9,17,19
**ratifies** 44:4
**Ray** 1:7 15:21,23 64:12
**reach** 5:14 10:16,21 12:2
**reached** 5:16 14:25 22:2,10
37:18
**react** 71:4,4,5
**read** 5:18 9:3 11:22 15:6,10
20:24 39:9 64:23
**reads** 15:7
**ready** 25:15,22
**real** 56:20 71:12
**really** 44:14 45:8 49:7,8,9,14
58:21 59:20 62:6,7
**reason** 15:11 49:15 50:18
**reasonable** 30:17 36:15 52:11

71:10
**reasons** 12:2 22:10
**recall** 28:19
**receipt** 17:3,6,9,12,15,18,21,24
18:2,5,8,11,14,17,20,23 19:1
19:4,7 51:24,25
**receive** 16:16,19 29:20 30:4 74:3
**received** 3:12 29:5 52:3 65:18
**recent** 8:12 10:8
**recess** 14:13 39:2 40:19 62:20
**reckless** 11:20
**recommend** 16:23
**record** 25:18 27:16 40:5 45:3
48:5 66:14,15,17 69:8,13
**redact** 75:5
**redacted** 75:2
**refer** 16:25
**referring** 16:20
**refuse** 22:13
**regarding** 36:3,5 37:8 72:14
**registered** 42:20
**reiterates** 10:24
**related** 22:12 38:9 65:5
**relationship** 33:2,2,3
**relax** 5:4
**relevant** 9:11 70:10
**reliance** 9:19
**reluctant** 23:24
**reluctantly** 12:25
**remain** 48:20
**remaining** 32:22
**remember** 5:21 13:12,14 25:6
38:15,16 61:25 65:2
**remind** 4:9 5:9 23:23
**reminding** 5:9
**renew** 48:19 56:6
**renewed** 8:3 11:23 72:2,11 73:4
**repeat** 14:2,4
**repeatedly** 63:7
**replied** 66:5
**reply** 72:13 73:14 74:2
**replying** 73:13
**Report** 23:10,18 73:22
**REPORTED** 2:5
**reporter** 2:5 26:24 62:18 69:20
70:18 76:12
**Reporter's** 3:6
**reports** 10:19,20
**represent** 27:11
**representation** 11:9
**Representations** 11:13
**requested** 11:18
**requirement** 11:15
**requirements** 11:19
**requires** 67:5
**reserve** 59:9
**Reshma** 20:25
**residence** 56:25 57:1,2
**resolved** 67:12
**respect** 33:11 61:6
**respond** 70:18 71:13,19,20,23
73:3,11
**responded** 66:5
**responding** 39:19 73:12
**responds** 70:19
**response** 72:14 73:15 74:3
**restitution** 43:14,16 44:1 46:23
46:24 47:1,3,5,8,11 48:1
49:13 51:9 56:14,15,18 60:1
**result** 65:19
**retain** 24:12 59:10
**retired** 7:23 23:2 38:1 65:9
**retried** 73:1
**retry** 72:25
**return** 31:22 63:18
**returned** 10:16
**retype** 38:19
**reverse** 47:9
**reversed** 9:14

**reviewed** 22:4 27:17 28:23
**re-examine** 37:8
**right** 5:4,5,23 6:4 7:17,20,21
14:9 15:1,12,15,1 7 22:21
23:22 25:15,23 26:4,17 28:10
30:22 33:25 37:16,23 38:14
42:25 45:1,22 46:23 47:4,5,5
49:12 50:17,19 51:8,22 52:7
52:16 53:20,21 55:6,12 57:3,7
57:24 58:1,6,10 59:6,6,9,15
59:16,21 60:23 61:8,8,14,14
61:16 62:11,12,18 63:14,16
65:6,7,10 66:8 67:23 68:5,24
69:16,24,25 70:5,16,24 71:6
72:3 73:17 74:14 76:2
**rights** 61:11
**rise** 7:22 14:12,20 22:23 26:5
37:25 65:8
**risk** 50:10
**road** 61:13
**Rodriguez** 21:22,23
**room** 4:15
**rose** 47:11,12
**routine** 6:13
**Rover** 57:8,9 59:20 60:12
**row** 6:1,1 64:24,25
**RPR** 2:5 76:11
**rule** 9:15 48:18 56:4 67:5,18
75:19
**ruled** 56:6,7
**ruling** 47:18
**rush** 41:24,25 63:8
**R.R** 16:4

