**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 16-20893-CR-MORENO(s)**

**UNITED STATES OF AMERICA,**

**vs.**

**MONTY RAY GROW,**

     **Defendant.**

_____/

**GOVERNMENT'S RESPONSE IN OPPOSITION**
**TO DEFENDANT'S SENTENCING MEMORANDUM**

     The United States of America, by and through the undersigned Assistant United States Attorney, hereby files its Response in Opposition to Defendant's Sentencing Memorandum [DE-338]. Defendant raises five points in arguing for a reduced sentence. The government addresses each point in turn.

     **I.**     **Sentencing Package Doctrine**

     Defendant claims that the Eleventh Circuit's mandate precludes this Court from applying the sentencing package doctrine. He is wrong. The mandate states that "[o]n remand, the district court must permit the government to either consent to resentencing based on a maximum sentence of ten years on count one or retry Grow on count one with a special verdict." The mandate does not say that the Court can *only* resentence on count one; it merely limits the sentence on that count to 10 years (the statutory maximum). Defendant argues that the only way the Court could apply the sentencing package doctrine in this case is if the Eleventh Circuit had vacated the entire sentence. That makes no sense. If the Eleventh Circuit had to vacate the entire sentence to allow a district court to repackage it on remand, there would be no need for the sentencing package

doctrine to begin with. Indeed, the sentencing package doctrine emerged precisely for circumstances like this, where the appellate court vacates one or more but not all counts, thereby deconstructing the overall sentence of which the vacated count is a component. *See United States v. Fowler*, 749 F.3d 1010, 1015 (11th Cir. 2014) ("[w]hen a conviction on one or more of the component counts is vacated for good, the district court should be free to reconstruct the sentencing package … to ensure that the overall sentence remains consistent with the guidelines, the § 3553(a) factors, and the court's view concerning the proper sentence in light of all the circumstances."). The sentencing package doctrine gives the sentencing court flexibility to repackage the resentence on the remaining counts to comport with the guidelines, the 3553 factors and the court's opinion of the appropriate sentence. *See id.* For obvious reasons, Defendant wants to restrict the Court's discretion at resentencing so that the Court cannot enter a judgement consistent with the Sentencing Guidelines. The proper application of the sentencing package doctrine, however, prevents a defendant from gaining such a huge and unjustified windfall.

None of the cases Defendant cites have any bearing on the applicability of the sentencing package doctrine in this case. In *United States v. Tamayo*, 80 F.3d 1514, 1519 (11th Cir. 1996), for example, the Eleventh Circuit considered whether a defendant was entitled to allocute at resentencing where the prior panel "limited [defendant's] resentencing to the sole issue of whether the unadjudicated *nolo contendere* disposition qualified as a diversionary disposition under [Eleventh Circuit precedent] for inclusion in [defendant's] criminal history." Given that narrowly defined issue for the district court to consider on remand, the Court of Appeals ruled that the district court was not required to allow defendant the opportunity to allocute. *Id.* Importantly, the appellate court articulated no rules about when a district court can apply the sentencing package doctrine. Instead, it merely held that the right to be present and allocute at resentencing extends only to the

imposition of a new sentencing package after an original sentencing package had been vacated. *Id.*[1]

Similarly, in *United States v. Joseph*, 569 Fed. Appx. 861, 863 (11th Cir. 2014), the appellate court remanded "for the district court to enter a corrected judgment" following the vacatur of one count of conviction. It bears emphasis that even though the Eleventh Circuit "did not vacate the entire sentencing package on direct appeal," and expressly "noted that a new sentencing hearing was not required," the Court nonetheless explained that "the district court does retain the discretion to have an additional sentencing hearing if it concludes the vacatur of Count 3 affects in any way its sentencing decision on any other counts." *Id.* Thus, even where the appellate court remands with limiting instructions to merely correct a judgment, the district court retains the discretion to repackage the sentence.

Here, the Eleventh Circuit remanded for resentencing without any limitations except for the new statutory cap on Count 1. As such, this Court retains discretion to repackage the new sentence under the sentencing package doctrine.

## II.     Proportionality

Defendant claims that his original sentence is disproportionally high compared to the sentences of similarly situated defendants in this and other cases. The fatal flaw with this argument is that Defendant is not similarly situated to those with whom he compares himself. The co-conspirators in this case are not similarly situated for many reasons, including that (1) they were only responsible for a small fraction of the loss amount attributable to Defendant, (2) they played no aggravating role like he did, (3) they pleaded guilty and accepted responsibility unlike him, and

---

1       Defendant's presence is accounted for in this case. *See* DE-339 (*Writ of Habeas Corpus ad Prosequendum*).

3

(4) they agreed to cooperate while Defendant took the witness stand and perjured himself. The Eleventh Circuit has consistently held that defendants who plead guilty and cooperate are not similarly situated to defendants who do not for purposes of such proportionality arguments. *See United States v. Abovyan*, --- F.3d ---, 2021 WL 671632, *17 (11th Cir., Feb. 22, 2021) ("[D]efendants who cooperate with the government and enter a written plea agreement are not similarly situated to a defendant who provides no assistance to the government and proceeds to trial.") (quoting *United States v. Docampo*, 573 F.3d 1091, 1101 (11th Cir. 2009)).

