UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No: 16-20893- Moreno

UNITED STATES OF AMERICA
                Plaintiff

vs.

MONTY RAY GROW
                Defendant
_____/

MOTION FOR PRODUCTION OF EVIDENCE PURSUANT TO *BRADY V, MARYLAND* AND *GIGLIO V. UNITED STATES*

COMES NOW the Defendant Monty Grow, by and through Reizenstein and Sola, PA., Philip L. Reizenstein, Esq. and hereby files this motion for production of evidence pursuant to *Brady v. Maryland,* 373 U.S. 83 (1983) and *Giglio v. United States*, 405 U.S. 150 (1972):

1. Monty Grow was tried and convicted of multiple counts in this case relating to health care fraud and the payment and receipt of kickbacks as well as one count of money laundering. [DE115].

2. Grow's sentence on Count One, which charged a multiple conspiracy of wire fraud and health care fraud was reversed for failure to instruct the jury properly. *United States v. Grow*, 977 F.3d 1310 (11th Cir. 2021).

3. The government elected to have Grow resentenced on the less serious charge of health care fraud. Sentencing is set for April 5, 2021.

1

4. The main witness in the trial against Grow was his former co-defendant Ginger Lay.

5. Lay was significantly rewarded for her cooperation with a sentence of 21 months when her guidelines called for a sentence of 57-71 months. [DE197: 26].

6. There are several inconsistences in Lay's testimony at various hearings before this court, which the defense is asking the Court to review and order either an evidentiary hearing or a response from the Government and disclosures pursuant to their obligations in *Brady v. Maryland*.

7. At Lay's change of plea hearing this court asked Ms. Lay whether she had any prior "record". Both the government and Lay answered in the negative. DE196: 13].

8. The defense has learned that that at the time of the change of plea Ms. Lay had a prior conviction in Desoto County, Mississippi, Docket Number 140004158 in which on 9/30/2014 she was sentenced to *inter alia*, house arrest for a misdemeanor. [1]

---

[1] It is acknowledged that generally misdemeanors cannot be used for impeachment under Fed. R. Evid 609. Lay was not truthful to the court when she denied both a prior arrest and conviction and having prior psychiatric treatment. To the extent her denials were under oath, the defense may well have successfully been able to introduce her non-truthful statements as impeachment evidence of her failure to take her oath to tell the truth seriously.

9. It is not known if or when the Government was aware of this. To the extent Lay was not truthful before this court at her change of plea and sentencing and the government did not disclose it, there may be a violation of the principles contained in *Brady v. Maryland,* 373 U.S. 83 (1983) that would require this Court to hold a hearing pursuant to *Giglio v. United States*, 405 U.S. 150, 153 (1972): " As long ago as Mooney v. Holohan, 294 U.S. 103, 112, 55 S.Ct. 340, 342 (1935), this Court made clear that deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with 'rudimentary demands of justice." *Id.*

10. Ms. Lay's sentencing transcript refers to Ms. Lay's work as a cooperating witness on other cases: "She provided extraordinary cooperation, not only against Mr. Grow, but against other people that the Government may, in fact, later prosecute." [DE197: 21].

11. Ms. Lay's sentencing memorandum also details a prior suicide attempt and "being house in a psychiatric facility." [DE176: 5]. At her change of plea Ms. Lay denied any prior psychiatric treatment:

> The Court: "Have you ever been—these are questions I ask everyone who pleads guilty. Have you been to a psychiatrist or a mental institution?"
> Ms. Lay: "No Sir."

[DE196: 6].

This statement, like Lay's denial of a prior arrest and conviction was patently false.