### S

**safe** 9:8
**same** 5:17 10:13 11:25 12:1 26:3
44:11 56:17,19 57:22
**satisfy** 11:14
**saw** 33:4
**saying** 10:3 60:21 61:17,18,19
71:22 75:15
**says** 10:14 11:2 14:17 15:11 44:8
44:10,11 46:9,13 51:7 64:24
74:22
**schedule** 13:18 23:10
**schedules** 13:9,9
**scheme** 29:25
**Schlesinger** 9:14
**school** 6:19 7:8
**Scottsdale** 12:22
**scratch** 34:11
**seat** 5:4 7:25 26:7 38:17 67:1
**seated** 4:5 14:24 23:5 26:3 39:5
63:2
**second** 6:1 46:15 64:25
**Section** 1:15 63:21 64:14
**sections** 39:7
**security** 7:22 14:12,20 15:3
22:23 23:21 24:1 26:5 37:25
65:8
**see** 4:11 5:3 7:21 10:11 13:17
23:17 28:25 29:1,12,3 30:3,6
30:9,11,14 32:10 34:11 35:24
39:18,25 49:7,22 51:19 58:25
60:4,15 61:20,21 62:23 63:13
69:17 70:1 76:4
**seek** 43:13,16
**seeking** 42:3
**seems** 70:15
**seen** 7:21 29:15 33:21 67:21
**seize** 26:14
**seized** 41:20 42:3 44:16 49:19,20
55:4,14 60:6
**seizure** 41:19
**selected** 61:22
**self-explanatory** 31:20
**Senate** 54:25
**send** 5:17 13:25,25 37:22 42:18

62:17
**sense** 60:6
**sentence** 50:24 52:19 53:8 60:24
67:2,4,10
**sentenced** 48:3 58:20 60:13
**sentencing** 23:10,14,17 46:12
48:20 52:21 56:8,10 65:10
66:2,3,5,24 67:6,9 70:9,23
71:11
**sentencings** 51:5
**separate** 45:8,9 57:19 58:24
**separately** 57:23 65:12
**seriously** 61:23
**serve** 42:17
**service** 17:2 21:25 22:18 34:24
**settled** 4:14
**seven** 73:14
**sheet** 22:7
**Shirley** 4:21 6:10 12:8 14:21
40:18
**show** 33:18,20 34:10 44:20,23
51:15
**showed** 8:19 28:21,22,24
**shown** 11:3 23:14 29:4 34:19
**shows** 13:4 27:17 30:1,5 51:17
**side** 10:6 22:15 25:11 26:15 59:4
74:18
**sides** 40:6,8 49:10 75:17
**sign** 6:21,22 7:10,14
**signature** 20:20 64:22
**significant** 51:20 53:5
**simple** 30:6
**simply** 36:16
**since** 24:22 39:17 40:25 41:3
50:9,12 55:21 62:8 72:20 73:1
73:20
**single** 15:9
**sir** 4:18 15:2
**sit** 38:22 74:15
**sitting** 49:1
**skipped** 51:16
**skis** 57:5,6,7 59:21 60:5,6
**slightly** 44:12
**soda** 6:5
**sole** 42:24
**solely** 37:12
**Solicit** 16:19
**some** 9:20 10:13,18,19,23,24
12:13 15:11 35:13 40:2 44:24
45:12 46:15 50:9 54:21 55:21
55:23 59:21,22 66:6 70:6 74:7
74:8
**somehow** 60:23
**someone** 6:7 7:5 22:15 23:23
42:6 51:7 60:13 69:4
**someplace** 50:9,10
**something** 13:20,23,23 23:23,25
36:19 37:3 39:18 42:6 50:16
61:13 70:10 71:12 74:18
**sometimes** 10:4 47:14 54:25
55:19 70:22
**son** 13:2
**soon** 67:18
**sorry** 27:5 29:3 34:2 40:23
**sort** 59:7
**sounds** 12:20
**source** 36:21,21 37:6
**South** 1:21 2:2
**Southern** 1:1 15:20
**speak** 27:1,9 74:25
**speaker** 11:11
**speaks** 71:15
**Special** 24:6 31:22 37:21 39:6,13
42:10 63:18
**specialty** 8:16 9:6
**specific** 43:25 54:13 63:19 65:15
**specifically** 29:17 31:4,11 36:7
**specified** 31:13
**spend** 49:8 55:10