Defendant's citation to general statistical data on average sentences in fraud cases is equally unavailing because the statistics merely reflect the *average* sentence across all manner and degree of fraud cases typical of the district. This case is not an average fraud case for several obvious reasons. The average sentence in a fraud case: (1) is likely the result of a plea agreement, (2) does not involve many millions of dollars in actual fraud loss, (3) does not involve perjury by the Defendant, and (4) does not involve sophistication, recruitment of co-conspirators, or a Federal health care program enhancement. That Defendant's sentence is greater than the average sentence merely reflects the fact that his fraud scheme was far from average.

Finally, Defendant identifies several unrelated fraud cases from the Southern District of Florida in an effort to demonstrate disproportionality. His argument is not only unpersuasive, but actually bolsters the reasonableness of the Court's prior sentence. Defendant is not similar to Maria Martins or Julio Brunet because, among other things, those defendants pled guilty and agreed to cooperate. *See United States v. Martins*, 13-cr-20546-William, DE-31 (Plea Agreement); *United States v. Brunet*, 14-cr-20211-Ungaro, DE-40 (Plea Agreement). In the other two cases, where defendants were convicted at trial, the relevant facts show that Defendant's sentence is proportional to theirs. In the *Esformes* case, for example, the defendant was held accountable for

4

only $5.5 million in loss and yet received a 20-year sentence. *See United States v. Philip Esformes, et al.*, 16-cr-20549-Scola, DE-1459 (J&C); *see also* DE-1349 (sentencing transcript).[2] There is nothing disproportional about Defendant receiving a 22-year sentence when his loss amount was calculated to be over three times higher than the loss in *Esformes*.

Similarly, in the *Melgen* case the defendant received an 18-year sentence based on a fraud scheme with an intended loss of approximately $73 million and an actual loss of approximately $42 million. *See United States v. Melgen*, 15-cr-80049-Marra, DE-489 (J&C). While the intended loss amount range was two levels higher in *Melgen* than in this case (which accounts for a difference of 4 points in the overall guideline calculation), Melgen did not recruit co-conspirators and therefore did not receive a role enhancement. Nor did Melgen commit perjury. The differences in the two sentences (18 years vs. 22 years) are largely accounted for by these differences in sentencing enhancements.

In sum, Defendant's sentence is not disproportional.

### III.    Loss Amount

Defendant disputes the Court's prior determination that the loss amount is $18,856,744. He claims that the Court should revisit that loss calculation now that Defendant stands convicted of conspiracy to commit health care fraud *only* and not conspiracy to commit health care fraud *and* wire fraud. While that argument has some theoretical appeal, there is no practical difference between the guideline calculation of fraud loss in either scenario. Whether the conviction is for health care fraud or wire fraud (or both) the guidelines dictate the application of U.S.S.G. §2B1.1.

---

2       The Court: "… I am going to find that the amount of loss is somewhere between 4.9 and 8.3 million dollars." DE-1439 (Sent. Trans.), p.51. The judgment reflects a restitution figure of approximately $5.5 million, consistent with the court's loss calculation. *See Esformes*, 16-cr-20549-Scola, DE-1459 (J&C).

And the Defendant's conduct to be evaluated under that guideline is the same whether the conviction involves health care fraud or wire fraud. Put differently, the Court's analysis of loss—and the facts used to conduct that analysis—is exactly the same now as when the Court originally sentenced Defendant.[3] The Court already made that determination at the original sentencing. Because Defendant did not challenge any of the Court's loss findings or conclusions on appeal, those findings and conclusions become law of the case and the Court need not reconsider them at this stage. *See United States v. Escobar-Urrego*, 110 F.3d 1556, 1560-61 (11th Cir. 1997).