12. Finally, there is also an issue with a potential witness named Billy Burton that the defense wanted to call at trial. The availability of Mr. Burton as a potential defense witness was raised by Daniel Rashbaum- Mr. Grow's counsel at the time-at the calendar call on January 16, 2018. [DE80]. The government responded about Mr. Burton: "He is going to be charged. **He signed a plea agreement**." [Exhibit One, Transcript of January 16, 2018, p. 20] (emphasis added). Our investigation reveals that Mr. Burton did not sign a plea agreement until July 19, 2018, seven months after the Government told the court Mr. Burton had signed a plea agreement. [*USA v. Burton*, 18-CR-60164/Dimitrouleas, Southern District of Florida, DE7]. Mr. Burton received medicines that were ordered and also worked to recruit patients and representatives. In a 302-report disclosed to the defense Burton was reported to have said that Grow told him "there are two things he always had to follow. First, he can't give a payment to a patient to get a prescription, second, the patient can never lie to the doctor about their diagnosis." [Exhibit One, Transcript of January 16, 2018, p. 18]. Burton's availability as a witness was thwarted by the government listing him as a target of a federal investigation. The government should be required to address the discrepancy between what the court was told at the calendar call and when in fact Mr. Burton received a plea agreement.

4

# ARGUMENT

The prosecution has an obligation to disclose favorable material at least through the sentencing process if not beyond. *Scott v. United States*, 890 F.3d 1239, 1258 (11th Cir. 2018): "As we have noted, *Tompkins* based its determination that all *Brady* claims are necessarily "second or successive" on its conclusion that all *Brady* claims ripen during trial or, at the latest, sentencing."

When a *Brady* violation occurs, a defendant is entitled to a new trial. *Brady*, 373 U.S. at 87, 83 S.Ct. 1194. In *Scott v. United States*, the court held:

> [a] prosecution that withholds evidence ... which, if made available, would tend to exculpate [the defendant] or reduce the penalty[,] ... casts the prosecutor in the role of an architect of a proceeding that does not comport with standards of justice, even though ... his action is not 'the result of guile.' Put simply, a criminal defendant does not receive a fair trial when a *Brady* violation occurs.

*Scott v. United States* 890 F.3d at 1251, *citing Brady v Maryland*, 373 U.S. at 87-88, 83 S.Ct. 1194.

## A. LAY'S STATUS AS AN INFORMANT ON OTHER CASES WAS NOT DISCLOSED TO THE DEFENSE:

The government had an obligation to disclose Lay's status as an informant on other cases, as it was an additional benefit the government was conferring on Lay as well as it is well recognized that the status of being informant can

negatively affect a witness's credibility. "The use of informers ... may raise serious questions of credibility." *See Robinson v. Mills*, 592 F.3d 730, 737 (6th Cir. 2010):

> Indeed, jurors often have a negative predisposition toward informants. Ordinary decent people are predisposed to dislike, distrust, and frequently despise criminals who 'sell out' and become prosecution witnesses. Jurors suspect their motives from the moment they hear about them in a case, and they frequently disregard their testimony altogether as highly untrustworthy and unreliable....

*Id.* citing *On Lee v. United States,* 343 U.S. 747, 757, 72 S.Ct. 967 (1952); Stephen S. Trott, *Words of Warning for Prosecutors Using Criminals as Witnesses,* 47 Hastings L.J. 1381, 1385 (1996).

Lay's work for the government outside of her cooperation against Grow created a larger potential bias then her simple desire to obtain a lower sentence in her case. The Court in *Robinson v. Mills* stated:

> The suppressed evidence could have also supported the assertion that at the time of trial, Sims was biased in favor of the local authorities. The term "bias" describes "the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party." *United States v. Abel,* 469 U.S. 45, 52, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984). Bias is "not limited to personal animosity against a defendant or pecuniary gain." *Schledwitz v. United States,* 169 F.3d 1003, 1015 (6th Cir.1999). Instead, it includes mere "employment or business relationships" with a party and "is always relevant in assessing a witness's credibility."

*Robinson v. Mills,* 592 F.3d at 737.