spending 55:13
spent 31:12,14,16
split 32:8,14
spoke 25:9
spring 13:7
stages 37:5
standard 36:14 52:6,8,13,15,16
standards 36:11,12
start 54:2 63:15
starting 73:9
statement 11:9
states 1:1,4,10,14,1 5 2:5 4:2 8:6
   8:10 9:22 10:9 15:19,21,25
   25:20 27:10 35:4,14 67:18
   76:12
Statute 8:18,22 9:9
Statute's 9:8
sticking 70:14
still 24:1,2,10,19 40:12,13,21
   47:12 51:17 53:4 62:10
stipulate 50:15 59:3
stole 51:4
stop 23:21
strategic 61:9,11
strategically 62:11
Street 1:16 32:12 56:23
stretch 4:24
strike 34:6
strip 27:24
SUA 31:22
subject 42:8 63:19 65:16
submit 9:2 42:9 65:13,14 66:16
   67:6 68:7,7,8
submitted 11:4 32:15,18,19 38:8
   45:5
substitute 65:22,22
successful 41:18
successive 37:5
suffered 51:5
sufficiency 47:15,20 50:2
sufficient 8:14 9:4 74:6
suggesting 7:17
suggestions 41:8,9,10
suggests 55:17
Suite 1:22 2:2,6 76:13
sum 45:11 68:21 69:14,17
summary 28:9 30:11
Super 12:17
Superseding 35:5,6,22
supplemental 35:23 37:15
support 9:25
supported 8:14 9:5
supporting 8:17
supposed 52:10
sure 8:4 42:13 43:5 54:9,11 57:6
   57:25 71:10 74:19
suspect 13:10 49:11 55:24 56:15
sympathy 37:13

**T**

T 30:24 76:7,7
table 3:1 25:19
take 5:14 6:9,10,11 7:5,7,8 13:14
   23:14 38:21 47:25,25 54:4
   61:22 62:2,16 65:11 68:23
   69:1
taken 51:6
takes 6:20 54:21
talk 5:18 22:13,14 24:17 28:16
   34:12 45:4 65:2 69:4
talked 9:12 13:6 75:14,15
talking 41:20 48:18,21 52:22
talks 9:4 11:17,19
Tampa 32:12 57:2
taxes 33:7
TD 64:12
tell 4:21 12:24 25:3 26:7,11,12
   26:16,20 39:16 44:13 54:15
   63:8 69:11 70:2 74:8

test 4:8 6:20 40:13 61:25 63:6
testifying 9:21
testimony 28:20 30:8,11 45:3
   66:17 69:9,14
testing 7:12
thank 4:3 7:20 14:11 21:25 22:5
   22:18,22 32:2,3,4,5 33:15
   40:3 54:22 62:25 63:2,2 65:1
   65:6
their 4:25 38:1,20 40:10 42:19
   47:18 62:2,5 74:3
theories 32:13,13
theorists 54:25
theory 32:21
thing 6:2 7:2 26:9,11 31:10
   35:15 43:23 44:11 49:23
   55:11 69:2 70:15 73:12
things 6:11 10:13 11:16 13:8
   37:18 49:9 54:21 69:24
think 5:3,15 6:22 8:3,8,25 12:4
   12:14,24 13:8,15 14:2,2,4
   24:11 25:6 26:19 28:2 34:6
   37:20 38:17 39:5,14 41:13
   42:23 43:2 50:1,2,6,19,22,24
   51:1,20 53:4,5 54:4 55:10
   58:8 61:7,16 62:2 67:18 68:6
   72:6 74:21 75:14,16
thinking 10:2 11:22 24:24 63:4
   71:18
third 8:24 42:12,15 55:5,5 58:23
though 9:20 11:18 41:13 49:11
   50:8 61:21 63:10 70:10,12,15
thought 11:23 12:15 13:1 40:25
   51:16
three 5:8 10:15 38:8 71:14 72:7
   72:8,8 73:7,8
through 5:7 10:12 33:2 35:9,9
   35:10,10,10,1 0 42:19 50:11
   51:5 55:14 56:18,18 63:3
throughout 6:3 22:1 32:24
throw 49:13
Thursday 75:8
tie 23:16 24:3
till 5:10 8:4 71:11,25
time 4:10 5:13,14 6:3,3,7 7:1
   8:19 10:24 13:22 24:23 32:7
   34:25 37:23 38:17 48:6 49:8
   50:12 54:21 55:10,21 58:18
   62:3,9 67:2,14,15 70:13,17
   75:23
times 51:2 60:9
timing 13:12
today 5:25 7:15 12:16,16 50:17
   52:21 72:7,8
together 37:12
token 22:6
told 25:12 41:1 60:8
tomorrow 4:11 5:19,21,25 6:2
   6:12,13 25:4,24 40:12 61:23
   63:7
top 13:2
total 65:18 68:21
touch 6:7
tournament 12:16
traceable 29:21 31:3 36:1,8 37:3
   63:23 64:16
track 13:13
trail 37:5
transactions 32:24 33:5
transcript 69:8,19 70:2
transcription 76:9
transcripts 70:20
transparent 33:3
Treasury 73:6
trial 1:9 4:14 8:25 9:16,24 10:15
   12:3,11,12,13 45:3,17 51:6
   54:23 56:4 58:1 60:5 70:12
   72:12 73:4 74:2 76:5
Tricare 28:22 29:7 32:15,18,19