In any event, even if the Court were willing or required to revisit the loss calculation at resentencing, there is no basis to lower that loss figure from the $9.5 million to $25 million range that the Court previously found to reflect the actual loss. The evidence at trial showed that Defendant's conduct resulted in approximately $39 million in drug claims paid by Tricare. The Government argued that the loss was, therefore, squarely in the $25-$65 million range because all of the claims were, among other things: (1) induced by kickbacks the Defendant paid to recruiters and patients (who were often one and the same) to encourage them to order drugs they did not need, (2) prescribed by doctors that the Defendant paid to ratify his formulas in amounts and with refills he dictated, and (3) for drugs which were fraudulently inflated by thousands of dollars with ingredients Defendant sold to the pharmacy. At the original sentencing, Defendant objected to the $25-$65 million range and argued, as he does here, that at least some of the claims had to be legitimate because one of the government's witnesses (Dr. Bansal) testified that he authored a

---

3       The only difference between the two crimes for guideline purposes is the base offense level. *See* U.S.S.G. §2B1.1(a) (mandating a 7-level increase where the statutory maximum for the offense of conviction is 20 years or more (i.e. wire fraud), otherwise a 6-level increase (i.e., health care fraud)). The government concedes this change for purposes of calculating the correct guidelines for resentencing. *See* DE-329, Govt. Resentencing Memo, p.7.

handful of the scripts. DE-240, pp.24-25. Despite the fact that "[a] doctor's prescription is not a get-out-of-jail-free card," *United States v. Grow*, 977 F.3d 1310, 1321 (11th Cir. 2020), the Court, nonetheless, cut the government's proposed loss amount in half, instead choosing as actual loss a figure equal to the amount of kickbacks Defendant received. That concrete figure, $18,856,744, which is squarely in the $9.5-$25 million loss range, is certainly a reasonable estimate of loss when taking into account defendant's argument that some of the claims could have been legitimate.

In sum, rehashing the same arguments about loss should not change the outcome.

## IV.    Medical Issues

Defendant contends that his medical conditions warrant a downward departure or variance from the guidelines. Defendant lists several conditions—most of which the Court was aware of at the original sentencing—including a pinched nerve, a compression fracture in his vertebrae, a knee injury, headaches, insomnia, and depression. *See* DE-93, PSR ¶¶ 89-94 (describing compression fracture, knee injury, insomnia, headaches, and his status as a plaintiff in the NFL concussion litigation). These last few symptoms, he claims, demonstrate that he suffers from CTE. While the government acknowledges that CTE is an emerging degenerative brain disease associated with head trauma, and that it appears to be prevalent among those who have participated in contact sports, it is far from certain that Defendant is suffering from CTE or that his condition will degenerate as gravely as he predicts. After all, many NFL players with significantly longer playing careers than Defendant have avoided severe consequences from CTE. *See* Russell M. Baur and Michael S. Jaffee, *Concussions and CTE*, University of Florida News, (August 1, 2017) ("There are over 10,000 living NFL retirees, yet the entire science of CTE is based on samples of less than a few hundred former NFL players and a handful of athletes from other sports. This means that

some of those exposed to the risk of repetitive head impacts develop CTE, but most do not.").[4] Because of the uncertainty surrounding CTE, the appropriate remedy in this case is not a downward departure or variance now, but a motion for compassionate release if or when Defendant's condition worsens. *See* 18 U.S.C. § 2582(c)(1)(A) (authorizing the district courts to reduce a term of imprisonment based on a showing of extraordinary and compelling reasons).

## V.     Remorse and Rehabilitation

Finally, Defendant asserts that with the benefit of time and reflection he has come to understand and accept responsibility for his criminal conduct. He claims that the shock of losing at trial diminished his ability to show remorse at the original sentencing. Reviewing his recent letter to the Court (DE-338, Ex. 6), it is difficult to discern exactly what Defendant accepts responsibility for. What is clear, however, is that two months before drafting his letter to the Court he was anything but remorseful or accepting of responsibility. *See* Govt. Ex. 1 (Defendant's Petition for Commutation of Sentence). In seeking a commutation of his sentence in December of 2020, Defendant distorted the true nature of his conduct; he ignored or misrepresented much of the evidence of his guilt; he blamed others for supposedly misleading him into criminal conduct; he accused his co-conspirators of falsely condemning him; and he misquoted and mischaracterized the Court while accusing it of unfairness at trial and sentencing. *See id*. The person who signed that clemency petition under penalty of perjury is decidedly not remorseful, repentant, or rehabilitated.

---

[4]     Dr. Bauer is a Professor of Clinical & Health Psychology and Neurology at the University of Florida, and Dr. Jaffee is Vice-chair of the Department of Neurology at the University of Florida.

## VI.      Conclusion

For the foregoing reasons, the Court should overrule or otherwise reject Defendant's

sentencing arguments.

Respectfully submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY


By:      _s/Jon M. Juenger_____
Jon M. Juenger
Assistant U.S. Attorney
Fla. Bar No. 56108
99 N.E. 4th Street, Fourth Floor
Miami, Florida 33132-2111
Tel: (305) 961-9450
Fax: (305) 536-7213
Jon.Juenger@usdoj.gov


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 26, 2021, I electronically filed the Government's

Response in Opposition to Defendant's Resentencing Memorandum via CM/ECF.


_/s/Jon M. Juenger_____
Jon M. Juenger
Assistant United States Attorney

9