It was unknown to the defense about Lay's status as being an informant on other cases until well after the trial in this matter. The government should disclose

all agreements it had with Lay. *See also United States v. Shaffer*, 789 F.2d 682, 688–89 (9th Cir. 1986):

> Using the *Bagley* standard set forth above, we conclude that the information withheld from Shaffer regarding Durand was material and should have been disclosed by the government.
> Specifically, Shaffer alleged that the government failed to disclose: (1) that Robert Durand was a paid informant in a separate heroin operation during the years 1980 and 1981; (2) the full benefits and promises that Durand received in exchange for his cooperation; (3) the full extent of Durand's assets; and (4) the status of Durand's tax liability. Shaffer argued that these facts, if used at trial, would have had a substantial effect on Durand's credibility and would have resulted in Shaffer's acquittal.
> Because Durand's testimony implicating Shaffer was critical to Shaffer's conviction, the jury's assessment of Durand's credibility was crucial to the outcome of the trial.

### B. THE EVIDENCE SOUGHT SHOULD BE DISCLOSED PURSUANT TO BRADY AND GIGLIO

To establish a *Brady* violation, the defendant must show that: (1) the government possessed evidence favorable to the defendant, (2) the defendant did not possess the evidence and could not have obtained it with due diligence, (3) the government suppressed the evidence, and (4) there was a reasonable probability of a different outcome had the evidence been disclosed to the defendant. "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish prejudice." *United States v. Zamor*, 19-10208, 2021 WL 567515, at *7 (11th Cir. Feb. 16, 2021) (internal citations omitted). Impeachment evidence is subject to disclosure

under *Brady. United States v. Bagley*, 473 U.S. 667, 676, 105.S. Ct. 3375, 3380 (1985). Undisclosed evidence is material if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id*. at 682, 105 S.Ct. at 3383. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.*

In order to succeed on a *Giglio* challenge, the defendant must demonstrate that the prosecutor "knowingly used perjured testimony, or failed to correct what he subsequently learned was false testimony, and that the falsehood was material." *United States v. Vallejo*, 297 F.3d 1154, 1163–64 (11th Cir. 2002) *citing United States v. Dickerson,* 248 F.3d 1036, 1041 (11th Cir.2001), *cert. denied,* 536 U.S. 957, 122 S.Ct. 2659, 153 L.Ed.2d 835 (2001). In the light most favorable to the government, the government failed to correct falsehoods in Lay's testimony denying her lack of a prior record and denying her prior psychiatric treatment when they learned about it- either at the change of plea hearing, at the time Lay filed her sentencing memorandum, or at sentencing.

The information the government did not disclose about Lay- the main witness against Grow- strikes at the heart of the government's case. Lay's credibility was at issue . Grow's trial counsel had no ability to defend Grow at trial by discrediting Lay as a mentally unstable individual who was being employed by

8

the government and who did not take her oath to tell the truth seriously because she hid from this court her prior arrest record and psychiatric history. Depending on the underlying facts, courts have ruled that evidence of a witness's mental health should be disclosed as relevant impeachment evidence. *East v. Scott*, 55 F.3d 996, 1003 (5th Cir. 1995) ("Given the importance of Hardaway's testimony to the prosecution's case during sentencing, her mental records are likely material as impeachment evidence because they cast doubt on the accuracy of her testimony.").

Pursuant to the local rules defense counsel sent a letter requesting the *Brady* material listed in this motion to the Assistant United States Attorney and received an automatic email response that he was out of the office. Because the Eleventh Circuit's decision in *Scott v. United States* negatively affects a defendant's ability to file subsequent *Brady* motions, and the *dicta* in the decision in *Scott v. United States* about the applicability of *Brady* motions prior to sentencing, this motion was filed without obtaining the position of the Assistant United States Attorney on this case.

WHEREFORE, the defense requests this Court to either hold an evidentiary hearing on this matter or order the Government to address the inconsistencies in their disclosures regarding witness Burton and all information they have about Lay including the time when they received it.

9

Respectfully Submitted,

S/*Philip L. Reizenstein*
Philip L. Reizenstein, Esq.
Florida Bar# 634026
2828 Coral Way
Suite 540
Miami, FL, 33145
(305) 444-0755
Philreizenstein@protonmail.com