45:5 48:9
true 36:18,18 41:15
truth 11:12,14
try 57:15 69:21
trying 57:14,16 69:18
Tuesday 5:19
tune 44:21
turn 26:24 27:2,5
two 5:21,22 8:25 12:1 13:7 28:2
   29:18 36:12 39:7,10 41:23
   44:17 49:3,4 50:13 53:21
   57:19 58:1 59:4 65:19 71:9
   72:8
two-week 12:10
type 13:5
typical 6:2

**U**

ultimately 31:24
unable 10:16,21
unanimous 37:14
unanimously 15:23 16:18 36:11
   63:17
under 8:18 9:7,21 22:12 36:11
   36:20 37:4 62:13 65:3 74:11
understand 14:25 24:15 45:24
   48:12 49:9 51:7,19,19 54:20
   56:12 62:7,10 63:10,11 74:20
understanding 44:6 49:25
Understood 7:19
unfortunately 69:21
United 1:1,4,10,14,1 5 2:5 4:2
   8:6,10 9:21 10:8 15:19,21,25
   25:20 27:10 35:4,14 76:12
unlawful 31:13
unless 14:2 25:5 49:13,15 58:21
   60:13,21 69:20 70:6
until 4:6 14:10 23:14
untrue 11:15
unusual 62:9
use 26:23 27:4 29:11 30:10
   41:23 61:11
used 36:25
usually 67:1 70:20 75:23
U.S 33:6 76:12

**V**

vacated 9:16
vacation 72:18
vacations 13:7
value 68:21
vehicle 57:8
verdict 6:5,10 9:18,25 10:16,16
   10:22 12:3,10 13:11 14:18,25
   15:10,10,22 20:24,24 22:11
   23:9 24:6 25:12,13 26:17
   29:12 30:4 31:22,25 32:7,14
   33:16,19 34:10,23 35:12
   37:12,14,17,18,20,2 2 38:1,7
   38:15,20 39:1,6,13 40:1,7,15
   42:8,10 44:5 47:13 49:10 50:7
   50:17 51:11,13 54:19 56:16
   62:23 63:11,14,1 8 64:23,24
   67:19 72:3 73:5,6
verdicts 10:24 15:18 22:2,11
Vernon 8:10,11,11 10:25
versus 4:2 8:6,10 9:22 10:9
   15:21 55:11 56:3
very 8:25 40:10 41:12 59:8 63:2
   63:4 65:1 73:10
Vettaparambil 20:25 21:1
victim 48:8
victims 48:7
victories 60:11
view 31:12 35:12 69:22
VIN 64:19
violations 9:9
virtue 44:19
vs 1:6

**W**

wait 7:25 8:4 37:22 38:17 48:15
   48:15 70:2 74:15
waiting 24:18 55:3
want 4:13 5:14 6:17 7:21 9:3
   21:24 22:5,14,19,20,24 23:1
   24:17 25:5,7,23,2 4 26:16,20
   28:16 38:23 40:1,13,15,16,21
   41:4 43:24 44:1 46:13 47:20
   57:6,15 62:7 65:4 66:16 67:24
   67:25,25 69:13 71:5,6,17,19
   71:20 72:1,12,24 73:3 75:18
   75:19
wanted 5:2,8,20 25:11
wants 24:3,10,15 25:7 26:14
   34:6 42:6 69:4 75:12,17
warning 70:13,17
Washington's 71:12
wasn't 6:16 11:22 35:1 63:9
waste 13:22
watch 5:18
watching 12:15
way 5:11 10:11 11:8 30:15 33:5
   44:5 49:11 51:18 62:6 67:14
   68:1
ways 74:8
weakens 47:20
wealth 11:16
Wednesday 6:15,18 7:18
week 5:23 6:4 25:9 71:22,24
   72:19 74:4 75:1,8
weeks 5:21,22 13:7 71:9 72:7,8
   73:7,8
weight 36:16
welcome 22:19
well 6:8 7:7 13:19 22:7 27:8
   32:12 33:5 39:14 40:20,25
   42:15 44:20 45:21,25 46:18
   47:22 48:8,13,17,24 49:4 50:7
   50:15 52:7,10 53:10 58:23
   59:8 67:16 72:19 74:20
went 13:3 29:6,6,8,8,13,2 5 30:5
   30:12,19,21,24
were 4:1 7:24 8:25 10:22 11:4,20
   12:14,14 14:14 24:18,23
   25:10 28:4,4,19,20 32:9,18,19
   32:20,24 33:5 36:3 38:3 40:25
   46:21 48:22 49:1 51:16 52:23
   53:2,22 62:20 63:4,6,9 72:25
weren't 32:25
we'll 4:12 5:17 13:17 14:10
   22:16,16 23:17 37:22,22,24
   38:19,19,22,23 39:24,25
   44:20 48:19 58:19 61:20
   66:10,18 71:25 72:9
we're 11:25 12:10 14:10 23:25
   27:13,19,24 29:11,14 34:7
   37:16,19 44:14 45:25,25 46:1
   46:18 50:15,20 53:7 54:16,20
   55:3 57:25 61:6,9,10,17,19
   65:17,20 66:17 69:18 70:14
   72:9 74:3
we've 10:23 14:17,23 25:8 27:15
   32:23 33:21 44:16 48:17
   50:12 55:21 57:22 71:1 73:19
while 24:18 37:7 40:16 48:25
   63:9
whispering 34:12
white-collar 50:23
whole 49:23
wife 12:25
Wilkie 2:6 76:12
willful 11:17
willfully 8:16
win 43:18 60:11
wire 29:19
wish 24:19 71:13 73:11
witnesses 37:11
wonder 49:8,24 55:15

wondering 62:13
work 5:10 6:2
worked 4:15
working 39:25 49:6 63:3
works 39:18
worse 50:5
worst 54:23
worth 41:6 48:23
wouldn't 39:11 41:1 49:5 58:18
WP0AB2A92ES120563 64:19
Wrap 31:9
write 12:7
writing 66:16
wrong 13:11 49:2 59:19 69:25
W-2 51:25 52:3,5

**Y**

yeah 5:4 7:7,16 39:19 45:21
  53:11
years 24:21 34:25 55:18 58:20
  60:10,13 62:8
year's 10:20
yesterday 12:16

**S**

$1,206,817 17:23
$1,539,815 20:16
$1,600 20:8
$1,630,903 18:10
$1,650 20:2
$1,680 19:15,18
$1,680,922 64:10
$1,750 19:21
$1,800 19:12
$1,832,268 18:16
$1,964,741 18:1
$10,000 31:12,15
$105,545 20:10
$15 29:10
$18 49:4,17,18 56:17 59:17
$18.8 43:12 47:4
$188,844 18:22
$19 65:20
$2 49:21 50:8
$2,322,451 18:4
$20 50:9
$210,763 17:11
$24,521 20:18
$250,000 20:14
$288,290 17:14
$3 30:24 31:6
$3,400 19:24
$3,644,894 18:7
$4,425,544 18:13
$43,164 18:25
$436,490 17:20
$5 33:6
$6,156 19:3
$60,360 19:9
$69,615 19:6
$690,733 18:19
$732,974 17:17
$74,663 17:8
$85,946 17:5
$9 30:19
$9,373,088 30:12
$90,478 20:12
$900 20:5
$988,834 64:6

**1**

1 10:17 15:24 23:7 29:17 31:4
  35:9 48:17 53:18 63:25 64:2,5
  64:8,12
1st 71:25
1-2-15 17:16
1-20-15 17:19 19:11
1-28-15 16:4

1-30-15 17:22
1-31-15 16:6
1:00 4:6,9 5:10,11,16,2 4 13:20
  13:24,24 14:5 25:14 41:1
  51:17
1:05 23:2
1:10 26:6
1:29 38:1
10 17:3 23:7
10th 72:21 73:2
1099 52:3
11 17:6 23:8 25:5
11-21-14 17:7
11-7-14 17:4
11:00 7:11
11:30 6:18 7:12
11:55 4:1
11:57 5:1
12 17:9 19:2 23:8
12th 12:6,9
12-18-14 17:13
12-29-14 16:2
12-9-14 17:10
12:00 4:25
12:01 7:23
12:10 13:21
12:14 14:13
12:48 14:14,22
1234 8:12
1291 8:6
13 17:12 23:8
13-3 1:5 2:6 76:13
14 17:15 23:8 35:9
147 29:2
159 28:9,11 29:11,24
16 23:10 65:10 66:6
16th 67:24 71:11 73:23
16-CR-20893-FAM  15:20
16-20893-CR-MORENO 1:3
165 28:13
17 17:18 23:8 35:9
1750 1:22 2:2
18 17:21 23:8 35:9 48:23
18.8 49:2
19 29:10,13,24
19th 12:4

**2**

2 1:21 2:2 10:18 16:1 23:4 63:15
  64:3
2nd 71:25 72:10 73:16
2-13-15 17:25
2-18-15 19:14,17
2-20-15 16:8
2-23-15 16:10 19:20
2-27-15 18:3
2-3-15 20:10
2-5-2018 20:19
2:20 40:20,25 41:2
2:30 50:12
20 17:24 23:8 24:21 35:9
200 53:5
2007 8:6
2013 8:12
2014 64:19
2015 19:3,6,9 52:1
2018 1:7 23:10 64:21 65:10
22 18:2 23:8 35:9
22nd 71:13,24
229019916597 64:7
229042044397 63:25
23 15:14 18:5 23:8
23rd 73:9 74:3
24 18:8 23:8
240 53:5 54:5
25 18:11 23:8
25th 72:6
26 18:14 19:5 23:8 35:10
26th 72:6

27 3:4
28 18:17 23:4 24:21 34:25 35:10
28th 74:9
29 9:15 18:20 19:8 23:4 48:18
  56:4

**3**

3 10:18 16:3 23:4 64:7
3-12-15 16:12
3-13-15 18:6
3-18-15 19:23 20:1
3-27-15 18:9
3-4-16 20:14
3-5-16 20:16
3:00 41:5 62:15,21
3:01 62:24
3:06 65:9
3:15 62:16
3:20 76:5
30 18:23 23:4 55:17 58:20 60:10
  60:13
300 52:24
305-400-4261 1:23
305-400-4266 2:3
305-530-6168 1:17
305-961-9356 1:17
305.523.5118 2:7 76:13
31 19:1 23:4
32 3:5 19:4 23:4
32.2 67:5
33 13:3 19:7 23:4 35:10
33128 2:7 76:13
33131 1:22 2:3
33132 1:16
3553(a) 50:25
36 19:10 23:4 35:10
360 53:1
37 19:13 23:5
38 19:16 23:5
39 19:19 23:5

**4**

4 10:19 16:5 23:4 38:9 64:11
4-10-15 18:12
4-22-15 20:4,7
4-27-15 18:15
4-5-16 20:18
4:00 40:12 63:6
40 19:22 23:5
400 2:6 76:13
41 19:25 23:5 35:10
4176 29:23 33:12
425 9:23
43 20:3 23:5 35:10
4397 29:3,12 33:14
44 20:6 23:5
45 20:9 23:8 31:12,16 64:20
46 20:11 23:5
47 20:13 23:5 33:9
48 20:15 23:5 33:13
485 8:6
49 20:17 23:6 35:10

**5**

5 1:7 10:19 16:7 23:7 48:17
  53:19 64:21
5th 12:5,6,9,9
5-19-15 18:18
5-22-15 20:12
5-29-15 18:21,24
5-7-15 16:14
5:00 6:3
5803 32:12 56:23

**6**

6 16:9 23:4
6597 30:10,23 33:10

**7**

7 16:11 23:4
7th 73:15
723 8:12
76 3:6

**8**

8 16:13 23:4
8:30 4:11
866-780-8355 1:23
869-914682 64:11
898067684176 64:3

**9**

9 16:15 23:7 29:17,20 31:4 64:2
  64:5,9,13
9th 71:16,17,18,1 9 72:21 73:17
9:00 4:11 6:2 41:3
9:30 23:11
911 64:19
953 9:23
99 1:16